1

ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
LAW OFFICES OF ADRIANOS FACCHETTI, P.C
301 E. Colorado Blvd, Suite 514
Pasadena, California 91101
Telephone:   (626) 793-8607
Facsimile:   (626) 793-7293
Email:        adrianos@facchettilaw.com

AARON SCHUR, ESQ. (S.B.N. 229566)
YELP INC.
140 New Montgomery Street
San Francisco, CA 94105
Telephone:   (415) 908-3801
Facsimile:   (415) 615-0809
Email:        aschur@yelp.com

Attorneys for Defendant
YELP INC.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

## UNITED STATES DISTRICT COURT FOR
## THE CENTRAL DISRICT OF CALIFORNIA

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| LILY JEUNG, AMY SAYERS, and DARREN WALCHESKY, on behalf of themselves and all other similarly situated,<br><br>      Plaintiffs<br><br>    vs.<br><br>YELP INC.,<br><br>      Defendant. | CASE NO. 2:14-CV-06223-FMO-AS(x)<br><br>YELP INC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) AND TO STRIKE CLASS ALLEGATIONS UNDER RULE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Filed concurrently with Notice of Motion; Declaration of Adrianos Facchetti; Proposed Order]<br><br>Date:  December 18, 2014<br>Time: 10:00 a.m.<br>Place: 22-5th Floor<br>Judge: Hon. Fernando M. Olguin |

# TABLE OF CONTENTS

Table of Contents……………………………………………………… i

Table of Authorities……………………………………………………iii

Memorandum of Points and Authorities…………………………………...1

   I. INTRODUCTION………………………………………………….. 1

   II. THE ALLEGATIONS AND INCORPORATED DOCUMENTS……... 2

      A. Yelp Inc……………………………………………………... 2

      B. Yelp's Terms of Service And Other Written Policies……………. 2

      C. Yelp's Elite Squad………………………………………….....3

      D. Plaintiffs…………………………………………………...…3

      E. Class Allegations……………………………………………..4

      F. Documents Incorporated By Reference And Necessarily Relied On

        By Plaintiffs In The Complaint…………………………………4

   III. PROCEDURAL HISTORY………………………………………5

   IV. RULE 12(b)(6)………………………………………………… 5

      A. Legal Standard……………………………………………….5

      B. Plaintiffs' FLSA Claim Fails Because They Have Not Alleged

        Sufficient Facts To Plausibly Establish That They Are—Or Ever

        Were—Employees Of Yelp Under the Ninth Circuit's Four-Factor

        "Economic Reality" Test…………………………………………6

          1. There are no factual allegations establishing that Yelp had

           the power to hire or fire any of the Plaintiffs………………7

            a. No facts were alleged to demonstrate that any of the

             Plaintiffs were hired…………………………… 7

            b. No facts were alleged that establish Plaintiffs Sayers or

i

Jeung could have been fired……………………………… 8

2. There are no plausible allegations that Yelp exercised

Supervision or control over Plaintiffs…………………... 9

3.  The allegations that Yelp offered free promotional items are

insufficient to establish that it determined rates and methods

of payment……………………………………………… 12

4.  The allegations are insufficient to establish that Yelp

Maintained employment records………………………... 13

C. The "relative nature of the business" Test Does Not Apply In This

Case…………………………………………………………… 13

V. RULE 12(f)………………………………………………………… 13

A. Legal Standard…………………………………………….. 13

B. The Allegations Do No Define An Ascertainable Class………... 14

VI. CONCLUSION…………………………………………………….. 15

1
2

## CASES

*aff'd*,  505 Fed. Appx. 45 (2d. Cir. 2012) ................................................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................. 5

*Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.

