Daniel A. Bernath, California Bar 116636
ussyorktowncvs10@yahoo.com
Mailing: 10335 sw Hoodview Drive
Tigard OR 97224
503 367 4204


Attorney for Plaintiffs and those similarly situated


# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA


| | |
|---|---|
| **Lily Jeung,  Amy Sayers, and Darren Walchesky, on behalf of themselves and all others similarly situated** | **)  No.    CV14-06223 FMO (ASX)**<br>**)**<br>**) Plaintiffs' Opposition to Motion**<br>**)  to Strike Rule 12(b)(6), 12(f)**<br>**)** |
| **Plaintiffs,** | **) Dec. 18, 2014**<br>**)  10 a.m.**<br>**) 22-5th Floor** |
| **vs.** | **) Hon. Fernando M. Olguin**<br>**)** |
| **Yelp, Inc.** | **)**<br>**)** |
| **Defendant.** | **)** |


**Comes now Plaintiffs in Opposition to Motion to Strike complaint for**

**violation of Fair Labor Standards Act, Quantum Meruit and Unjust**

**Enrichment.**


**10.31.2014          Daniel A. Bernath, Esq. for Plaintiffs**

## OPPOSITION TO MOTION TO DISMISS

## STORY OF THIS CASE

This is a simple wage case whereby Yelp, Inc. operates a type of newspaper and sells advertising and Plaintiffs are its reporters.  Businesses purchase advertising based on the views of the website at www.yelp.com  lured by Plaintiffs' writing.  Yelp is bringing in substantial cash as millions of people visit Yelp.com to read the writings of none-wage-paid-employee-plaintiffs and the wage-paid employees (so called hourly/salaried writers, "Scouts" and "Community Managers" ), (Complaint ¶¶ 1-3)

Plaintiffs seek only their wages and compensation as the other writers/scouts/-community managers have been paid by Yelp, Inc.  Courts around the country are analyzing identical sets of facts and are holding that a non-wage-paid laborer are entitled to FLSA pay[1], and other

---

[1] Yelp admits that they are paying some of their writers in FLSA required wages but have seduced other writers into doing the exact same labors for merchandise, badges, accolades, "booze" food, swag and **parties.**  As to such a non-standard compensation, the US District Court Judge in the Southern District of New York declares:  " Rather than monetary compensation, the unpaid content providers are offered exposure — namely, visibility, promotion, and distribution, for themselves and their work**.** ….

> The unpaid submissions are arguably the website's most valuable content, both because of their effect of "optimizing" the website's ranking in search engines such as Google (thus attracting more viewers to the website) and because they allow (website) to keep production costs low.
> From its inception, The {website} has generated revenue by, among other things, selling advertising targeted towards visitors to the website. Advertising revenues increase in proportion to the amount of page views a website receives, which in turn is a function of the quality of the content provided, as well as the website's ability to attract visitors either through its own marketing or via the social networks of others.

- 2 -

## OPPOSITION TO MOTION TO DISMISS

businesses, seeing that they will lose at trial, are settling and paying their non-wage paid

employees $6.4 million in unpaid wage[2].

  Yelp states that modern American Journalism will collapse if Yelp, Inc. pays <u>all its writers and</u>

<u>not just some of its writers</u> in FLSA required wages.  The Fair Labor Standards Act has been the

law since the 1930's and over the decades, the vast majority of businesses obey the law.  Again,

this Complaint is only about the non-wage-paid writers who labor for Yelp, Inc. and has nothing

to do with law abiding Amazon, eBay, Facebook, Twitter, etc.

---

        Summary Judgment Order p.5  Tasini v. AOL, Inc., 11 Civ. 2472, NYLJ
        1202547682116, at *1 (SDNY, Decided) **http://tinyurl.com/qje7dgr**

  *Inter alia* the Court stated that so called "unpaid" employees are paid in **non traditional
methods** "rather than monetary compensation". P. 5

  The US District Court for the Southern District of New York in a carefully reasoned case held
that <u>non wage paid workers for the movie companies **are employees** of the movie companys</u>
***Eric Glatt, et al., v. Fox Searchlight Pictures***, et al., 11 Civ 6784 **http://tinyurl.com/nf9wkh6**
Glatt and Footman were unpaid workers who worked for the production The Black Swan and
500 Days of Summer or in the office.   The non wage employees were paid in admission at the
Wrap (movie filming conclusion) **<u>Party</u>** with the stars, prestige, exposure and resume
enhancement-but not in wages.   The Court held that defendants were the employers of the non
wage paid laborers and entitled to their wages.

