1  ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
2  LAW OFFICES OF ADRIANOS FACCHETTI, P.C
3  301 E. Colorado Blvd, Suite 514
   Pasadena, California 91101
4  Telephone:   (626) 793-8607
   Facsimile:   (626) 793-7293
5  Email:       adrianos@facchettilaw.com

6
7  AARON SCHUR, ESQ. (S.B.N. 229566)
   YELP INC.
8  140 New Montgomery Street
   San Francisco, CA 94105
9  Telephone:   (415) 908-3801
10 Facsimile:   (415) 615-0809
   Email:       aschur@yelp.com
11
12 Attorneys for Defendant
   YELP INC.
13

14

15              UNITED STATES DISTRICT COURT FOR
16              THE CENTRAL DISRICT OF CALIFORNIA

17

18

19 | LILY JEUNG, AMY SAYERS, and | CASE NO. 2:14-CV-06223-FMO-
   | DARREN WALCHESKY, on behalf | AS(x)
20 | of themselves and all other similarly |
   | situated, |
21 |                              | DEFENDANT YELP INC'S MOTION
   |        Plaintiffs            | TO TRANSFER UNDER 28 U.S.C. §
22 |                              | 1404(a) AND MOTION FOR
   |        vs.                   | IMMEDIATE STAY PENDING
23 |                              | DECISION ON TRANSFER
   | YELP INC.,                   |
24 |                              | [Filed concurrently with Notice of
   |        Defendant.            | Motion; Declarations of Ian MacBean
25 |                              | and Adrianos Facchetti; and Proposed
   |                              | Order]
26 |                              |
   |                              | Date:   December 11, 2014
27 |                              | Time: 10:00 a.m.
   |                              | Place: 22-5th Floor
28 |                              | Judge: Hon. Fernando M. Olguin

# TABLE OF CONTENTS

Table of Contents……………………………………………………………………… i

Table of Authorities…………………………………………………………………….iii

Memorandum of Points and Authorities………………………………………...1

    I. INTRODUCTION………………………………………………………...1

    II. THE ALLEGATIONS AND STATEMENT OF FACTS……..................1

        A. Yelp's Terms of Service and its Forum Selection Clause……….. 1

        B. Where The Parties and Witnesses Reside……………………….. 3

            1. Plaintiffs reside in Oregon or Pennsylvania and repeatedly
            agreed to Yelp's forum selection clause…………………… 3

            2. Yelp is headquartered in the Northern District of
            California……………………………………………………… .5

    III. PROCEDURAL HISTORY………………………………………………..6

    IV. THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN
       DISTRICT OF CALIFORNIA……………………………………………6

        A. This Case Could Have Been Brought In The Northern District
        Of California……………………………………………………7

        B. Plaintiffs' Agreement to the Forum Clause is a "Controlling
        Weight" in The Transfer Analysis And Strongly Supports Transfer
        To The Northern District……………………………………………..8

        C. Other Factors Also Support Transfer……………………………..9

            1. Most of the party witnesses and documents are located in the
            Northern District………………………………………… 10

            2. The parties have greater contacts with the Northern District
            than with this District…………………………………..11

3. Plaintiffs' choice of forum is irrelevant, or minimal at

best…..................................................................................12

4. Transfer would save the parties time and expense………...13

5. No delay or prejudice would be caused by transfer………..14

V. THIS CASE SHOULD BE STAYED PENDING A RULING ON THE

MOTION TO TRANSFER……………………………………………..14

A. Conservation of Judicial Resources………………………………...14

B. Conservation of the Parties' Resources…………………………..15

C. Plaintiffs Would Suffer No Undue Prejudice from a Stay………..16

VI. CONCLUSION…………………………………………………….. 16

## CASES

*In re Upjohn Co. Antibiotic Cleocin Prod. Liab. Litig.,* 81 F.R.D. 482, 486–87 (E.D. Mich. 1979) ...........................................................................15

*Atlantic Marine Const. Co., Inc. v. United States Dist. Court,* 134 S.Ct. 568, 581 (2013). ........................................................................6,7,9,12

*CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962) ...........................................14

*Doe 1 v. AOL LLC,* 552 F.3d 1077, 1083 (9th Cir. 2009).............................................8