   1983); ......................................................................................................... 6,7

*Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) ......................................... 6

*Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008). ...................... 14

*Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 593 (E.D. Cal. 2008)

   .................................................................................................................... 14

*Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ 10320 (JGK), 1996 WL 437929, at *6

   (S.D.N.Y. Aug. 2, 1996) ............................................................................... 8

*Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) ........................................... 6

*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) ................... 13

*Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) ...................... 13,15

*Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ................. 7

*Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961 .................. 6

*Lambert v. Ackerley*, 180 F.3d 997, 1001-02, 1012 (9th Cir. 1999) ...................... 7

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) .......... 14

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) .................... 14

*Lyons v. Bank of Am.,* 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) .......... 13

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ............................................. 6

*O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998)

   .................................................................................................................... 14

*Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979 .........13

*Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) .......................14

*Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679-680 (S.D. Cal. 1999)..............14

 *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) .................................8,9

*Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *15-16 (N.D. Cal.

   Dec. 4, 2009) ..................................................................................................13

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012) .......................8

*United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011)................6

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ....................................6

*Warren v. Fox Family Worldwide, Inc.,* 171 F. Supp. 2d 1057, 1060 n.5 (C.D. Cal.

   2001).................................................................................................................8

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-974 (9th Cir. 2010)......13

## I.     INTRODUCTION

With the rise of the Internet as a tool for expression and commerce, websites have proliferated to give hundreds of millions of people ways to express themselves in unprecedented ways. Online users can spread news on Twitter, post job listings on Craigslist, review books on Amazon, or share consumer experiences on Yelp—reaching a far more vast audience for their content than ever before. Plaintiffs here threaten to upend these innovative services with the outrageous claim that anyone who posts something on the Internet becomes an employee of the online forum in which it is posted, and is therefore entitled to compensation. Under Plaintiffs' theory, popular websites like Amazon, eBay, Facebook, Google, and Twitter would suddenly gain hundreds of millions of employees, all entitled to billions of dollars in payment by the mere fact that they have used these online forums to express themselves through content contributions. Anyone would become an employee of a website merely through the act of posting content to it. Plaintiffs' theory is meritless, but if legitimized by this Court would endanger the public's access to free online forums.

Plaintiffs assert that they are entitled to compensation under the Fair Labor Standards Act ("FLSA") because they used Yelp's website to publish their reviews, photos, and other content contributions online—even though, as alleged, Plaintiffs never expected to be paid, Yelp never agreed to pay Plaintiffs, and Plaintiffs derived valuable benefits from the use of Yelp's free services.

Indeed, Plaintiffs have never been employees of Yelp, and the Complaint's sparse and meandering allegations fail to establish the existence of any employer/employee relationship between Plaintiffs and Yelp. Accordingly, pursuant to Rule 12(b)(6), this Court should dismiss Plaintiffs' First Cause of Action claiming a violation of the FLSA.

In addition, pursuant to Rule 12(f), Plaintiffs' purported class action allegations should be stricken because Plaintiffs identify no ascertainable class in

1   their Complaint. Plaintiffs previously brought this same case in this Court, which

2   Judge Pregerson dismissed earlier this year. This Court should dismiss it again.

3   ## II.   THE ALLEGATIONS AND INCORPORATED DOCUMENTS

4   ### A.   Yelp Inc.

5   Defendant Yelp Inc. ("Yelp") owns and operates Yelp.com, a popular social

6   networking and consumer information website, and related mobile applications

7   (collectively "Yelp.com"), for users to share information about local communities

8   worldwide. See Complaint ¶ 1:29-31. Yelp, among other things, provides and

9   publishes a forum for members of the public to read and write reviews about local

10  businesses, services, and other entities such as non-profit organizations and

11  government agencies. *Id*. Members of the public—like the Plaintiffs—contribute

12  reviews and rate local businesses. *Id*. Yelp averages 138 million unique visitors per

13  month to its websites. Its users have contributed over 61 million reviews. *Id*. at

14  1:32-33.

15  ### B.   Yelp's Terms of Service And Other Written Policies

16  Like many other websites, Yelp maintains Terms of Service ("TOS"),

17  Content Guidelines, Frequently Asked Questions ("FAQ"), and other policy

18  statements that set limits on how individuals may use Yelp's Services. Complaint,

19  ¶¶ 63-64, 66. Facchetti Decl., ¶¶ 5-8, Exhibits C-F. Users must agree to the TOS

20  prior to contributing content to Yelp.com. *Id*.