[2] Warner Music Group, Atlantic Records, Conde Nast publishing and Hearst Corp., all sued by
non-wage paid laborers and **NBC settles** lawsuit against unpaid workers by paying them **$6.4
million**.  **http://tinyurl.com/l923kfk** US Circuit Court NYSD *Moore v. NBCUniversal* No 13 CV
4634

- 3 -

**OPPOSITION TO MOTION TO DISMISS**

# DEFENDANT'S ATTEMPT TO INTRODUCE MASSIVE AMOUNTS OF TESTIMONY

# AND EXHIBITS INTO A MOTION TO STRIKE IS PROHIBITED

# AND TURNS THIS MOTION TO STRIKE INTO A SUMMARY JUDGMENT MOTION

Defendant Yelp, Inc. has attempted to inflict several foreign documents and an attorney declaration in a motion to strike. The massive documents are cleverly written "disclaimers" by Yelp, Inc., which purport to outline Yelp's control over plaintiffs but which "waives" any compensation to these employees.

Even if such evidence was properly before the Court on a Motion to Strike under Rule 12b(6), these cleverly drafted documents by defendants of this type have triggered a judicial quote by Abraham Lincoln to an attempt to re-label  a dog's tail and then state that a dog has 5 legs, Justice Cordozo labeling such cleverly crafted documents as lacking in "reality", the California Supreme Court condemning it as "not dispositive and subterfuges"; Judge Fletcher, a "write around" of labor law; "a brilliantly crafted contract...in the guise of an independent contractor model" and failing the **Duck Test** because although the employer attempts to extricate itself from paying its employees, the documents is really an employment contract because it fits the *"looks like, walks like, swims like, and quacks like a duck…."*  (see below)

Defendant Yelp, Inc. has introduced testimony and scores of pages of "evidence" into their motion to strike. Therefore, this Court should either ignore all improperly submitted evidence or deem that the Motion to Dismiss is a Summary Judgment Motion. As all points defendants make in this deemed Summary Judgment Motion are controverted, this motion should be denied. Plaintiffs did not rely on the documents in drafting the complaint; Plaintiffs dispute the relevancy

**OPPOSITION TO MOTION TO DISMISS**

the exhibits and a complaint regarding plaintiffs' rights to be paid for their labors under quantum

meruit, unjust enrichment (and the FLSA[3]).

*Vaher v. Town of Orangetown, New York*, 2013 U.S. Dist. LEXIS 926 (S.D.N.Y. Jan. 2,

2013) B.Extrinsic Materials

Accordingly, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court

generally must confine itself to the four corners of the complaint and look only to the

allegations contained therein. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). The

Court, however, may consider a document that is attached to the complaint, incorporated

by reference or integral to the complaint,*fn16 **provided there is no dispute **regarding

**its authenticity, accuracy or relevance**. DiFolco v. MSNBC Cable L.L.C., 622 F.3d

104, 111 (2d Cir. 2010) (citations omitted). Courts may also properly consider statements

set forth in documents of which judicial notice may be taken, but again **only where the**

---

[3] An exception is if the document was integral to the dispute. "An 'integral' document, however, is not simply one that contains information utilized in the complaint. Rather, the document must be integral to the claim itself. Even if the extrinsic documents were quoted in the complaint, or containing information that furthers its narrative—but that may not be reliable—will not satisfy the exception. And while a public document is entitled to judicial notice, such notice is limited to the fact of the document's existence, not its accuracy."
http://apps.americanbar.org/litigation/litigationnews/home.html

"Sagan attempts to introduce a newspaper article containing the alleged defamatory statement. (Memorandum in Opposition to Defendant's Motion to Dismiss, Exhibit A.) However, this Court's analysis is limited to the four corners of the complaint" Carl SAGAN, Plaintiff, v. APPLE COMPUTER, INC., Defendant 874 F.Supp. 1072 (1994). United States District Court, C.D. California

**OPPOSITION TO MOTION TO DISMISS**

**plaintiff relied on the contents of the document in drafting the complaint**, Chambers, 282 F.3d at 153 (quoting Int'l Audiotext Network, Inc., 62 F.3d at 72), and solely to establish the existence of the opinions or assertions contained therein, rather than for the truth of the matters asserted. Global Network Commc'ns, Inc., 458 F.3d at 157 (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Where other extrinsic materials are submitted to the Court for consideration in connection with a 12(b)(6) motion, the additional materials **must either be excluded, or the motion must be converted to one for summary judgment** under Fed. R. Civ. P. 56 after affording the parties the opportunity to conduct appropriate discovery and submit additional supporting materials.Fed. R. Civ. P. 12(d); Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that "the conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on [a Rule 12(b)(6)] motion." (quoting Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999))); see also id. at 84 ("Vacatur is required even where the court's ruling simply 'mak[es] a connection not established by the complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion.'" (quoting Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988))) (alteration in original).