*Fed Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir.1989). ........14

*Foster v. Nationwide Mut. Ins. Co.,* No. 07–04928, 2007 WL 4410408 at *2 (N.D. Cal. Dec. 14, 2007)...........................................................................13

*Fteja v. Facebook, Inc.,* 841 F.Supp.2d 829, 838–40 (S.D.N.Y. 2012)......................8

*Hawkins v. Gerber Products Co.,* 924 F.Supp.2d 1208, 1214-1215 (S.D. Cal. 2013) ...........................................................................................…12

*In re Genentech,* 566 F.3d 1338, 1343 (Fed. Cir. 2009) ...........................................10

*In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008)..............................10

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000)..6,10,12,13

*Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947) ..12,13

*Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)..................................................14

*Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987)............................................12,13

*M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 17 (1972) ...................................8

*Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)...........................................................................................10

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981). ............................................6

*Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois* 2013 WL 1662952, at \*5

   (N.D. Ohio April 17, 2013) ................................................................16

*Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d. Cir. 2004)……………9

*Simonoff v. Expedia, Inc.,* 643 F.3d 1202, 1205 (9th Cir. 2011)............................8

*Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th Cir. 2007)...........................6

**Statutes & Rules**

28 U.S.C. § 1494(a)…………………………………………………………...passim

28 U.S.C. § 1391(c)………………………………………………………......…7

## I.    INTRODUCTION

Plaintiffs assert that they are entitled to compensation under the Federal Labor Standards Act, as well as quantum meruit and unjust enrichment principles, because they used Yelp to publish their reviews, photos, and other content contributions online—even though Plaintiffs never expected to be paid, Yelp never agreed to pay Plaintiffs, and Plaintiffs derived valuable benefits from the use of Yelp's free services.

However, because the Plaintiffs repeatedly agreed to Yelp's forum selection clause, and because the convenience of the parties and the interests of justice favor transfer, Yelp moves to transfer this case to the U.S. District Court for the Northern District of California. Further, while the transfer motion is pending, the Court should stay all proceedings in this matter to promote judicial economy.

## II.    ALLEGATIONS AND STATEMENT OF FACTS

### A.    Yelp's Terms of Service and its Forum Selection Clause

At least as early as January 1, 2007, Yelp featured the following statement on every page of its public websites: "Use of this site is subject to express Terms of Service. By continuing past this page, you agree to abide by these terms." See Declaration of Ian MacBean ¶ 3. The phrase "Terms of Service" in that statement was hyperlinked to Yelp's Terms of Service. *Id*. On or about September 22, 2010, Yelp reformatted its pages to include a link to its Terms of Service on every page of its public websites. *Id*. Yelp continues to hyperlink the text, "Terms of Service," on each page of its websites. *Id*. These Terms of Service have been in force since November 27, 2012. *Id*. at ¶ 4. Section 13 of these Terms of Service states in relevant part: "FOR ANY CLAIM BROUGHT BY EITHER PARTY, YOU AGREE TO SUBMIT AND CONSENT TO THE PERSONAL AND EXCLUSIVE JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS LOCATED WITHIN SAN FRANCISCO COUNTY, CALIFORNIA." *Id.* Yelp's previous Terms of Service, which were in

-1-

1   force between September 21, 2011 and November 27, 2012, contained the same

2   forum selection clause specified above, as did Yelp's Terms of Service, which

3   were in force between July 21, 2010 and September 21, 2011. MacBean Decl., ¶ 5-

4   6, Exhibit B & C.

5       Yelp invites certain users to join the Yelp Elite Squad, a program through

6   which Yelp recognizes certain users that frequently contribute quality content to

7   Yelp. Macbean Decl. ¶ 16. In order to accept such an invitation, a user must agree

8   to a specific agreement that sets out the Elite Squad membership terms. *Id*. These

9   terms were in force between November 27, 2012 and October 11, 2013. *Id*.

10  Between January 2012 and 2014, in order to join the Yelp Elite Squad, a user must

11  respond to an email that states in relevant part: "If you meet the above criteria and

12  you accept the Elite Squad Terms of Membership, click the button below to accept

13  this invitation and join the [YEAR] Yelp Elite Squad!" *Id*. The "Elite Squad Terms

14  of Membership" text was in blue font and is hyperlinked such that when the user

15  clicks on the text, he or she was taken to then-current Elite Squad Terms of

16  Membership. *Id*. Yelp's records show that Ms. Sayers and Ms. Jeung repeatedly

17  joined Yelp's Elite Squad during this time period, and therefore necessarily agreed

18  to the then-current Elite Squad Terms of Membership. *Id*.