21  The TOS make clear that Yelp users may not and will not be compensated

22  monetarily for the content they publish to Yelp, for which Yelp obtains a license in

23  order to be able to display such content to the public. The section titled "Our Right

24  to Use Your Content" provides that "[Yelp] may use Your Content in a number of

25  different ways . . . As such, you hereby irrevocably grant us world-wide, perpetual,

26  non-exclusive, royalty-free, assignable, sublicensable, transferable rights to use

27  Your Content for any purpose." Facchetti Decl., ¶ 7, Exhibit E. ¶5.B. The section

28  on "Ownership" states: "We own the Yelp Content . . . Except as expressly and

unambiguously provided herein, we do not grant you any express or implied rights, and all rights in and to the Site and the Yelp Content are retained by us." *Id.*, ¶ 5.C. The section on "Advertising" states: "Yelp and its licensees may publicly display advertisements and other information adjacent to or included with Your Content. You are not entitled to any compensation for such advertisements." *Id.*, ¶ 5.D. One of the "RESTRICTIONS" is: "You agree not to, and will not assist, encourage, or enable others to use the Site to: [¶] Violate our Content Guidelines, for example, by . . . compensating someone or being compensated to write or remove a review." *Id.*, ¶ 6.A. i. The TOS state that Yelp may terminate user accounts at any time, and allow users to terminate their own accounts. *Id.*, ¶ 14. The TOS provide that "BY ACCESSING OR USING THE SITE, YOU REPRESENT THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO THESE TERMS, INCLUDING THIS SECTION." *Id.,* ¶ 12.

### C. Yelp Elite Squad

Yelp invites certain users to join the Elite Squad, a program through which Yelp recognizes certain users who frequently contribute quality content to Yelp.com. Complaint, ¶¶ 29, 31, 49, 53, 54, 64, and Facchetti Decl., Exhibit A, ¶¶ 16-17. Users who accept Yelp's invitation receive access to special events that may include food and beverage tastings from local businesses, and free promotional items with Yelp branding. Facchetti Decl. ¶ 3, Exhibit A, ¶¶ 38-40.

In order to join the Yelp Elite, a user must agree to Yelp's Elite Terms. Facchetti Decl ¶ 9, Exhibit G. The Elite Terms make clear that Yelp Elite members are not employees of Yelp, and that such members, or Yelp, may terminate Elite membership at any time. *Id*.

### D. Plaintiffs

Plaintiff Sayers alleges that she is domiciled in Portland, Oregon, has written over 500 reviews for Yelp since 2006, and that she was a Yelp Elite, although Yelp later closed her user account. Complaint ¶¶ 20-22; Facchetti Decl., ¶ 3, Exhibit A,

¶ 16. Plaintiff Jeung alleges that she is domiciled in Los Angeles, California, has written approximately 1,100 reviews, and that she was also a Yelp Elite, whose user account was closed. Complaint ¶¶ 24-26; Facchetti Decl., ¶ 3, Exhibit A, ¶ 17. Plaintiff Walchesky alleges that he is domiciled in Pittsburgh, Pennsylvania, has written over 1,200 reviews, as well as 238 follow-up and updated reviews, and has taken and submitted 2,122 photographs. Complaint ¶ 27.

Plaintiffs claim they are entitled to compensation because Yelp has published their reviews, photos, and other content contributions online. However, each of the Plaintiffs submitted their content pursuant to Yelp's Terms of Service, which did not provide any expectation of being compensated for that content. Ms. Sayers and Ms. Jeung were subject to additional terms as members of the Yelp Elite Squad. Facchetti Decl. ¶ 3, Exhibit A, ¶¶ 16-17. Based on these agreements, it is clear that Plaintiffs voluntarily used Yelp's free services to publish their content. They could not have had a reasonable expectation of being paid for their submissions.