Here, the only document attached to the Amended Complaint is the inventory of the items seized from the residence. Am. Compl. Ex. 1. However, in support of their motion

- 6 -

**OPPOSITION TO MOTION TO DISMISS**

to dismiss, Defendants attach a number of exhibits to their memorandum of law, which are nowhere properly identified or authenticated.*fn17 Docs. 35-2--35-10**. …** Moreover, with the exception of a document that appears to be the search warrant for the March 2007 Search, Doc. 35-5,*fn18 **none of the documents attached as exhibits to Defendants' Memorandum of Law are even mentioned in the Amended Complaint.** In addition to being unidentified and unauthenticated, the remaining exhibits would also be inappropriate for the Court to consider on a number of grounds.*fn19 Accordingly, none of the documents proffered by Defendants will be considered. [emphasis added]

## PLAINTIFFS ARE EMPLOYEES OF YELP, INC. AND THUS ENTITLED TO THEIR FLSA WAGES

Defendants attempt to hide and/or overlook[4] the latest guidance at the 9th Circuit Court of Appeals on this issue from this Honorable Court.

An analysis of this complaint, utilizing the 9th Circuit Court's analysis of California law makes this clear.  In the case of Alexander *et al*. v. FedEx  **http://tinyurl.com/nmuv6oz** http://cdn.ca9.uscourts.gov/datastore/opinions/2014/08/27/12-17458.pdf the Court provided guidelines and analysis regarding when someone labeled an independent contractor (or by extension free volunteer or paid in "bling" or status for laboring free for a glamorous employer) is actually an employee and thus entitled to just compensation.

---

[4] Rule 3.3(a)(2) of the Model Rules of Professional Conduct says, "A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

**OPPOSITION TO MOTION TO DISMISS**

The concurrence by the Hon. Stephen S. Trott, also pointed out that a cleverly defendant drafted Terms of Service or other cleverly drafted contract to "write-around" the law does not conclusively make a person an independent contractor (or by extension a none-paid volunteer).

Abraham Lincoln reportedly asked, "If you call a dog's tail a leg, how many legs does a dog have? " His answer was, "Four. Calling a dog's tail a leg does not make it a leg." Justice Cardozo made the same point in W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 62 (1935), counseling us, when called upon to characterize a written enactment, to look to the "underlying reality rather than the form or label." The California Supreme Court echoed this wisdom in Borello, saying that the "label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." 769 P.2d at 403. As noted by Judge Fletcher,"[N]either [FedEx's]nor the drivers' own perception of their [ALEXANDERV.FEDEX  Page 35 **http://tinyurl.com/nmuv6oz** ] relationship as one of independent contracting" is dispositive. JKH Enters., Inc., 48 al. Rptr. at 580.

Bottom line?  Labeling the drivers "independent contractors" in FedEx's Operating Agreement does not conclusively make them so when viewed in the light of(1) the entire agreement, (2) the rest of the relevant "common policies and procedures" evidence, and (3) California law. … Although our decision substantially unravels [defendant's] business model, [Defendant] was not entitled to "write around" the principles and mandates of California Labor Law by constructing a contract which, after a contested trial, the California trial court in Estrada called:

- 8 -

**OPPOSITION TO MOTION TO DISMISS**

> [A]brilliantly drafted contract creating the constraints of an employment
> arrangement with [the laborers] in the guise of an independent contractor model
> — because [Defendant] not only has the right to control, but has close to absolute
> control over [the laborers] based upon interpretation and obfuscation.

Estrada, 64 Cal. Rptr. 3d at 334(brackets in original)(internal quotations marks omitted). The
Court of Appeal in that case appropriately called the trial court's observation an application of
the looks like, walks like, swims like, and quacks like a duck test. See id. at 335.

## ANALYSIS OF THE COMPLAINT WITH THE LAW OF CALIFORNIA

## ALEXANDER  V. FEDEX AUG. 23 2014 http://tinyurl.com/nmuv6oz

## PLAINTIFFS ARE ENTITLED TO WAGES PURSUANT TO THE FACTORS STATED IN ALEXANDER V. FEDEX

"Even if one of the two individual factors might suggest an independent contractor
relationship…all the factors weighed and considered as a whole establish an
employment...relationship " Alexander v. FedEx at page 13

  The totality of the circumstances surrounding Plaintiffs' relationship establishes their right to
wages.  The complaint however, meets each and every factor to plead a right to be paid for their
labors under the FLSA or under Quantum Meruit and/or Unjust Enrichment.

////

**OPPOSITION TO MOTION TO DISMISS**

**PRIMARY FACTOR: YELP, INC. HAS <u>THE RIGHT TO CONTROL</u> THE MANNER AND MEAN OF ACCOMPLISHING THE RESULTS DESIRED AND ANY PURPORTED DOCUMENT IS NOT DISPOSITIVE. ALEXANDER AT 15.**

  As outlined above, any cleverly crafted document by Defendants to write around and deprive Plaintiffs rights to wages is void as against public policy.