19      A user cannot post reviews, photos, or other content to Yelp's websites or

20  mobile applications without registering for a Yelp user account. MacBean Decl. ¶

21  7.  In order to register a Yelp user account on Yelp's website, the user must go to

22  www.yelp.com/signup to complete an online registration form and electronically

23  submit the form to Yelp. *Id*. Since at least as early as September 15, 2008, the

24  online registration process for a user to establish an account has included the

25  statement: "By clicking the button below, you agree to Yelp's Terms of service

26  and Privacy Policy." *Id*. at ¶ 8. The "Terms of Service" text is in blue font and is

27  hyperlinked such that when the user clicks on the text, he or she is taken to the

28  Yelp Terms of Service Agreement. *Id*. The "button below" refers to a red button

underneath the text that takes the user to the next step in the registration process. *Id*. A user cannot proceed past the first page of the registration process unless he or she clicks on the red button. *Id.* Users who do not click on the button and complete the rest of the registration process are not permitted to post content to Yelp's websites or mobile applications. *Id.*

Since at least as early as October 14, 2012, registered users have had to agree to Yelp's Terms of Service each time they log into Yelp's website. MacBean Decl. ¶ 9. Specifically, on the Yelp login screen, and immediately next to the login button, is the following text: "By logging in you agree to Yelp's Terms of Service and Privacy Policy." *Id.* The "Terms of Service" text is in blue font and is hyperlinked such that when the user clicks on the text, he or she is taken to the Yelp Terms of Service Agreement. *Id*. A user cannot log into Yelp, and cannot post content such as reviews and photos, unless he or she is logged into Yelp. *Id*. Plaintiffs could not have contributed content described in their complaint without being logged into Yelp. *Id*.  Yelp's records show that each of the Plaintiffs repeatedly logged into Yelp's website during this time period. *Id*. at ¶¶ 10, 12, 15.

**B.**    **Where The Parties and Witnesses Reside.**

**1.**    **Plaintiffs reside in Oregon or Pennsylvania and repeatedly agreed to Yelp's forum selection clause**

Plaintiff Amy Sayers alleges that she is domiciled in Portland, Oregon, has written over 500 reviews for Yelp since 2006, and that she was a Yelp Elite, although Yelp later closed her user account.  Complaint ¶¶ 20-22; *see* Facchetti Decl. ISO Motion to Dismiss pursuant to 12b6/12f, Exhibit A, ¶ 16 ("Facchetti MTD Decl.") [Dkt No. 7-2]. According to Yelp's administrative records, Sayers registered as a user of Yelp in August 2007, and again on April 23, 2010, so she necessarily agreed to the Terms of Service as described above. MacBean Decl. ¶ 12. Between the time she registered and the time her account was closed, she posted 691 reviews to Yelp's website. *Id.* In order to publish this content to Yelp,

-3-

Sayers necessarily registered an account with, and was logged into Yelp each time she posted content. *Id.* In fact, in the month-long period between August 3, 2103 and September 3, 2013 alone, Sayers logged in at least 6 times through Yelp's login page. *Id.* Yelp closed Sayers' first account on September 4, 2013, and closed her second account on October 23, 2014. *Id.*

Plaintiff Lily Jeung alleges that she is domiciled in Los Angeles, California, has written approximately 1,100 reviews, and that she was also a Yelp Elite, whose user account was closed. Complaint ¶¶ 24-26; Facchetti MTD Decl., Exhibit A, ¶ 17. However, Jeung's LinkedIn and Facebook profile—which are publicly accessible via the Internet—indicate that she resides in Portland, Oregon. Jeung's LinkedIn profile states that she resides in the "Portland, Oregon area," and her Facebook profile contains an image of her business card, which states that she works as a "Licensed Sales Producer" for "Allstate Insurance Company" at "55 NE Broadway St., Portland, OR 97232." See Declaration of Adrianos Facchetti, ISO Motion to Transfer, Exhibits A-C. According to Yelp's administrative records, Jeung registered as a Yelp user in November 2008, meaning that she necessarily agreed to the Terms of service as described above. MacBean Decl. ¶ 10. Between the time she registered and the time her account was closed, Jeung posted 1103 reviews to Yelp's website. *Id.* In order to publish this content to Yelp, Jeung necessarily registered an account with, and was logged into Yelp each time she posted content. *Id.* In fact, in the month-long period between August 3, 2103 and September 3, 2013 alone, Jeung logged in at least 13 times through Yelp's login page. *Id.* Yelp closed Jeung's account on September 4, 2013. *Id.* at ¶ 11.