**E.   Class Allegations**

Plaintiffs in all claims, pursuant to the FLSA, 29 U.S.C. §216, on behalf of themselves and all similarly situated persons, were employees of Defendant, and were not paid wages for their work published on Defendant's website; each performed duties relating to the creation and promotion of content on behalf of Defendant, including but not limited to writing researching, editing, lodging reviews, upgrading prior reviews, and generally promoting the site, during the period between four years prior to the filing of this Complaint and until the date of final adjudication of this action (the "FLSA Class"). Complaint ¶ 35.

**F.   Documents Incorporated by Reference and Necessarily Relied on by Plaintiffs in the Complaint**

1  Plaintiffs refer to, and rely upon specific Terms and other disclosures
2  displayed on Yelp's website to support their allegations. Those documents and
3  disclosures include Yelp's Frequently Asked Questions, Terms of Service, Content
4  Guidelines, and Elite Squad Terms of Membership. Due to these allegations, the
5  Court may treat the contents of the documents as part of the Complaint, and
6  assume that their contents are true for purposes of this motion.

7  **III.   PROCEDURAL HISTORY**

8  Plaintiffs brought the same claims against Yelp in a previous action that was
9  filed on October 22, 2013, and served on October 25, 2013. The action was
10  stylized: *Panzer, et al. v. Yelp, Inc.,* USDC Case No. CV13-07805-DDP (JCGx).
11  Judge Pregerson dismissed the case, without prejudice, on February 19, 2014.

12  Plaintiffs filed their Complaint in this new action on August 7, 2014.
13  Plaintiffs served Yelp with their Complaint on September 26, 2014. Dkt. No. 1.
14  Conference of counsel, pursuant to L.R. 7-3, took place on October 10, 2014 by
15  mail and e-mail. Facchetti Decl., ¶ 10.

16  **IV.   RULE 12(b)(6)**

17  **A.   Legal Standard**

18  Under Rule 8(a), a complaint must contain a "short and plain statement of
19  the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a
20  complaint fails to do this, the defendant may move to dismiss it under Rule
21  12(b)(6). Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint
22  must contain sufficient factual matter, accepted as true, to 'state a claim that is
23  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation
24  omitted). A claim is plausible on its face "when the plaintiff pleads factual content
25  that allows the court to draw the reasonable inference that the defendant is liable
26  for the misconduct alleged." *Id*. "Factual allegations must be enough to raise a
27  right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550
28  U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that the

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id*.

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: (1) first, discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, (2) determine "whether they plausibly give rise to entitlement to relief." *See id*. at 679; *see also Chavez v. U.S*., 683 F.3d 1102, 1108 (9th Cir. 2012). In making this determination, a "court may consider evidence on which the complaint 'necessarily relies, if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *See also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B.** **Plaintiffs' FLSA Claim Fails Because They Have Not Alleged Sufficient Facts To Plausibly Establish That They Are—Or Ever Were—Employees Of Yelp Under the Ninth Circuit's Four-Factor "Economic Reality" Test**

Under the FLSA, the standard by which an employer/employee relationship exists is judged by the "economic reality" of the parties' relationship. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (*citing Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961)). To determine the "economic reality," the Ninth Circuit applies a four-factor test that considers whether the alleged employer: (1) had the power to hire and fire the employees, (2)

supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See Lambert v. Ackerley*, 180 F.3d 997, 1001-02, 1012 (9th Cir. 1999); *Bonnette*, 704 F.2d at 1470. Applying the above test, there is no doubt that Plaintiffs failed to allege sufficient facts to state a plausible claim under the FLSA. We analyze each factor in turn below.

        **1.**    **There are no factual allegations establishing that Yelp had the power to hire or fire any of the Plaintiffs.**

        **a.**    **No facts were alleged to demonstrate that any of the Plaintiffs were hired.**

Plaintiffs allege that Yelp hired them. Complaint ¶¶ 20, 24, 27. But there are no facts to support their conclusion. *See In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (court is not required "to accept as true allegations that are merely conclusory . . .") Plaintiffs do not allege facts regarding a hiring process, a start date, an employment contract, or any other information that would indicate an actual employment relationship. Nor do Plaintiffs identify a person or persons who hired the Plaintiffs, and whether the unnamed hirer had the authority or power to do so on Yelp's behalf. Indeed, Plaintiffs do not allege an understanding, let alone an agreement that they would be paid to use Yelp's free website.