**"[T]he purposes of the Act require that it be applied even to those who would decline its protections.** If an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 299, 301 (1985). **California's Consumer Legal Remedies Act explicitly prohibits "inserting an unconscionable provision in the contract."** *Cal. Civ. Code § 1770(a)(19). CAL. CIV. CODE § 1670.5 : California Code - Section 1670.5(a)*

  Absolute control by Defendants over Plaintiffs is not necessary to show an employee relationship under FLSA.  "The right to control test does not require absolute control.  Employee status may still be found where a certain amount of freedom is inherent in the job."  Alexander v. FedEx p 18.  Furthermore, Yelp, Inc. might not make specific assignments (other than require that some businesses be NOT written about or that new territory must be written about Complaint ¶¶ 53, 69, 71, 73, 74) but it does require that the writing be done a certain way and at a certain pace.  The 9th Circuit, citing the California Supreme Court points out that if the

**OPPOSITION TO MOTION TO DISMISS**

defendant retains "all necessary control" then the right to control requirement is met to demonstrate an employee relationship.  Alexander at 20[5]

Here, Yelp demands that the product of Plaintiffs be done a certain way, be written about some business and not others and if a Plaintiff violates any rule of Defendant then the Plaintiff is terminated.  (see  Factor 3 below)

CEO Jeremy Stoppelman and other officers of Yelp hired manager staff, which directed Plaintiffs, calling these supervisors wage-paid "Community Managers."  As Yelp controlled the Community Managers and paid them wages, they therefore controlled the plaintiffs herein and thus plaintiffs meet this factor. (Searchlight's **ability to hire managerial staff** is enough to satisfy this factor. See *Herman,* 172 F.3d at 140)

## SECONDARY FACTOR 1 FROM ALEXANDER V. FEDEX PAGE 14

## YELP, INC. HAS THE RIGHT TO TERMINATE PLAINTIFFS

Defendant had the right to (and did in fact terminate plaintiffs.)  The only part of this factor is that Defendant had the right to terminate.   Complaint ¶ 22 P 6 L-10-15 "Ms. Sayers was fired from her position…no unemployment [benefits] no tax withholding for either state or federal entities..."  Complaint ¶ 26 P 7 L-12-17 "Ms. Jeung was fired from her position…also denied unemployment [benefits] workers compensation, tax contribution by her employer Yelp, Inc. to state and federal entities."

---

[5] "The sharefarmers set their own hours.  They were free to decide when to p ick… Although the sharefarmers had significant autonomy over the harvest itself, the California Supreme Court reasoned that [Defendant] has "*all necessary control* over the harvest portion of the operation and held that the sharefamers were employees as a matter of law."  Emphasis in original. Alexander at 20

- 11 -

**OPPOSITION TO MOTION TO DISMISS**

Complaint ¶¶ 61 L 16-18, ¶62 L 19-20 P.17 L1-5 P.18  "At least two Plaintiffs and numerous other similarly situated persons *were* actually fired by Defendant; their badges and licenses revoked; their status and reputation sanctimoniously stripped away; and their extensive work product deleted from the system with no recourse or ability to recover it."  Complaint ¶ 63 L 9-10  "I was fired by Yelp for supposedly breaking one of their rules, which I didn't."  Complaint ¶ 69 P.18 L-19-20  P. 70 L 1-6 CEO Jeremy Stoppelman fired a worker personally referring to "the measuring stick" and warns "there will be penalties to those that ignore us…"

## SECONDARY FACTOR 2 FROM ALEXANDER V. FEDEX PAGE 27

## THE LABORS OF PLAINTIFFS IS WHOLLY INTEGRATED INTO YELP, INC.'S OPERATION

Yelp consists solely of the writings of plaintiffs and the paid advertising.  The work product of Plaintiffs' labors, admits Defendant is why Yelp.com has an audience of 138,000,000. Complaint ¶ 1 L32   ¶ 23 P6,   The audience drawn to Defendant's publication by Plaintiffs' labors is the reason that Yelp has brought in $360,000,000 in advertising money  Complaint ¶ 48 P13 L 8-10.

Defendant Yelp admits that it would not exist if not for the labor of plaintiffs: "Defendant could not exist, no makes its returns, without the labors of and its control over unpaid writers.  One of Defendant's co-founders stated: "The site wasn't set up to serve businesses, it was meant to serve the consumer. **Without the community of reviewers there would be no Yelp."** [emphasis in original ¶ 10 P. 3 L14-17]

"The work [Plaintiffs] performed-writing, researching, editing, lodging reviews, upgrading prior reviews, and generally promoting the site—is central to Defendant's business model as a publisher."  Complaint ¶ 15 P 4 L 19, P 16 L 1-2

- 12 -

## OPPOSITION TO MOTION TO DISMISS

## SECONDARY FACTOR 3 FROM ALEXANDER V. FEDEX PAGE 28

## THE LABORS OF PLAINTIFFS IS DONE UNDER YELP, INC.'S DIRECTION

Defendant Yelp, Inc. has the right to control over its laborers including decisions of life and death of their non-wage paid employees. Yelp, Inc. creates business meetings at venues where underage alcoholic drinking is not blocked and permits its laborers to eat and drink alcohol to excess. One such laborer drank so much alcohol that she became unconscious and collapsed into an alcohol poisoned coma.