Plaintiff Darren Walchesky alleges that he is domiciled in Pittsburgh, Pennsylvania, has written over 1,200 reviews, as well as 238 follow-up and updated reviews, and has taken and submitted 2,122 photographs. Complaint ¶ 27. According to Yelp's administrative records, Walchesky registered as a user of Yelp in February 2009, and has posted at least 1428 reviews. MacBean Decl. ¶ 15.

-4-

In order to publish this content to Yelp, Walchesky necessarily registered an account with, and was logged into Yelp each time he posted content. *Id*. During the period between October 1, 2104 and October 26, 2014 alone, Walchesky logged in at least 24 times through Yelp's login page. *Id*.

### 2. Yelp is headquartered in the Northern District of California

Yelp's headquarters and principal place of business is located in San Francisco, California. MacBean ¶ 17. Yelp's management team are based out of, and primarily located in, San Francisco, California. *Id.* at ¶ 18. Among other teams, Yelp's product, engineering, finance, user operations, and accounting teams are based out of, and primarily located in, San Francisco, California. *Id.* at ¶ 19.

Yelp's information related to the Plaintiffs' claims in this action—such as communications between the Plaintiffs and Yelp, and content contributed by the Plaintiffs to Yelp's free website—are readily accessible from its offices in San Francisco. MacBean Decl. ¶ 20. This information is not accessible to Yelp's few employees in the Central District of California. *Id*.

Yelp's witnesses with knowledge about the creation and implementation of its terms and policies regarding content contribution and the development of the Yelp Elite program, are located in San Francisco. MacBean Decl. ¶ 21. Such employees are not located in the Central District of California. *Id.* Third-party witnesses, such as Yelp's former employees with knowledge about the development of the Yelp Elite program, are located in San Francisco. *Id*. at ¶ 22.

Yelp has approximately 2673 employees in the United States. MacBean Dec. ¶ 23. Approximately 1187 of those employees are located in California. *Id*. Only 13 of those employees are located within the Central District and they work remotely. *Id*. These employees consist of lower level employees primarily involved in advertising sales and marketing, so these employees are unlikely to possess information that is directly relevant to the issues in this case. *Id*. Yelp does not have any offices in California outside of San Francisco and Palo Alto. *Id*.

III.   **PROCEDURAL HISTORY**

Plaintiffs brought the same claims against Yelp in a previous action that was filed on October 22, 2013, and served on October 25, 2013. The action was stylized: *Panzer, et al. v. Yelp, Inc.,* USDC Case No. CV13-07805-DDP (JCGx). Judge Pregerson dismissed the case, without prejudice, on February 19, 2014.

Plaintiffs filed their Complaint in this new action on August 7, 2014, but did not serve it until September 26, 2014. On October 21, 2014, Yelp filed a Motion to Dismiss for failure to state a claim pursuant to Fed. Civ. Pro 12(b)(6), and to strike the class allegations under Rule 12(f). [Dkt. No. 7]. Conference of counsel, pursuant to L.R. 7-3, took place on October 10, 2014 by e-mail, and again on October 20, by telephone. Facchetti Decl. ¶ 4.

IV.   **THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In a typical case, District courts have broad discretion and must consider both the convenience of the parties and various public factors. *Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th Cir. 2007); *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2000). But "[t]he calculus changes, however, when the parties' contract contains a valid forum-selection clause . . ." *Atlantic Marine Const. Co., Inc. v. United States Dist. Court,* 134 S.Ct. 568, 581 (2013). Indeed, as the United States Supreme Court held in *Atlantic Marine*: "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* This changes the ordinary transfer analysis under section 1404(a) in three significant ways. *Id.*

First, a plaintiff's choice of forum is no longer accorded any weight, which is a significant change in the law because courts used to afford considerable weight to plaintiff's choice of forum, subject to various conditions. *See Piper Aircraft Co.*

*v. Reyno,* 454 U.S. 235, 257 (1981). Further, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine,* 134 S.Ct. 581.