Instead, they seem to advance the theory that voluntarily using a free service equates to an employment relationship. Severely undermining this theory, however, and making it all the more implausible, is the fact that the agreements referenced in the Complaint plainly state that Plaintiffs are *not* employees. The Elite Terms[1] state: "You understand that you are not an employee, representative,

---

[1] While Plaintiffs scrubbed all explicit references to the Yelp Elite squad in the Complaint, the previous lawsuit repeatedly referred to it, and alleged that Sayers and Jeung were "Elite" reviewers. Facchetti Decl., ¶ 3, Exhibit A, ¶¶ 16-17, 39-40, 51; *compare with* Complaint ¶¶ 20, 49, 55, 68. Indeed, in an apparent effort to

or agent of Yelp. You agree that you will not represent yourself as an employee, representative, or agent of Yelp." Facchetti Decl. ¶ 9, Exhibit G, ¶ 7. The TOS states: "THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS, WITH THE EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT MONITOR, CONTROL OR VET USER CONTENT.  AS SUCH, YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK." *Id*. at ¶ 7, Exhibit E. ¶ 12.A. The lack of any facts demonstrating that Plaintiffs were hired, together with the agreements, makes it clear that no plausible employment relationship exists. *See Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ("Williams had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee."); *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012) (dismissing state law equitable claims of "unpaid content providers" because "plaintiffs submitted their materials to The Huffington Post with no expectation of monetary compensation and that they got what they paid for—exposure in The Huffington Post"), *aff'd*, 505 Fed. Appx. 45 (2d. Cir. 2012).

### b.   No facts were alleged that establish Plaintiffs Sayers or Jeung could have been fired.

Plaintiffs Sayers and Jeung allege that they were "fired," presumably because Yelp closed their free accounts. Complaint ¶¶ 22, 26. But terminating an individual's ability to access a free website where they voluntarily post information

---

avoid a motion to dismiss, in lieu of using the term "Elite reviewer," they use the term "model reviewer." *Id*. at ¶¶ 20, 49, 55, 68; *Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ. 10320 (JGK), 1996 WL 437929, at *6 (S.D.N.Y. Aug. 2, 1996) ("—[T]hat more complete allegations have been deliberately omitted from the Second Amended Complaint to avoid a motion to dismiss raises serious questions as to the good faith basis for a claim…."). The Court should thus determine that the previous allegations are party admissions for purposes of the present motion. *See Warren v. Fox Family Worldwide, Inc.,* 171 F. Supp. 2d 1057, 1060 n.5 (C.D. Cal. 2001) (plaintiffs' allegations in prior pleading are party admissions).

does not mean they were "fired." Plaintiffs' allegations merely describe the termination of their free user accounts for violating Yelp's terms, actions that are entirely consistent with their status as users, rather than employees. Facchetti Decl. ¶ 7, Exhibit E, ¶ 14.

Plaintiffs' failure to allege any plausible facts showing that Yelp had the ability to hire or fire them, much less facts showing any employment agreement—implicit or explicit—supports the economic reality that Plaintiffs are *not* Yelp's employees under the FLSA. *Strickland*, 87 F.3d at 1067.

### 2. There are no plausible allegations that Yelp exercised supervision or control over Plaintiffs.

There are no plausible allegations that Yelp ever controlled Plaintiffs' work schedules, working conditions, equipment, or any other component of a legitimate employment relationship. Instead, Plaintiffs make a number of spurious allegations to create the false appearance that Yelp maintained control. These allegations can be broken down into four categories, and are analyzed below.