Such a medical condition is an emergency requiring professional medical care.

Yelp, Inc., to maintain whatever reputation[6] it has, did not contact emergency services but instead made the business decision to wait until the laborer became conscious to the point where she could murmur her address. With this medical emergency ongoing, Yelp, Inc. merely

---

[6] **Yelp, Inc.'s "reputation";** Yelp's lawyer Aaron Schur has filed charges against Plaintiffs' attorney herein, to add to the heat and serve as a warning to any lawyer daring to seek the wages for their clients from Yelp, Inc. Cal.Bar 13-0-14986.

At least two judges have said Yelp, Inc. is the modern day "Mafia." On April 26, 2013, after hearing sworn testimony from a Yelp executive, Trial Judge Peter S. Doft in San Diego California ruled that Yelp uses brazen and audacious extortion techniques against helpless small businesses.

The Court also declared that Yelp! twists the law to make it say the exact opposite of settled legal principles. The San Diego Judge stated: *"Yelp! is "is the modern-day version of the mafia.*.I'm just stunned actually I mean, every  single bit of settled law is twisted around by [Yelp! ]. Everything is twisted around." Also in 2013, Oregon Circuit Court Judge Henry Kantor revealed that Yelp is under investigation by the attorney general and that Yelp, Inc., appears to act like *"organized crime."* A search of google.com with the words "*Yelp Extortion*" reveals 76,800 results and "*Yelp blackmail*" turns up 80,400.

**OPPOSITION TO MOTION TO DISMISS**

deposited their laborer at her home. Therefore, Yelp, Inc. has the right to and does indeed exercise total control, including life or death decisions, over its laborers.  Complaint ¶ 7 P 2 L 19-20, P 3 L1-5

  Yelp, Inc. scolds its non-wage-paid writers if their production slacks off, demanding more work product from plaintiffs. Complaint ¶¶ 21, 25, 28

  Yelp, Inc. directs its workers (with often contradictory demands¶ 71-74  ) ¶ as to how to write, to revisit and refresh old writings and to venture out into new territory to write about new places-all to defendants profit.  Complaint ¶¶ 52, - 56

  Yelp, Inc.'s Vice President states that defendant directs Plaintiffs by showing examples of what Defendant requires, praising and admonishing Plaintiffs "you get that last flash of content **we'd like you to write…you will get a gently admonishing line…a nudge in the right direction**." ¶ 32 P 10 3-10


## Secondary Factor 4 from Alexander v. FedEx page 28
## Plaintiffs need no experience to labor for Yelp, Inc. and the only skill required is to write

  Anyone with an elementary school education can and are writers for Yelp.  Yelp, Inc. requires only that its writers file their stories using their hosting server and using Yelp's computer program and the ability to place fingers onto a keyboard.  Commentators have likened Yelp and other such writers as crew on "a 21st Century galley slave ship." Complaint ¶ 11, P3 L 18-19

////

- 14 -

**OPPOSITION TO MOTION TO DISMISS**

## SECONDARY FACTOR 5 FROM ALEXANDER V. FEDEX PAGE 28

## YELP INC. PROVIDE THE SERVER, PROGRAM AND INTERNET PUBLICATION AS TOOLS AND EQUIPMENT FOR PLAINTIFF

Plaintiffs must use the tools that Defendant provides. They cannot type out their writing and mail it to Defendants nor telephone another Yelp employee in San Francisco to type out their report as Yelp's headquarters employee takes dictation as done in the newspaper industry. Complaint ¶¶ 5, 16, 28 P8 L 1-5 Plaintiffs must only use Defendants tools of the computer program of Yelp, Inc., and place their report onto Yelp, Inc.'s computer server.

## SECONDARY FACTOR 6 FROM ALEXANDER V. FEDEX PAGE 29

## PLAINTIFFS WERE HIRED FOR ONGOING EMPLOYMENT AND NOT HIRED FOR A SPECIFIC TASK AND/OR A DEFINED PERIOD OF TIME

Plaintiffs were not hired to do a specific job but were directed to write more, to write about old and new locations and with no task/job termination or end date. ¶¶ 15,

## SECONDARY FACTOR 7 FROM ALEXANDER V. FEDEX PAGE 30

## PLAINTIFFS WERE NOT COMPENSATED BY THE JOB OR TASK BUT COMPENSATED IN NON FLSA METHODS

Defendants pay their "scouts", "Community Managers" employees in wages or salary. Defendants compensated Plaintiffs in prestige, family atmosphere and non-monetary compensation. Defendant accepting and urging the labors of Plaintiffs make Yelp, Inc. Plaintiffs' employer. "Employer" one who suffers or **permits another to work** 29 USC Sec. 203(d) & (g) 2012 FLSA (g) "Employ" includes to suffer or permit to work.