Second, parties' private interests (such as the availability of compulsory process for witnesses and the ease of access to sources of proof) are deemed waived by virtue of their agreement to a forum selection clause. In fact, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 582.

Third, while a court may still consider "public interest" factors, they will "rarely defeat" a transfer motion since, "in all but the most unusual cases, 'the interest of justice' will be served by holding parties to their bargain." *Id*. at 582-583.

Applying the *Atlantic Marine* factors to this case, it is clear that this case should be transferred to the Northern District of California.

**A.    This Case Could Have Been Brought In the Northern District of California**

A threshold question in a motion to transfer under § 1404(a) is whether the suit could have been brought in the proposed destination venue. Under 28 U.S.C. § 1391, venue is proper in any judicial district where a defendant "resides" or where a substantial part of the events giving rise to the claim occurred. A corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced pursuant to 28 U.S.C. § 1391(c).

Yelp maintains its principal place of business in San Francisco, and is thus subject to personal jurisdiction there under 28 U.S.C. § 1391(c). MacBean Decl. ¶ 17. Thus, there is no question that this case could have been brought in the Northern District of California.

*//*

YELP INC'S MOTION TO TRANSFER

**B. Plaintiffs' Agreement to the Forum Selection Clause is a "Controlling Weight" in The Transfer Analysis and Strongly Supports Transfer to the Northern District**

As set forth in Yelp's accompanying declarations, the Plaintiffs in this action are subject to binding, enforceable venue provisions that require their claims to be brought in the Northern District of California. Federal law applies to determine the enforceability of forum selection clauses. *Simonoff v. Expedia, Inc.,* 643 F.3d 1202, 1205 (9th Cir. 2011). Under federal law, "[a] forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 17 (1972)). The presumption may only be overcome by a clear showing that the clause is unreasonable under the circumstances. *M/S Bremen*, 407 U.S. at 10. Here, Plaintiffs repeatedly agreed to the forum selection clause, and therefore consented to jurisdiction and venue in the Northern District of California.

First, all those who wish to contribute content to Yelp's website are required to register an account (as Plaintiffs did) and agree to the TOS (as Plaintiffs did). MacBean Decl. ¶¶ 7, 10-16. Such agreements have been held to be valid and enforceable. *See, e.g., Fteja v. Facebook, Inc.,* 841 F.Supp.2d 829, 838–40 (S.D.N.Y. 2012) (forum selection clause was enforceable where there was a notice below the "Sign Up" button that stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up").

Second, each time users log into their account they again confirm acceptance of the TOS, and Plaintiffs admit that they used Yelp's website repeatedly, posting hundreds of reviews and numerous photographs. MacBean Decl. ¶¶ 9-15. Indeed, Jeung posted over 1,100 reviews. *Id*. at ¶ 10.  Further, Plaintiffs logged in

-8-

numerous times, and therefore agreed to the TOS repeatedly. *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d. Cir. 2004) (holding that plaintiff who regularly accessed defendant's website was bound by the terms).

Third, notice to users of their agreement to Yelp's TOS, and a link to the TOS, is provided on Yelp's homepage and on every other page on Yelp's website. MacBean Decl. ¶ 3.

Fourth, Plaintiffs Sayers and Jeung were subject to additional terms because they were members of Yelp's Elite Squad, which also contained the same contractual venue provision. MacBean Decl ¶ 16.

Fifth, Plaintiffs admit that they had notice of Yelp's "strict guidelines and policies . . ." Complaint ¶¶ 63-64.

Because Plaintiffs agreed to Yelp's forum selection clause, this Court should not give Plaintiff's choice of forum any weight. *Atlantic Marine,* 134 S.Ct. 568, 581. Further, this Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 583 (holding that District court erred in giving weight to private interest factors). Therefore, in line with *Atlantic Marine,* "[w]hen the parties have agreed to a valid forum selection clause [as here], a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine,* 134 S.Ct. 581. This case should be transferred.