First, Plaintiffs allege that Yelp must exercise control over the Plaintiffs because it exercises control over its actual employees. Complaint ¶¶ 6, 13, 31. However, this ignores the distinction between those whom Yelp actually employs (software engineers, salespeople, community managers, and accountants), and those whom it does not—individuals who simply use the services that Yelp provides and have never entered into any employment relationship with Yelp. The allegations that Yelp controls the work of its actual employees (including their pay and work schedules) simply does not plausibly support a conclusion that Yelp therefore must control the Plaintiffs.

Although Plaintiffs frequently aver that Yelp designates "workers" or "employees" as "'reviewers' or 'Yelpers' or 'independent contractors' or 'interns' or 'volunteers' or 'contributors,'" these labels are irrelevant, since there is no allegation that Yelp used terms such as "employee," "intern," or "independent

1    contractor" in relation to the Plaintiffs. Complaint ¶¶ 9, 12, 82. Similarly, the fact

2    that Yelp recruits interns (who are paid) does not mean that Yelp hired any

3    Plaintiff as an intern. Complaint ¶ 79.

4    Second, Plaintiffs allege that Yelp exercises control by encouraging users to

5    use its website (Complaint ¶ 32), educating users about its website (*id*. at ¶¶ 53, 55-

6    58), and managing the use of its website through written Terms (*id*. at ¶¶ 63-64).

7    But there is no allegation that Yelp required Plaintiffs to use its website at all,

8    much less that Yelp supervised or scheduled the creation of their content or its

9    posting on Yelp's website. Nor is it alleged that Yelp required Plaintiffs to create

10   website content at a certain location or using certain equipment, or otherwise

11   forced Plaintiffs to submit any website content at all to Yelp.

12   On the contrary, the Complaint merely recites that Yelp—consistent with its

13   role as an online forum, educates its end-users about how to use its websites,

14   "urges" the use of its services, and maintains and enforces its Terms and other

15   policies once users post content to Yelp's website. For example, the Complaint

16   vaguely asserts, without factual basis, that Yelp "urges" and "directs" individuals

17   to write reviews for its website. Complaint ¶¶ 21, 25, 28, 58. Plaintiffs also allege

18   that Yelp—like any online business—generally encourages consumers to use its

19   website. *Id*. at ¶¶ 53-56. However, these allegations of encouragement do not

20   plausibly translate into any type of actual control of the Plaintiffs, and only reflect

21   Yelp's own efforts to publicize its website to consumers like Plaintiffs.

22   Plaintiffs also repeatedly take issue with the fact that Yelp promulgates

23   Terms and policies relating to online content, and once content is posted to its

24   website, may enforce those Terms and policies to correct violations (including

25

26

27

28

YELP INC'S MOTION TO DISMISS

account closures & content removal). Complaint ¶¶ 62-64.[2] But Plaintiffs' alleged grievances are not the complaints of employees, but the gripes of end-users of Yelp's free services that disagree with the way Yelp administers its websites. Complaint ¶ 73 ("I loved Yelp until I got an email from them saying they have taken off my photos due to the pictures being my 'personal experience' and that the reason behind taking off my photos is because it does not 'portray the business as a whole.'") citing Content Guidelines ("Photo Guidelines"), Facchetti Decl., ¶ 8, Exhibit F.

Moreover, Yelp's Terms make clear that Plaintiffs alone owned, and were ultimately responsible for, the submission of their own content. Terms of Service, Facchetti Decl., ¶ 7, Exhibit E. Section 5(A) ("You alone are responsible for Your Content, and once published, it cannot always be withdrawn. You assume all risks associated with Your Content, including anyone's reliance on its quality, accuracy, or reliability . . . You may not imply that Your Content is in any way sponsored or endorsed by Yelp."); Section 5(C) ("As between you and Yelp, you own Your Content."); Section 12(A) ("THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL FAULTS" AND "AS AVAILABLE" BASIS, WITH THE EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT MONITOR, CONTROL OR VET USER CONTENT. AS SUCH, YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK."). Such disclosures further demonstrate that while Yelp, obviously, has control over its own websites, it has no control over Plaintiffs' themselves.