- 15 -

## OPPOSITION TO MOTION TO DISMISS

To state a valid FLSA claim, plaintiffs had to allege (1) that they were employed by

Caritas; (2) that their work involved interstate activity; and (3) that they performed work

for which they were under-compensated. *29 U.S.C. §§ 206(a), 207(a)(1) Pruell v. Caritas*

Christi 678 F.3d 10 (2012); (finding the first element satisfied by mere allegation that the

plaintiff "was an employee" and "was employed" by the defendant)

  The FLSA requires that people who work for an employer be paid in wages and not by room

and board, free clothing and artificial familial persuasions and warm feelings.  The so called

"glamour industries" of broadcasting, fashion, and like here, publishing have long obtained free

labor in exchange for just the "glory" of working in a **attractive or exciting** industry.  This has

always been improper and Courts have been striking down this type of slavery in nearly all states

and federal circuits.


## SECONDARY FACTOR 8 FROM ALEXANDER V. FEDEX PAGE 30
## DEFENDANTS REPEATEDLY ADMIT THAT THEY COULD NOT EXIST IF NOT FOR
## THE LABORS OF PLAINTIFFS.

Defendant Yelp admits that it would not exist if not for the labor of plaintiffs:

"Defendant could not exist, no makes its returns, without the labors of and its control over

unpaid writers.  One of Defendant's co-founders stated: " **Without the community of reviewers**

**there would be no Yelp."** [emphasis in original ¶ 10 P. 3 L14-17]

*////*

- 16 -

**OPPOSITION TO MOTION TO DISMISS**

## SECONDARY FACTOR 9 FROM ALEXANDER V. FEDEX PAGE 30

## THE DEFENDANT URGED PLAINTIFFS TO BELIEVE THAT THEY WERE IN A LONG TERM RELATIONSHIP WITH YELP, INC. AND WERE FUNDAMENTAL TO YELP'S EXISTENCE

Defendant repeatedly stated that Plaintiffs were and are fundamental to their existence and that they were in a long term relationship; but Defendants paid Plaintiffs in compensation in other than wages. Defendants paid its "scouts", "Community Managers" and other employees and officers of Yelp, Inc., in wages Complaint ¶ 4, 12, 13, 35, 38, 49, 52, 53, 58, 60, 70

"Defendants cajoles its troops [you are] our ambassador both on and offline…" ¶ 19 ¶ 70 L 7-8 "Do your part to set an example of what a stellar Yelper can and should do." ¶ 19 ¶ 70 L14-15

Indeed, defendant Yelp, Inc. restricted the non-wage-paid employee Plaintiffs so that they could write for Yelp and for no other publication: "Our success depends on the quality of reviews, photos and other content that we show on our platform…" ¶ 75, P21 L-8-9 "…users who contribute content to our platform may provide content to our competitors OR subsequently remove their content from our platform. If they do, the value of our content may decline relative to other available products and services and our business may be harmed". Cmpt¶ 75, L-1-4

But again, "The belief of the parties as to the legal effect of their relationship is not controlling if as a matter of law a different relationship exists." Alexander at p. 31 Furthermore, building a multi-billion dollar publication off of the unpaid labors of "galley slaves" is contrary to the FLSA and public policy.

## PLAINTIFFS' RESPONSE TO DEFENDANT'S SECTION IV 4.

The statement that Yelp, Inc. did not "maintain" records on the laboring of Plaintiffs is first incorrect [Defendant has detailed records Complaint ¶ 3] and also irrelevant to whether Plaintiffs should be paid as the other Yelp writers are paid.

- 17 -

## OPPOSITION TO MOTION TO DISMISS

An employer that fails to adhere to the Act's record keeping requirements cannot later complain that its employees' evidence of damages is inexact or imprecise. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). failed to keep accurate records and to credit all hours worked in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1059(a)(1), 1104(a)(1) n this circumstance, if (1) the evidence shows that the employee performed work for which there was improper compensation, and (2) the amount and the extent of work can reasonably be inferred, then the wages owed to an employee should be awarded even if approximate. Id. at 687-88.   The burden of proof shifts to the employer to produce evidence of the precise amount of work the employee performed or evidence that negates the just and reasonable inferences drawn from the employee's evidence. Id

*Elwell v. University Hospitals Home Care Serv*., 276 F.3d 832, 844 (6th Cir. 2002), the Sixth Circuit held that a district court should properly have instructed a jury that evidence of recordkeeping violations can be an element of recklessness or willfulness. A finding of willfulness would have operated to extend the normal two-year statute of limitations to three years. Id. at 842.