### C.   Other Factors Also Support Transfer.

Even if the forum selection clause were determined to be unreasonable or otherwise unenforceable, several factors would still support transfer. In determining whether a transfer is convenient to the parties and witnesses and in the interests of justice under 1404(a), courts may consider a number of factors:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-499 (9th Cir. 2009).

### 1.     Most of the party witnesses and documents are located in the Northern District

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006). "It goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citation omitted).

Because discovery has not begun and initial disclosures have not been made, the identity of specific witnesses remains to be determined. However, most of the potential witnesses in this case are likely to be located in the Northern District. Yelp is headquartered in San Francisco, so most of its potentially relevant employees are located there, including management and those whom Plaintiffs allege created "strict guidelines and policies . . ." regarding Plaintiffs' content contributions. Complaint ¶¶ 63-64, 69; MacBean Decl. ¶ 17-18. For example, Eric Singley, the Vice President of Consumer Products at Yelp, is a head product designer and is located in San Francisco. *Id*. at ¶ 19. And Jose Martin, who is the head of Human Resources, is also located in San Francisco. *Id*. Both of these individuals, or those who report to them, are also based in San Francisco, and may potentially have relevant information regarding the issues in this case. If the case proceeds in this District, Yelp's witnesses (like Singley and Martin) will be

required to travel hundreds of miles to attend trial.

By contrast, none of the named plaintiffs reside in, or have any relevant connection with the Central District. Sayers resides in Oregon, Walchesky resides in Pennsylvania (Complaint ¶¶ 20-22), and although Jeung alleges that she resides in this District, Jeung's LinkedIn and Facebook profile—which are publicly accessible via the Internet—make it plain that she resides in Oregon. Jeung's LinkedIn profile states that she resides in the "Portland, Oregon area," and her Facebook profile contains an image of her business card, which states that Jeung works as a "Licensed Sales Producer" for "Allstate Insurance Company" at "55 NE Broadway St., Portland, OR 97232." Facchetti Decl. ¶¶ 1-2, Exhibits A-C. Indeed, the area code of her work telephone number is "503," the same as her attorney's—whose office is located in Portland, Oregon. Given that two of three Plaintiffs reside in Oregon, and given that the Northern District is closer to where they live, there is no question that it would be more convenient for them if this case were transferred to the Northern District.

Furthermore, Yelp's primary servers are located in the Northern District. MacBean Decl. ¶ 20. These servers contain the reviews, photographs, and terms and "restrictions" at issue in this case. *Id*. Indeed, any documents potentially relevant to this case are accessible from Yelp's office in San Francisco, California, but are not accessible in the Central District of California, where Yelp maintains no offices and only a handful of employees who would not have access to the relevant documents. *Id*. at ¶¶ 20, 23.

Because the likely party witnesses (and the relevant documents) are in Northern California, or the likely party witnesses are in locations other than this District, this important factor weighs heavily in favor of transfer.

**2.    The parties have greater contacts with the Northern District than with this District**

Another factor courts consider in the transfer analysis is the parties' contacts with the chosen forum, as compared with the proposed destination forum. *Jones,* 211 F.3d at 498-99. Here, Yelp has significant contact with the Northern District, and only scant contact with the Central District. MacBean Decl. ¶¶ 17-18, 23. The vast majority of Yelp's employees work at Yelp's corporate headquarters, which is located within the Northern District. *Id.* at ¶¶ 17, 23. By comparison, only a small number of Yelp's employees reside within this District, none of whom possesses any relevant information as it relates to this case. *Id.* at ¶ 23. Further, Yelp maintains no offices in the Central District. *Id.* With respect to the Plaintiffs, they, too, have minimal relevant contact with the Central District. Indeed, only one of three Plaintiffs is alleged to be located within this District (which Yelp disputes as argued above), and the other two are located in other states.

### 3. Plaintiffs' choice of forum is irrelevant, or minimal at best

As mentioned above, under *Atlantic Marine,* a plaintiff's choice of forum merits no weight. In fact, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted," a burden which Plaintiffs cannot possibly meet. *Atlantic Marine,* 134 S.Ct. 581.