Plaintiffs' next category of allegations relate to "motivational rewards" implicit in Yelp's website itself, such as publicly noting when a user is the "First to

---

[2] Plaintiffs speculate that Yelp took action on posted content and user accounts to specifically benefit advertisers. Such allegations are conclusory and incorrect, but are also irrelevant and appear intended solely to harm Yelp's reputation.

Review" a particular business, or when a user "checks-in" extensively to a certain establishment through Yelp's mobile applications. Complaint ¶ 53. These allegations, though, merely describe Yelp's website itself and highlight some features that may drive Yelp's popularity with the Plaintiffs and users like them. Such allegations cannot show any plausible form of employer control over the Plaintiffs any more than the "motivational reward" in getting the high score in a video game suggests that the game's manufacturer employs its players.

Plaintiffs' fourth set of allegations describing the Yelp Elite squad program, also does not establish any employment relationship. Complaint, ¶¶ 29, 31, 49, 53, 54, 64. The fact that some of the Plaintiffs once participated in this program, enjoyed the perks of such participation, and continued using Yelp's free services in efforts to keep participating, does not create an employment relationship with Yelp. The Yelp Elite program is analogous to participation in an airline frequent flyer program. Simply because the airline urges such participants to use their services, rewards them for doing so with special privileges and status (free drink coupons, entry to the airport club, early boarding), and may remove such status in its own discretion, does not transform the participants into employees of the airline. Furthermore, the Elite Terms explicitly state that members of the Elite squad are not employees of Yelp, cutting against any expectation of an employment relationship. Elite Terms, Facchetti Decl., ¶ 9, Exhibit G, ¶ 7.

**3.  The allegations that Yelp offered free promotional items are insufficient to establish that it determined rates and methods of payment.**

First, Yelp never determined rates or methods of payments with respect to the Plaintiffs because no payments were ever made, nor were such payments ever contemplated.

Second, Plaintiffs allege that Yelp distributes free promotional items to the public such as, "liquor, food, badges, trinkets, and titles." Complaint ¶ 60. These

allegations do not establish that Yelp determined a method of payment. Rather, the distribution of these items is a marketing device that is employed by Yelp to market its website. This form of marketing is common and is employed by virtually every service provider. In any event, there is no allegation that these freebies were given in return for any specific work, or for any other reason than for Yelp to promote itself and its services to the public.

**4.      The allegations are insufficient to establish that Yelp maintained employment records**

Plaintiffs do not allege that Yelp maintains employment records on their behalf. Only the Terms and related documents are alleged in the complaint, which, of course, undermine Plaintiffs' claim.

**C.      The "Relative Nature of the Business" Test Does Not Apply in This Case**

In the Complaint, Plaintiffs rely on the "relative nature of the business" test to support their claim that they are employees of Yelp. Complaint ¶¶ 76-81. While Plaintiffs would fail this test as well, Plaintiffs' reliance is misplaced as this is the wrong test. The "relative nature of the business" is one of six factors identified by courts as useful in distinguishing an "employee" from an "independent contractor" for purposes of the FLSA. *See Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). These tests are inapplicable here because Yelp has never identified Plaintiffs as "independent contractors" (nor has this been alleged), and Plaintiffs are neither independent contractors nor employees of Yelp.

**V.      RULE 12(f)**

**A.      Legal Standard**

Rule 12(f) allows the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See also Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973-974 (9th Cir. 2010). Where the complaint

demonstrates that a class action cannot be maintained on the allegations at the pleading stage, courts have relied on Rule 12(f) to strike class allegations at an early stage of a lawsuit. *See Lyons v. Bank of Am.,* 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (*citing Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S 517. *See also Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *15-16 (N.D. Cal. Dec. 4, 2009); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (addressing the use of Rule 12(f) and noting that "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008).