## Plaintiffs' response to Defendant's Section V pleading of Putitive Ascertainable Class/collective

  Yelp, Inc. unethically ignored controlling authority (Alexander v. FedEx) and is also cynically urging that this Court apply irrelevant statutes.  The requirements for § 216(b) collective actions are independent of, and unrelated to the requirements for Rule 23 class certification.  *Wang v. Chinese Daily News, Inc.* 623 F.3d 743, 761 (9th Cir. 2010)  "the clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution…under § 216(b)")  "The requisite showing of similarly of <u>claims under the FLSA *is considerably less stringent*</u> than the requisite

- 18 -

**OPPOSITION TO MOTION TO DISMISS**

showing under Rule 23."  (emph.added) *Lewis v. Wells Fargo Co*. 669 F.Supp.2[nd] 1124, 1127

(N.D.Cal. 2009)  Courts have noted that Congress clearly chose not to have Rule 23 standards

apply. (While Congress could have imported the more stringent criteria for class certification

under FRCP 23, it has not done so in the FLSA) *Thiessen v. GE Cap*., 267 Fd 3d at 1105.

Looking to the standard for FLSA actions for pay for work done, a reading of the complaint

shows that the pleading standards have been met:

### STREAMLINING WAGE AND HOUR MOTION PRACTICE

By George A. Hanson_American Bar Association  **http://tinyurl.com/l7z67vq**

… predominance and superiority under Rule 23(b)(3). Fair Labor Standards Act (FLSA)

cases are not true class actions.   The court may send this notice ***after plaintiffs make a***

***modest factual showing*** that they and potential opt-in plaintiffs together were victims of

a common policy or plan that violated the law. ***Notice the phrase "modest factual***

***showing*.**" (in original)

… While FLSA plaintiffs … face "**a low standard of proof**" at step one.

Within the context of wage and hour litigation, these motions (to dismiss) frequently lack

merit and delay the proceedings while unnecessarily consuming judicial resources.  This

should rarely be an issue in FLSA cases. Employees generally **do not have to rely on**

**inferences about unseen conduct. They need not offer precise time records, and their**

**pleading allegations are "accepted as true**."  *Ashcroft v. Iqbal, 556 U.S. 662 (2009).*

**The upshot is simple: when an employee pleads that she worked 45 hours, but only**

**got paid for 40, she has complied with Rule 8's plausibility standards**. ("Unlike the

complex antitrust scheme at issue in Twombly that … the requirements to state a claim of

a  FLSA violation are quite straightforward.") Even when pleadings are less specific,

- 19 -

**OPPOSITION TO MOTION TO DISMISS**

liberal amendment rules mean that early motions to dismiss will rarely advance the litigation.

The analysis defendant demands, "requires the court to review the historical or record facts and apply all inferences drawn from these facts in favor of the plaintiff.  In doing so, the court must narrowly construe the FLSA provisions against the employer seeking to assert the exemptions." see *Hein v. PNC Fin. Servs. Group, Inc*. 511 F.Sup.2d 563, 570 (E.D. Pa. 2007) Determine the exempt or non exempt status of any particular employee "is an extremely and individual and fact-intensive" and requires "careful factual analysis of the full range of the employee's job duties and responsibilities.") see also *Hein v. PNC Fin. Servs. Grp., Inc*. , 511 F. Supp. 2d 563, 570 (E.D. Pa. 2007) ("We conclude that such a detailed, fact-intensive **analysis is impossible at this stage of the litigation**." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 451, 452 52 (D.N.J. 2011)  emphasis added


## PLAINTIFFS HAVE ADEQUATELY PLED "ASCERTAINABLE CLASS"

At this stage the court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)

Plaintiffs have pled regarding the putative class at Complaint ¶ ¶ 3, 4, 9, 12, 15, 16, 17

## PLAINTIFFS HAVE ADEQUATELY PLED THE CAUSES OF ACTION  FOR *QUANTUM MERUIT* AND UNJUST ENRICHMENT

Yelp, Inc. concedes that it owes plaintiffs for their labors, having not made a Motion to Dismiss the common count.

Daniel A. Bernath, Esq. for Plaintiffs  11.2.2014

## OPPOSITION TO MOTION TO DISMISS

- **Story of this Case**  …p2

- **Defendant**'s attempt to introduce massive amounts of testimony. And exhibits into a motion to strike is prohibited And **turns this motion to strike into a summary judgment motion** …p4

- **Plaintiffs are employees of Yelp, Inc**. and  thus entitled to their FLSA wages  …p7

- Analysis of the Complaint with the Law of California Alexander  v. FedEx Aug. 23 2014 **http://tinyurl.com/nmuv6oz**   **Plaintiffs are entitled to wages pursuant to the factors stated in Alexander v. FedEx**  …9

- Primary Factor: **Yelp, Inc. has <u>the right to control</u> the manner and mean of accomplishing the results desired and any purported document is not dispositive**. Alexander p15…p10