But even assuming, *arguendo,* that the contractual venue provisions are deemed unenforceable, Plaintiffs' choice of forum should be given minimal weight. This is because a plaintiff's choice is given less deference where the action is brought on behalf of a nationwide class. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987); *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947). "In part, the reduced weight on plaintiff's choice of forum in class actions serves as a guard against the dangers of forum shopping, *especially when a representative plaintiff does not reside within the district.*" *Hawkins v. Gerber Products Co.,* 924 F.Supp.2d 1208, 1214-1215 (S.D. Cal. 2013) (emphasis added). In judging the weight to be accorded [plaintiff's] choice of forum, consideration

-12-

must be given to the extent of both [plaintiff's] and the [defendant's] contacts with the forum, including those relating to [plaintiff's] cause of action . . ." *Lou,* 834 F.2d at 739 (internal citations omitted).

In this case, Plaintiffs purport to represent a non-specific, "large class of non-wage-paid writers." Complaint ¶ 1. This aspiring class encompasses every person who has *ever* posted a review or other content to Yelp's website—perhaps millions of individuals who are located all over the United States. The sheer size of the class alone severely weakens any claim that Plaintiffs' choice should be given weight. *Koster,* 330 U.S. at 524 ("where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened.").

But the fact that *none* of the Plaintiffs reside within this District cuts against their choice of forum even more so. Yes, Jeung alleges in the Complaint that she resides within the Central District, but her public statements to the contrary (that she lives and works in Oregon) raises legitimate questions about the likelihood of forum shopping in this case. *Foster v. Nationwide Mut. Ins. Co.,* No. 07–04928, 2007 WL 4410408 at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum-shopping is evident . . . courts should disregard plaintiff's choice of forum.")

 Moreover, the Complaint does not contain any meaningful allegations relating to Yelp's purported contacts with this District, much less how they relate to the causes of action. So although a plaintiff's choice of forum is ordinarily given considerable weight, under the circumstances of this case, it should be given no weight, or minimal consideration, at best.

### 4.    Transfer would save the parties time and expense

For the same reasons discussed in section IV(C)(3), the costs, both in time and expense, would be far less if the case were transferred. This, too, weighs in favor of transfer. *Jones,* 211 F.3d 498-499 (relative costs of litigating the case is a factor in the transfer analysis).

**5.      No delay or prejudice would be caused by transfer**

This case is young. The Court has not conducted a Scheduling Conference; no trial date has been set; and no party has served discovery. No risk of delay or prejudice is likely. To the extent transfer would cause a brief delay, Plaintiffs can hardly be heard to complain, having delayed service of their Complaint for nearly two months.

## V.      THIS CASE SHOULD BE STAYED PENDING A RULING ON THE MOTION TO TRANSFER

The power to stay proceedings under appropriate circumstances is part of a court's inherent authority to manage its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

In considering whether to grant a stay, the Court must the weigh competing interests that will be affected by the grant or refusal to grant a stay. *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are: (1) the possible damage from the granting of a stay; (2) the hardship or inequity a party may suffer in being required to go forward; (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay; (4) "the interests of the plaintiffs in proceeding expeditiously with this litigation;" and (5) "the convenience of the court in the management of its cases and the efficient use of judicial resources." *Id.* (citing *Landis,* 229 U.S. at 254–55); *Fed Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 903 (9th Cir.1989).

### A.      Conservation of Judicial Resources.

Ordering a stay of this action pending the Court's decision on the transfer motion will likely conserve judicial resources in at least two ways. First, if this Court grants the Motion to Transfer and at the same time considers Yelp's Motion

to Dismiss [Dkt. No. 7] and anti-SLAPP motion [to be filed to soon], it will have unnecessarily expended time and effort familiarizing itself with the details of a case that would ultimately be presided over by another judge. Secondly, if the Court decides to move forward with the Scheduling Conference, presently set for December 4, 2014, the time spent on case management by this Court would need to be repeated by any subsequent judge who is assigned to the case. Accordingly, there is a considerable amount of time and effort that could be conserved by this Court if it decides to stay the case pending the transfer decision.

Even if this Court denies the stay and decides to rule on the Motion to Dismiss and anti-SLAPP motion, there is a possibility that its orders could be vacated later if it determines that transfer to the Northern District is warranted. If that occurs, it would prove to be an unnecessary waste of the Court's investment of time and energy. *In re Upjohn Co. Antibiotic Cleocin Prod. Liab. Litig.,* 81 F.R.D. 482, 486-87 (E.D. Mich. 1979) (ruling that the transferee court may vacate or modify any orders entered by a transferor court).