### B.   The Allegations Do Not Define An Ascertainable Class.

Courts have held that a class must be adequately defined and clearly ascertainable before a class action may proceed. *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679-680 (S.D. Cal. 1999). *See also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007). A class definition should be "precise, objective and presently ascertainable." *O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998). "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 593 (E.D. Cal. 2008) (*quoting Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiffs fail to meet their burden of defining an ascertainable class. They allege that they were "employees of Defendant, and were not paid wages for their work published on Yelp's website; each performed duties relating to the creation and promotion of content on behalf of Defendant, including but not limited to writing, researching, editing, lodging reviews, upgrading prior reviews, and generally promoting the site," and that the class consists of those who are similarly

situated to them. Complaint ¶ 35. Plaintiffs' allegations are insufficient to objectively identify an ascertainable class.

*First*, each Plaintiff's claim depends upon his or her individual circumstances and unique interactions with Yelp. Plaintiffs allege—without factual support—that they had "duties," (Complaint ¶ 35) but there is considerable variation among Plaintiffs themselves, and among Plaintiffs and other consumers of Yelp's websites regarding at least: each of their respective individualized communications or interactions with Yelp; each of their individualized content contributions posted to Yelp (for example whether, and how, Yelp imposed "duties" of content creation in relation to each particular contribution, and whether each particular contribution conformed to Yelp's Terms); and the respective state of mind of each of the individual users of Yelp's websites regarding their relationship with Yelp (for example, did a Yelp user somehow feel forced to perform "duties" of content contribution, or did the user simply like to use Yelp's free website).

*Second*, as described above, named Plaintiffs' claims to be "employees" are implausible legal conclusions. Identifying the class as "employees" necessitates the question of whether an employer/employee relationship exists under FLSA between Yelp and each of the tens of millions of rank and file users of Yelp's online services—relationships that Yelp denies exists and which the allegations of the Complaint do not support, even for the named Plaintiffs. It is impossible to ascertain which individuals could possibly be included in this putative "class" of "employees" when there are no uniform facts demonstrating an employee/employer relationship for each user of Yelp's free websites.

Consequently, Plaintiffs' purported class action allegations should be stricken. This Court should exercise its discretion to strike Plaintiffs' spurious allegations relating to its proposed unascertainable class. *See Fantasy, Inc.*, 984 F.2d at 1527.

1

**VI.    CONCLUSION**

2

The defects in the Complaint are many and incurable.  Plaintiffs have been

3

given ample opportunity to allege sufficient facts to demonstrate valid claims—

4

indeed it is telling that after nearly a year and two lawsuits—they are unable to do

5

so. Plaintiffs should not be permitted to subject Yelp to another round of expensive

6

motion practice on the theory, fine as far as it goes, that leave to amend should be

7

freely dispensed. For the reasons stated above, the Complaint should be dismissed

8

with prejudice and the class actions stricken.

9

10

DATED:  October 16, 2014   LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

11

12

13

By:      /s/ Adrianos Facchetti
Attorneys for Defendant,
YELP INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(PROOF OF SERVICE – 1013A(3), 2015.5 CCP)**

**STATE OF CALIFORNIA**      )
                               ) SS.
**COUNTY OF LOS ANGELES**    )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 301 E. Colorado Blvd, Suite 514., Pasadena, CA 91101.

     On October 17, 2014 I served the foregoing document(s) described as YELP INC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) AND TO STRIKE CLASS ALLEGATIONS PURSUANT TO RULE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES on the interested parties in this matter by placing __X__ a true copy ____ the original thereof enclosed in a sealed envelope addressed as follows:

| *Attorney for Plaintiffs* | *Courtesy Copy:* |
|---|---|
| Daniel A. Bernath, Esq. | Daniel A. Bernath, Esq. |
| 10335 SW Hoodview Drive | 1319 Kingswood Ct. |
| Tigard, OR 97224 | Ft Myers, Florida 33919 |

     **(BY MAIL)** __X__ I placed a true copy of the foregoing document(s) in a sealed envelope addressed to each interested party as set forth above. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day at Pasadena, California in the ordinary course of business. I am aware that on motion of the party served, service made pursuant to CCP § 1013(a) should be presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

     **(FEDERAL)** __X__ I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 16, 2014 at Pasadena, CA.

*Reagan Hyland*
Reagan Hyland