- Secondary Factor 1 from Alexander v. FedEx Page 14 **Yelp, Inc. has the right to terminate plaintiffs**  …p 11

- Secondary Factor 2 from Alexander v. FedEx page 27  **The Labors of Plaintiffs is wholly integrated into Yelp, Inc.'s operation**  …p12

**OPPOSITION TO MOTION TO DISMISS**

- Secondary Factor 3 from Alexander v. FedEx page 28 **The Labors of Plaintiffs is done under Yelp, Inc.'s direction** …p13

- Secondary Factor 4 from Alexander v. FedEx page 28 **Plaintiffs need no experience to labor for Yelp, Inc. and the only skill required is to write** …p14

- Secondary Factor 5 from Alexander v. FedEx page 28 **Yelp Inc. provide the server, program and internet publication as tools and equipment for Plaintiff** …p15

- Secondary Factor 6 from Alexander v. FedEx page 29 **Plaintiffs were hired for ongoing employment and not hired for a specific task and/or a defined period of time** …p15

- Secondary Factor 7 from Alexander v. FedEx page 30 **Plaintiffs were not compensated by the job or task but compensated in non FLSA methods** …p15

- Secondary Factor 8 from Alexander v. FedEx page 30 **Defendants repeatedly admit that they could not exist if not for the labors of Plaintiffs**. …p16

- Secondary Factor 9 from Alexander v. FedEx page 30 **The defendant urged plaintiffs to believe that they were in a long term relationship with Yelp, Inc. and were fundamental to Yelp's existence** …p17

**OPPOSITION TO MOTION TO DISMISS**

- **Plaintiffs' response to Defendant's Section IV 4.** …p17

- Plaintiffs' response to Defendant's Section V pleading **of Putitive Ascertainable Class/collective** …p18

- **Plaintiffs have adequately pled "ascertainable class"** P20

- **Plaintiffs have adequately pled the Causes of action  for *quantum meruit* and unjust enrichment**  …p20

**Authorities Relied Upon**

29 USC Sec. 203(d) & (g) 2012  FLSA  (g)   …p15, 16

29 U.S.C. §§ 1059(a)(1), 1104(a)(1)  …p18

§ 216(b)  …p18

**Cal. Civ. Code § 1770(a)(19). CAL. CIV. CODE § 1670.5 : California Code - Section 1670.5(a)**  ...p10

**Fed. R. Civ. P. 12(d)**  ....p6

**Fed. R. Civ. P. 56**  ...p6

Alexander *et al*. v. FedEx  ___Fed 2d___ 2014  pages 7, 9, 10, 11, 12, 13, 14, 15, 16, 17,

 Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)  …p 18

**Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999)**  ...p6

Ashcroft v. Iqbal, 556 U.S. 662 (2009).  P. 19

Carl SAGAN, Plaintiff, v. APPLE COMPUTER, INC., Defendant 874 F.Supp. 1072 (1994). United States District Court, C.D. California  ..pn3 p. 5

**OPPOSITION TO MOTION TO DISMISS**

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)  ...p 5

Elwell v. University Hospitals Home Care Serv., 276 F.3d 832, 844 (6th Cir. 2002) …p18

Estrada, 64 Cal. Rptr. 3d at 334  …p 9

Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988) ...p 6

Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000)  ...6

Global Network Commc'ns, Inc., 458 F.3d at 157   ...p6

Herman, 172 F.3d at 140)

Hein v. PNC Fin. Servs. Group, Inc. 511 F.Sup.2d 563, 570 (E.D. Pa. 2007)  …p20

Int'l Audiotext Network, Inc., 62 F.3d at 72  ...p 6

Lewis v. Wells Fargo Co. 669 F.Supp.2[nd] 1124, 1127 (N.D.Cal. 2009)  …p19

Snyder v. Dietz & Watson, Inc., 837 F. Supp. 2d 428, 451, 452 52 (D.N.J. 2011) …p20

Tasini v. AOL, Inc., 11 Civ. 2472, NYLJ 1202547682116, at *1 (SDNY, Decided) fn1 p3

Thiessen v. GE Cap., 267 Fd 3d at 1105.  …19

Tony & Susan  Alamo Found. v. Sec'y of Labor, 471 U.S. 299, 301 (1985). …p10

Vaher v. Town of Orangetown, New York, 2013 U.S. Dist. LEXIS 926 (S.D.N.Y. Jan. 2, 2013)  ...p 5

W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 62 (1935)  …p8

Wang v. Chinese Daily News, Inc. 623 F.3d 743, 761 (9th Cir. 2010)  …p18

Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)  …p20

## SERVICE OF THESE PAPERS

I served the foregoing on interested parties by mailing first class, fully prepaid to all counsel and parties who have appeared in this action on 11.3.2014

Daniel A. Bernath, Esq.

## OPPOSITION TO MOTION TO DISMISS