**B.    Conservation of the Parties' Resources.**

Granting a stay would relieve the parties of having to expend substantial time preparing and responding to discovery, including issues related to class certification. So far, no discovery has taken place. Facchetti Decl. ¶ 3. No requests for interrogatories or requests for production of documents have been served. *Id*. Nor have any depositions been noticed or taken, or any expert reports exchanged. *Id*. And no subpoenas have been served. *Id*. Neither has any discovery regarding class certification been served. *Id*. However, the parties are at the precipice of having to expend substantial resources over the next several months, unless the Court stays the matter. *Id.* Depending on the Court's ruling on upcoming substantive motions, it could affect the scope of discovery in this matter, making much of the parties' discovery misdirected or completely wasted. Where, as here, discovery is at its early stages, staying the case "advances judicial efficiency and

-15-

will maximize the likelihood that neither the Court . . . nor the parties expend their assets addressing invalid claims." *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois* 2013 WL 1662952, at *5 (N.D. Ohio April 17, 2013) (granting stay and characterizing case as being in "early" stage of discovery where initial disclosures had been exchanged and defendants had provided invalidity and unenforceability contentions and certain paper discovery) (citations and quotation omitted). Additionally, because different courts have different discovery rules and procedures regarding class certification, a decision on the transfer motion could have a significant impact on discovery and class certification issues down the line in this case.

### C. Plaintiffs Would Suffer No Undue Prejudice from a Stay.

Granting a stay pending the Court's decision would not cause the Plaintiffs to suffer prejudice or delay. The Motion to Transfer is set for hearing on December 11, 2014. Assuming the Court renders a decision by that date, or shortly thereafter, Plaintiffs will suffer no harm from a short stay of this matter. This is especially true since the case is in its early stages, as discussed above.

## VI. CONCLUSION

Based on the foregoing, Yelp respectfully requests that this matter be transferred to the Northern District of California. Further, Yelp requests a stay of all proceedings in this case, including a stay on discovery pending a decision on the transfer motion.

DATED: November 6, 2014 LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

By: /s/ Adrianos Facchetti
Attorneys for Defendant,
YELP INC.

1            **(PROOF OF SERVICE – 1013A(3), 2015.5 CCP)**

2 **STATE OF CALIFORNIA**      )
3                                ) SS.
    **COUNTY OF LOS ANGELES**    )

4

5       I am employed in the County of Los Angeles, State of California. I am over
the age of 18 and not a party to the within action; my business address is 301 E.
6 Colorado Blvd, Suite 514., Pasadena, CA 91101.

7

8       On November 6, 2014 I served the foregoing document(s) described as
DEFENDANT YELP INC'S MOTION TO TRANSFER UNDER 28 U.S.C. §
1404(a) AND MOTION FOR IMMEDIATE STAY PENDING DECISION ON
9 TRANSFER on the interested parties in this matter by placing __X__ a true copy
___ the original thereof enclosed in a sealed envelope addressed as follows:

10

11 *Attorney for Plaintiffs*        *Courtesy Copy:*
   Daniel A. Bernath, Esq.       Daniel A. Bernath, Esq.
12    10335 SW Hoodview Drive    1319 Kingswood Ct.
   Tigard, OR 97224          Ft Myers, Florida 33919
13

14     **(BY MAIL)** __X__ I placed a true copy of the foregoing document(s) in a
15 sealed envelope addressed to each interested party as set forth above. I am "readily
familiar" with the firm's practice of collection and processing correspondence for
16 mailing. Under that practice, it would be deposited with the U.S. Postal Service on
that same day at Pasadena, California in the ordinary course of business. I am
17 aware that on motion of the party served, service made pursuant to CCP § 1013(a)
should be presumed invalid if postal cancellation date or postage meter date is
18 more than one day after date of deposit for mailing affidavit.
19

20     **(FEDERAL)** __X__ I declare under penalty of perjury under the laws of the
21 United States of America that the above is true and correct.

22 Executed on November 6, 2014 at Pasadena, CA.

23                                     *Reagan Hyland*
24                                    Reagan Hyland

25

26

27

28