1  ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
   LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
2  301 E. Colorado Blvd, Suite 514
3  Pasadena, California 91101
   Telephone:     (626) 793-8607
4  Facsimile:     (626) 793-7293
   Email:         adrianos@facchettilaw.com
5
6  AARON SCHUR, ESQ. (S.B.N. 229566)
   YELP INC.
7  140 New Montgomery Street
   San Francisco, CA 94105
8  Telephone: (415) 908-3801
   Facsimile:   (415) 615-0809
9  Email:        aschur@yelp.com
10
11 Attorneys for Defendant
   YELP INC.
12
13             UNITED STATES DISTRICT COURT FOR
               THE NORTHERN DISTRICT OF CALIFORNIA
14
15

| | |
|---|---|
| LILY JEUNG, AMY SAYERS, and DARREN WALCHESKY, on behalf of themselves and all other similarly situated,<br><br>     Plaintiffs<br><br>   vs.<br><br>YELP INC.,<br><br>    Defendant. | CASE NO. 3:15-CV-02228-RS<br><br>DEFENDANT YELP INC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(b)(6) AND TO STRIKE CLASS AND COLLECTIVE ALLEGATIONS UNDER RULE 12(f)<br><br>[Filed concurrently with Declaration of Adrianos Facchetti and Proposed Order]<br><br>Date:  July 9, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 3, Floor 17<br>Judge: Hon. Richard Seeborg |

YELP INC'S MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE THAT ON** July 9, 2015 at 1:30 p.m.., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Richard G. Seeborg, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Yelp, Inc. will, and hereby does, move this Court to dismiss the claims in the Complaint against them for failure to state a claim pursuant to Rule 12(b)(6) and to strike class and collective allegations pursuant to Rule 12(f). This motion is based on the facts as set forth in the accompanying memorandum of points and authorities.  In summary, Plaintiffs never expected to be paid, Yelp never agreed to pay Plaintiffs, and Plaintiffs derived valuable benefits from the use of Yelp's free services. Indeed, Plaintiffs have never been employees of Yelp, and the Complaint's sparse and meandering allegations fail to establish the existence of any employer/employee relationship between Plaintiffs and Yelp. Accordingly, pursuant to Rule 12(b)(6), this Court should dismiss Plaintiffs' entire Complaint. In addition, pursuant to Rule 12(f), Plaintiffs' purported class and collective allegations should be stricken because there are no allegations demonstrating a common plan or policy that violated the law.

This motion is supported by the concurrently filed brief in support of the motion to dismiss, the Declaration Adrianos Facchetti, and the arguments of counsel that the Court may entertain at the time of hearing on this motion.

DATED: June 6, 2015   LAW OFFICES OF ADRIANOS FACCHETTI, P.C.


By:     /S/ Adrianos Facchetti
          Attorneys for Defendant,
          YELP INC.

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………......................................... 1

II.     THE ALLEGATIONS AND INCORPORATED DOCUMENTS……………………2

        A. Yelp Inc………………………………………………………………….. 2

        B. Yelp's Terms of Service and Other Written Policies……………………………… 2

        C. Yelp Elite Squad…………………………………………………………… 3

        D. Plaintiffs……………………………………………......................................... 3

        E. Class and Collective Allegations……………………………………………… 4

        F. Documents Incorporated by Reference and Necessarily Relied on by Plaintiffs

           in the Complaint………………………………………………………………… 4

III.    PROCEDURAL HISTORY……………………………………………………… 5

IV.     RULE 12(b)(6)………………………………………………………………... 5

        A.      Legal Standard……………………………………………………… 5

        B.      Plaintiffs' FLSA Claim Fails Because They Do Not Plausibly Allege That

                They Are—Or Ever Were—Employees of Yelp……………………………… 6

                1.      No Factual allegations plausibly establish that Yelp had the power

                        to hire or fire Plaintiffs…………………………………........ 7

                        a.      Plaintiffs do not plausibly allege that Yelp had the power to

                                hire them……………………………………………………… 7

                        b.      Plaintiffs do not plausibly allege that Yelp had the power to

                                fire them……………………………………………………… 8

                2.      There are no plausible allegations that Yelp exercised supervision or

                        control over Plaintiffs……………………………………………… 8

                3.      Offers of free promotional items do not plausibly establish Yelp

                        determined rates and methods of payment…………………………12

                4.      The allegations are insufficient to establish that Yelp maintained

                        employment records……………………………………………… 12

1          5.      The "Relative Nature of the Business" test does not apply in

2                  in this case……………………………………………………….. 12

3      A.      Plaintiffs' Quantum Meruit Claim Fails Because They Had no Reasonable

4              Expectation of Monetary Compensation, and in Any Event Their Claim

5              Is Time Barred………………………………………………………… 12

6      B.      California Does Not Recognize Claims for Unjust Enrichment………………. 14

7   V.   Rule 12(f)…………………………………………………………………... 15

8      A.      Legal Standard…………………………………………………………... 15

9      B.      There Are No Allegations Demonstrating a Common Plan or Policy That

10             Violated the Law………………………………………………………… 15

11  VI.   CONCLUSION…………………………………………………………….. 17

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................................ 5

4
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ................................................. 5

5
*Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469, 1470 (9th Cir. 1983) ... 6

6
*Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) ........................................................ 6

7
*Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008)....................................... 15

8
*Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ. 10320 (JGK), 1996 WL 437929, at *6 (S.D.N.Y. Aug.

9
2, 1996) ...................................................................................................................... 7

10
*Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) .................................................... 6

11
*Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2005) ............................... 4

12
*In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992) ................ 13

13
*Dinosaur Dev., Inc. v. White*, 216 Cal.App.3d 1310, 1315 (1989)...................................... 14

14
*Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981)................................ 12

15
*Edwards v. District of Columbia*, 755 F.3d 996, 1006 (D.C. Cir. 2014) ............................ 2

16
*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ............................... 15,17

17
*Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ......................... 7

18
*Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961) ......................... 6

19
*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.App.4th 1410, 1419 (1996) ..... 13

20
*Huskinson & Brown v. Wolf,* 32 Cal. 4th 453, 458 (2004) ........................................... 13

21
*Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal.App.4th 990, 996 (1999)...................... 13

22
*Lambert v. Ackerley*, 180 F.3d 997, 1001-02, 1012 (9th Cir. 1999)................................ 6

23
*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014) ............................................ 1

24
*Lyons v. Bank of Am.,* 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) ............................ 15

25
*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)....................................................... 6

26
*Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003) ......................... 15

27
*Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, (9th Cir. 1990)................... 10

28
*Misra v. Decision One Mortgage Co., LLC*, 673 F.Supp.3d 987, 992 (C.D. Cal. 2008).............. 16

-iv-

1   *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) ............................ 12

2   *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) .............................................. 15

3   *Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *15-16 (N.D. Cal. Dec. 4, 2009)

4   ................................................................................................................................................. 15

5   *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012).................................. 8,14,15

6   *In Re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab.*

7   *Litig.*, 754 F.Supp.2d 1145, 1194 (C.D. Cal. 2010)................................................................. 14

8   *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011)...................................... 6

9   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ........................................................... 6

10  *Warren v. Fox Family Worldwide, Inc.,* 171 F. Supp. 2d 1057, 1060 n.5 (C.D. Cal. 2001) .......... 7

11  *Wescoatt v. Meeker*, 63 Cal.App.2d 618, 626 (1944) .................................................................... 13

12  *White v. Osmose, Inc.*, 204 F.2d 1309, 1313 (M.D. Ala. 2000)...................................................... 15

13  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-974 (9th Cir. 2010)............................ 15

14  *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996)………………………………….8

15

16  **Rules**

17  Fed. R. Civ. P. 12(b)(6)…………………………………………………………… passim

18  Fed. R. Civ. P. 12(f)………………………………………………………………… passim

19
20
21
22
23
24
25
26
27
28

YELP INC'S MOTION TO DISMISS

## I.   INTRODUCTION

With the rise of the Internet as a tool for expression and commerce, websites have proliferated to give hundreds of millions of people ways to express themselves in unprecedented ways. Online users can spread news on Twitter, post job listings on Craigslist, review books on Amazon, or share consumer experiences on Yelp—reaching a far more vast audience for their content than ever before. Plaintiffs here threaten to upend these innovative services with the outrageous claim that anyone who posts something on the Internet becomes an employee of the online forum in which it is posted, and is therefore entitled to compensation. Under Plaintiffs' theory, popular websites like Amazon, eBay, Facebook, Google, and Twitter would suddenly gain hundreds of millions of employees, all entitled to billions of dollars in payment by the mere fact that they have used these online forums to express themselves through content contributions. Anyone would become an employee of a website merely through the act of posting content to it. Plaintiffs' theory is meritless, but if legitimized by this Court would endanger the public's access to free online forums.

Plaintiffs assert that they are entitled to compensation based on the Fair Labor Standards Act ("FLSA") and quantum meruit and unjust enrichment principles because they used Yelp's website to publish their reviews, photos, and other content contributions online—even though, as alleged, Plaintiffs never expected to be paid, Yelp never agreed to pay Plaintiffs, and Plaintiffs derived valuable benefits from the use of Yelp's free services.

Indeed, Plaintiffs have never been employees of Yelp, and the Complaint's sparse and meandering allegations fail to establish the existence of any employer/employee relationship between Plaintiffs and Yelp. Accordingly, pursuant to Rule 12(b)(6), this Court should dismiss Plaintiffs' Complaint in its entirety.

In addition, pursuant to Rule 12(f), Plaintiffs' purported class and collective action allegations should be stricken because Plaintiffs do not identify a class or collective that is "similarly situated," much less that they were victims of a common policy or plan that violated the law.

//

YELP INC'S MOTION TO DISMISS

1    Plaintiffs previously brought this same case in the United States District Court for the

2    Central District, which Judge Pregerson dismissed in early 2014. This Court should dismiss it

3    again.

4    **II.       THE ALLEGATIONS AND INCORPORATED DOCUMENTS**

5          **A.       Yelp Inc.**

6          Defendant Yelp Inc. ("Yelp") owns and operates Yelp.com, a popular social networking

7    and consumer information website, and related mobile applications (collectively "Yelp.com"),

8    for users to share information about local communities worldwide. See Complaint ¶ 1:29-31.

9    Yelp, among other things, provides and publishes a forum for members of the public to read and

10   write reviews about local businesses, services, and other entities such as non-profit organizations

11   and government agencies. *Id.*[1] Members of the public—like the Plaintiffs—contribute reviews

12   and rate local businesses. *Id.* Around the time the Complaint was filed, Yelp averaged 138

13   million unique visitors per month to its websites and its users had contributed over 61 million

14   reviews. *Id.* at 1:32-33.

15         **B.       Yelp's Terms of Service and Other Written Policies**

16         Like many other websites, Yelp maintains Terms of Service ("TOS"), Content

17   Guidelines, Frequently Asked Questions ("FAQ"), and other policy statements that explain and

18   set limits on how individuals may use Yelp's Services. Complaint, ¶¶ 63-64, 66. Facchetti Decl.,

19   ¶¶ 5-8, Exhibits C-F. Users must agree to the TOS prior to contributing content to Yelp.com. *Id.*

20         The TOS make clear that Yelp users may not and will not be compensated monetarily for

21   the content they publish to Yelp, for which Yelp obtains a license in order to be able to display

22   such content to the public. The section titled "Our Right to Use Your Content" provides that

23   "[Yelp] may use Your Content in a number of different ways . . . As such, you hereby

24   irrevocably grant us world-wide, perpetual, non-exclusive, royalty-free, assignable,

25   sublicensable, transferable rights to use Your Content for any purpose." Facchetti Decl., ¶ 7,

26   _____

27   [1] *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014) (Yelp "provides an online forum on
     which its users express opinions as to services ranging from dog walkers to taco trucks");
28   *Edwards v. District of Columbia*, 755 F.3d 996, 1006 (D.C. Cir. 2014) (Yelp "provide[s]
     consumers a forum to rate the quality of their experiences.").

Exhibit E. ¶5.B. The section on "Ownership" states: "We own the Yelp Content . . . Except as expressly and unambiguously provided herein, we do not grant you any express or implied rights, and all rights in and to the Site and the Yelp Content are retained by us." *Id.*, ¶ 5.C. The section on "Advertising" states: "Yelp and its licensees may publicly display advertisements and other information adjacent to or included with Your Content. You are not entitled to any compensation for such advertisements." *Id.*, ¶ 5.D. One of the "RESTRICTIONS" is: "You agree not to, and will not assist, encourage, or enable others to use the Site to: [¶] Violate our Content Guidelines, for example, by . . . compensating someone or being compensated to write or remove a review." *Id.*, ¶ 6.A. i. The TOS state that Yelp may terminate user accounts at any time, and allow users to terminate their own accounts. *Id.*, ¶ 14. The TOS provide that "BY ACCESSING OR USING THE SITE, YOU REPRESENT THAT YOU HAVE READ, UNDERSTOOD, AND AGREE TO THESE TERMS, INCLUDING THIS SECTION." *Id.*, ¶ 12.

### C.   Yelp Elite Squad

Yelp invites certain users to join the Elite Squad, a program through which Yelp recognizes certain users who frequently contribute quality content to Yelp.com. Complaint, ¶¶ 29, 31, 49, 53, 54, 64, and Facchetti Decl., Exhibit A, ¶¶ 16-17. Users who accept Yelp's invitation receive access to special events that may include food and beverage tastings from local businesses, and free promotional items with Yelp branding. Facchetti Decl. ¶ 3, Exhibit A, ¶¶ 38-40.

In order to join the Yelp Elite, a user must agree to Yelp's Elite Terms. Facchetti Decl ¶ 9, Exhibit G. The Elite Terms make clear that Yelp Elite members are not employees of Yelp, and that such members, or Yelp, may terminate Elite membership at any time. *Id.*

### D.   Plaintiffs

Plaintiff Sayers alleges that she is domiciled in Portland, Oregon, has written over 500 reviews for Yelp since 2006, and that she was a Yelp Elite, although Yelp later closed her user account. Complaint ¶¶ 20-22; Facchetti Decl., ¶ 3, Exhibit A, ¶ 16. Plaintiff Jeung alleges that she is domiciled in Los Angeles, California, has written approximately 1,100 reviews, and that she was also a Yelp Elite, whose user account was closed. Complaint ¶¶ 24-26; Facchetti Decl., ¶

3, Exhibit A, ¶ 17. Plaintiff Walchesky alleges that he is domiciled in Pittsburgh, Pennsylvania, has written over 1,200 reviews, as well as 238 follow-up and updated reviews, and has submitted 2,122 photographs. Complaint ¶ 27.

Plaintiffs claim they are entitled to compensation because Yelp has published their reviews, photos, and other content contributions online. However, each of the Plaintiffs submitted their content pursuant to Yelp's Terms of Service, which did not provide any expectation of being compensated for that content. Ms. Sayers and Ms. Jeung were subject to additional terms as members of the Yelp Elite Squad. Facchetti Decl. ¶ 3, Exhibit A, ¶¶ 16-17. Based on these agreements, it is clear that Plaintiffs voluntarily used Yelp's free services to publish their content. They could not have had a reasonable expectation of being paid for their submissions.

### E.   Class and Collective Allegations

Plaintiffs allege their putative class and collective as follows:

> Plaintiffs in all claims, pursuant to the FLSA, 29 U.S.C. §216, on behalf of themselves and all similarly situated persons, were employees of Defendant, and were not paid wages for their work published on Defendant's website; each performed duties relating to the creation and promotion of content on behalf of Defendant, including but not limited to writing researching, editing, lodging reviews, upgrading prior reviews, and generally promoting the site, during the period between four years prior to the filing of this Complaint and until the date of final adjudication of this action (the "FLSA Class").

Complaint ¶ 35.

### F.   Documents Incorporated by Reference and Necessarily Relied on by Plaintiffs in the Complaint

Plaintiffs refer to, and rely upon specific Terms and other disclosures displayed on Yelp's website to support their allegations. Those documents and disclosures include Yelp's Frequently Asked Questions, Terms of Service, Content Guidelines, and Elite Squad Terms of Membership. Due to these allegations, the Court may treat the contents of the documents as part of the Complaint, and assume that their contents are true for purposes of this motion. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2005).

III.    **PROCEDURAL HISTORY**

Plaintiffs brought the same claims against Yelp in a previous action that was filed on October 22, 2013, and served on October 25, 2013. The action was stylized: *Panzer, et al. v. Yelp, Inc.*, USDC Case No. CV13-07805-DDP (JCGx). Judge Pregerson dismissed the case, without prejudice, on February 19, 2014, after Plaintiffs failed to respond to Yelp's motion to dismiss for failure to state a claim.

Plaintiffs filed their Complaint in this new action on August 7, 2014, again in the Central District, which was assigned to Judge Olguin. On October 21, 2014, Yelp filed a Motion to Dismiss for failure to state a claim pursuant to Fed. Civ. Pro 12(b)(6), and to strike the class allegations under Rule 12(f) [Dkt. No. 7]. On November 6, 2014, Yelp filed a Motion to Transfer Under 28 U.S.C. § 1404(a) and Motion for Immediate Stay Pending Decision on Transfer [Dkt. No. 10]. Shortly thereafter, Yelp filed a Special Motion to Strike pursuant to California's anti-SLAPP statute, Code of Civil Procedure § 425.16, seeking to strike the second and third claims of the Complaint [Dkt. No. 12]. On May 13, 2015, Judge Olguin granted Yelp's Motion to Transfer Under 28 U.S.C. § 1404(a), transferring the case to this judicial district [Dkt. No. 48]. Judge Olguin did not rule on Yelp's other motions, and heard no oral arguments related to them.

IV.    **RULE 12(b)(6)**

   A.    **Legal Standard**

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, there must be "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where

1  a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

2  the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

3       In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-

4  pronged approach: (1) first, discount conclusory statements, which are not presumed to be true;

5  and then, assuming any factual allegations are true, (2) determine "whether they plausibly give

6  rise to entitlement to relief." *See id.* at 679; *see also Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th

7  Cir. 2012). In making this determination, a "court may consider evidence on which the complaint

8  'necessarily relies, if:  (1) the complaint refers to the document; (2) the document is central to the

9  plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

10  motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *See also United States v.

11  Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). A court may treat such a document as

12  "part of the complaint, and thus may assume that its contents are true for purposes of a motion to

13  dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

14       **B.**    **Plaintiffs' FLSA Claim Fails Because They Do Not Plausibly Allege That**

15           **They Are—Or Ever Were—Employees Of Yelp**

16       Under the FLSA, the standard by which an employer/employee relationship exists is

17  judged by the "economic reality" of the parties' relationship. *Bonnette v. California Health &

18  Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983); *Boucher v. Shaw*, 572 F.3d 1087, 1091

19  (9th Cir. 2009) (*citing Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961)).

20  To determine the "economic reality," the Ninth Circuit applies a four-factor test that considers

21  whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised

22  and controlled employee work schedules or conditions of employment, (3) determined the rate

23  and method of payment, and (4) maintained employment records. *See Lambert v. Ackerley*, 180

24  F.3d 997, 1001-02, 1012 (9th Cir. 1999); *Bonnette*, 704 F.2d at 1470. Applying the above test,

25  there is no doubt that Plaintiffs failed to allege sufficient facts to state a plausible claim under the

26  FLSA. We analyze each factor in turn below.

27  //

28  //

1. **No factual allegations plausibly establish that Yelp had the power to hire or fire Plaintiffs.**

   a. **Plaintiffs do not plausibly allege that Yelp had the power to hire them.**

Plaintiffs allege that Yelp hired them.[2] Complaint ¶¶ 20, 24, 27. But there are no facts to support their conclusion. *See In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (court is not required "to accept as true allegations that are merely conclusory . . .") Plaintiffs do not allege facts regarding a hiring process, a start date, an employment contract, or any other information that would indicate an actual employment relationship. Nor do Plaintiffs identify a person or persons who hired the Plaintiffs, and whether the unnamed hirer had the authority or power to do so on Yelp's behalf. Indeed, Plaintiffs do not allege an understanding, let alone an agreement that they would be paid to use Yelp.com.

Instead, they advance the theory that voluntarily using a free service equates to an employment relationship. Severely undermining this theory, however, and making it all the more implausible, is the fact that the agreements referenced in the Complaint plainly state that Plaintiffs are *not* employees. The Elite Terms[3] state: "You understand that you are not an employee, representative, or agent of Yelp. You agree that you will not represent yourself as an employee, representative, or agent of Yelp." Facchetti Decl. ¶ 9, Exhibit G, ¶ 7. The TOS states: "THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL FAULTS" AND

---

[2] In an apparent effort to evade a motion to dismiss, Plaintiffs developed their own lexicon throughout the Complaint. For example, creating a user account on Yelp's free website is labeled being "hired", and having a user account closed is being "fired." These and similar conclusory labels are not entitled to any presumptions of veracity.

[3] While Plaintiffs scrubbed references to the Yelp Elite squad from the Complaint, the previous lawsuit repeatedly referred to it, and alleged that Sayers and Jeung were "Elite" reviewers. Facchetti Decl., ¶ 3, Exhibit A, ¶¶ 16-17, 39-40, 51; *compare with* Complaint ¶¶ 20, 49, 55, 68. Indeed, in an apparent effort to avoid a motion to dismiss, in lieu of using the term "Elite reviewer," they use the term "model reviewer." *Id.* at ¶¶ 20, 49, 55, 68; *Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ. 10320 (JGK), 1996 WL 437929, at *6 (S.D.N.Y. Aug. 2, 1996) ("―[T]hat more complete allegations have been deliberately omitted from the Second Amended Complaint to avoid a motion to dismiss raises serious questions as to the good faith basis for a claim…."). The Court should thus determine that the previous allegations are party admissions for purposes of the present motion. *See Warren v. Fox Family Worldwide, Inc.,* 171 F. Supp. 2d 1057, 1060 n.5 (C.D. Cal. 2001) (plaintiffs' allegations in prior pleading are party admissions).

YELP INC'S MOTION TO DISMISS

1   "AS AVAILABLE" BASIS, WITH THE EXPRESS UNDERSTANDING THAT THE YELP

2   ENTITIES MAY NOT MONITOR, CONTROL OR VET USER CONTENT.  AS SUCH,

3   YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK." *Id*. at ¶ 7, Exhibit

4   E. ¶ 12.A. The lack of any facts demonstrating that Plaintiffs were hired, together with the

5   agreements, makes it clear that no plausible employment relationship exists. *See Williams v.*

6   *Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ("Williams had neither an express nor an implied

7   agreement for compensation with the Salvation Army and thus was not an employee."); *Tasini v.*

8   *AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012) (dismissing state law equitable claims

9   of "unpaid content providers" because "plaintiffs submitted their materials to The Huffington

10  Post with no expectation of monetary compensation and that they got what they paid for—

11  exposure in The Huffington Post"), *aff'd*, 505 Fed. Appx. 45 (2d. Cir. 2012).

12          **b.      Plaintiffs do not plausibly allege that Yelp had the power to fire them.**

13          Plaintiffs Sayers and Jeung allege that they were "fired," presumably because Yelp

14  closed their free accounts. Complaint ¶¶ 22, 26. But terminating an individual's ability to access

15  a free website where they voluntarily post information does not mean they were "fired."

16  Plaintiffs' allegations merely describe the termination of their free user accounts for violating

17  Yelp's terms, actions that are entirely consistent with their status as users and inconsistent with

18  the termination of an employee relationship. Facchetti Decl. ¶ 7, Exhibit E, ¶ 14.

19          Plaintiffs' failure to allege any plausible facts showing that Yelp had the ability to hire or

20  fire them, much less facts showing any employment agreement—implicit or explicit—supports

21  the economic reality that Plaintiffs are *not* Yelp's employees under the FLSA. *Strickland*, 87

22  F.3d at 1067.

23          **2.      There are no plausible allegations that Yelp exercised supervision or control**

24                  **over Plaintiffs.**

25          There are no plausible allegations that Yelp ever controlled Plaintiffs' work schedules,

26  working conditions, equipment, or any other component of a legitimate employment relationship.

27  Instead, Plaintiffs make a number of spurious allegations to create the false appearance that Yelp

28  //

maintained control. These allegations can be broken down into four categories, and are analyzed below.

First, Plaintiffs allege that Yelp must exercise control over the Plaintiffs because it exercises control over its actual employees. Complaint ¶¶ 6, 13, 31. However, this ignores the distinction between those whom Yelp actually employs (software engineers, salespeople, community managers, and accountants), and those whom it does not—individuals who simply use the services that Yelp provides and have never entered into any employment relationship with Yelp. The allegations that Yelp controls the work of its actual employees (including their pay and work schedules) simply does not plausibly support a conclusion that Yelp therefore must control the Plaintiffs.

Although Plaintiffs frequently aver that Yelp designates "workers" or "employees" as "'reviewers' or 'Yelpers' or 'independent contractors' or 'interns' or 'volunteers' or 'contributors,'" these labels are irrelevant, since there is no plausible allegation that Yelp used terms such as "employee," "intern," or "independent contractor" in relation to the Plaintiffs. Complaint ¶¶ 9, 12, 82. Similarly, the fact that Yelp recruits interns (who are paid) does not mean that Yelp hired any Plaintiff as an intern. Complaint ¶ 79.

Second, Plaintiffs allege that Yelp exercises control by encouraging users to use its website (Complaint ¶ 32), educating users about its website (*id*. at ¶¶ 53, 55-58), and managing the use of its website through written Terms (*id*. at ¶¶ 63-64). But there is no allegation that Yelp required Plaintiffs to use its website at all, much less that Yelp supervised or scheduled the creation of their content or its posting on Yelp's website. Nor is it alleged that Yelp required Plaintiffs to create website content at a certain location or using certain equipment, or otherwise forced Plaintiffs to submit any website content at all to Yelp.

On the contrary, the Complaint merely recites that Yelp—consistent with its role as an online forum, educates its end-users about how to use its websites, "urges" the use of its services, and maintains and enforces its Terms and other policies once users post content to Yelp's website. For example, the Complaint vaguely asserts, without factual basis, that Yelp "urges" and "directs" individuals to write reviews for its website. Complaint ¶¶ 21, 25, 28, 58. Plaintiffs

1   also allege that Yelp—like any online business—generally encourages consumers to use its

2   website. *Id*. at ¶¶ 53-56. However, these allegations of encouragement do not plausibly translate

3   into any type of actual control of the Plaintiffs, and only reflect Yelp's own efforts to publicize

4   its website to consumers like Plaintiffs.

5           Plaintiffs also repeatedly take issue with the fact that Yelp promulgates Terms and

6   policies relating to online content, and once content is posted to its website, may enforce those

7   Terms and policies to correct violations (including account closures & content removal).

8   Complaint ¶¶ 62-64.[4] But Plaintiffs' alleged grievances are not the complaints of employees, but

9   the gripes of end-users of Yelp's free services that disagree with the way Yelp administers its

10  websites. Complaint ¶ 73 ("I loved Yelp until I got an email from them saying they have taken

11  off my photos due to the pictures being my 'personal experience' and that the reason behind

12  taking off my photos is because it does not 'portray the business as a whole.'") citing Content

13  Guidelines ("Photo Guidelines"), Facchetti Decl., ¶ 8, Exhibit F.

14          Moreover, Yelp's Terms—which Judge Olguin determined[5] all three Plaintiffs agreed

15  to—make clear that Plaintiffs alone owned, and were ultimately responsible for, the submission

16  of their own content. Terms of Service, Facchetti Decl., ¶ 7, Exhibit E. Section 5(A) ("You alone

17  are responsible for Your Content, and once published, it cannot always be withdrawn. You

18  assume all risks associated with Your Content, including anyone's reliance on its quality,

19  accuracy, or reliability . . . You may not imply that Your Content is in any way sponsored or

20  endorsed by Yelp."); Section 5(C) ("As between you and Yelp, you own Your Content.");

21  Section 12(A) ("THE SITE IS MADE AVAILABLE TO YOU ON AN "AS IS", "WITH ALL

_____

23  [4] Plaintiffs speculate that Yelp took action on posted content and user accounts to specifically
    benefit advertisers. Such allegations are conclusory and incorrect, but are also irrelevant and
24  appear intended solely to harm Yelp's reputation.

25  [5] In his May 13, 2015 Order, Judge Olguin ruled that all three Plaintiffs registered as Yelp users
    and therefore necessarily agreed to Yelp's TOS: ". . . [A]ll three plaintiffs had adequate notice of
26  and agreed to Yelp's Terms of Service . . ." [Dkt. No. 48 at 4.] Thus, Plaintiff's agreement to
    Yelp's TOS is now the law of the case and should apply here and in all future proceedings before
27  this Court. *Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, (9th Cir. 1990)
    ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue
28  previously decided by the same court, or a higher court, in the same case.")

FAULTS" AND "AS AVAILABLE" BASIS, WITH THE EXPRESS UNDERSTANDING THAT THE YELP ENTITIES MAY NOT MONITOR, CONTROL OR VET USER CONTENT. AS SUCH, YOUR USE OF THE SITE IS AT YOUR OWN DISCRETION AND RISK."). Such disclosures further demonstrate that while Yelp, obviously, has control over its own websites, it has no control over Plaintiffs themselves.

Plaintiffs' next category of allegations relate to "motivational rewards" implicit in Yelp's website itself, such as publicly noting when a user is the "First to Review" a particular business, or when a user "checks-in" extensively to a certain establishment through Yelp's mobile applications. Complaint ¶ 53. These allegations, though, merely describe Yelp's free services and highlight some features that may drive Yelp's popularity with the Plaintiffs and users like them. Such allegations cannot show any plausible form of employer control over the Plaintiffs any more than the "motivational reward" in getting the high score in a video game suggests that the game's manufacturer employs its players.

Plaintiffs' fourth set of allegations describing the Yelp Elite Squad program (renamed in the complaint as the "model reviewer" program), also does not establish any employment relationship. Complaint, ¶¶ 49 (quoting language from Yelp's FAQ about the Elite Squad, see Facchetti Decl. Exhibit C at 33.) The fact that some of the Plaintiffs once participated in this program, enjoyed the perks of such participation, and continued using Yelp's free services in efforts to keep participating, does not create an employment relationship with Yelp. The Yelp Elite Squad is analogous to participation in an airline frequent flyer program. Simply because the airline urges such participants to use their services, rewards them for doing so with special privileges and status (free drink coupons, entry to the airport club, early boarding), and may remove such status in its own discretion, does not transform the participants into employees of the airline. Furthermore, the Elite Terms explicitly state that members of the Elite squad are not employees of Yelp, cutting against any expectation of an employment relationship. Elite Terms, Facchetti Decl., ¶ 9, Exhibit G, ¶ 7.

//

//

1
2

   **3.      Offers of free promotional items do not plausibly establish Yelp determined rates and methods of payment.**

3  First, Yelp never determined rates or methods of payments with respect to the Plaintiffs
4  because no payments were ever made, nor were such payments ever contemplated. Plaintiffs
5  simply used Yelp's free services like millions of others.

6  Second, Plaintiffs allege that Yelp distributes free promotional items to the public such
7  as, "liquor, food, badges, trinkets, and titles." Complaint ¶ 60. These allegations do not plausibly
8  establish that Yelp determined a method of payment. Rather, the distribution of these items is
9  plainly a marketing device that is employed by Yelp to market its website. This form of
10  marketing is common and is employed by virtually every service provider. In any event, there is
11  no allegation that these freebies were given in return for any specific work, or for any other
12  reason than for Yelp to promote itself and its services to the public.

13
14

   **4.      The allegations are insufficient to establish that Yelp maintained employment records**

15  Plaintiffs do not allege that Yelp maintains employment records on their behalf. Only the
16  Terms and related documents are alleged in the complaint, which, of course, undermine
17  Plaintiffs' claims.

18  **5.      The "Relative Nature of the Business" test does not apply in this case**

19  In the Complaint, Plaintiffs rely on the "relative nature of the business" test to support
20  their claim that they are employees of Yelp. Complaint ¶¶ 76-81. While Plaintiffs would fail this
21  test as well, Plaintiffs' reliance is misplaced as this is the wrong test. The "relative nature of the
22  business" is one of six factors identified by courts as useful in distinguishing an "employee"
23  from an "independent contractor" for purposes of the FLSA. *See Donovan v. Sureway Cleaners*,
24  656 F.2d 1368, 1370 (9th Cir. 1981); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748,
25  754 (9th Cir. 1979). These tests are inapplicable here because Yelp has never identified Plaintiffs
26  as "independent contractors" (nor has this been alleged), and Plaintiffs are neither independent
27  contractors nor employees of Yelp.
28  //

**A.      Plaintiffs' Quantum Meruit Claim Fails Because They Had no Reasonable Expectation of Monetary Compensation, and in Any Event Their Claim is Time Barred**

In order to state a claim for quantum meruit, a plaintiff must plausibly allege that the circumstances were such that "'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004). A party claiming quantum meruit recovery must not have donated his or her services gratuitously. *In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992) (citing *Wescoatt v. Meeker*, 63 Cal.App.2d 618, 626 (1944)) "[T]here is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.App.4th 1410, 1419 (1996). The statute of limitations for quantum meruit claims is two years. Cal. Code Civ. Proc. § 339(1); *Iverson, Yoakum, Papiano & Hatch v. Berwald*, 76 Cal.App.4th 990, 996 (1999). This would bar Plaintiffs' claims to the extent they are based on activity that occurred before August 7, 2012.

Here, Plaintiffs neither plead, nor could they plausibly allege that they had *any* expectation of compensation arising from their voluntary use of Yelp's website. Nor can Plaintiffs establish that they or any other person using the website had a reasonable expectation of being paid. Not only is this common sense, but the TOS—to which Plaintiffs *repeatedly* agreed—disavowed any obligation for Yelp to pay for Plaintiffs' content, made no mention of any rights to compensation, and granted Yelp royalty-free rights to Plaintiffs' content. Indeed, both the TOS and the Elite Terms made clear that Plaintiffs would not be compensated monetarily for the content they published to Yelp. Because the "parties have an actual contract . . . this Court " . . . cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts*, 41 Cal.App.4th at 1420.

Additionally, there is no legitimate dispute that Plaintiffs received valuable non-monetary benefits from using Yelp's free services—such as wide, public distribution for their writing,

consumer information about local businesses, and opportunities to make friends and attend events. Given that Plaintiffs never expected to be paid, Yelp never agreed to pay Plaintiffs, and Plaintiffs derived benefits from their use of Yelp's free services, they cannot possibly state a claim.

**B.      California Does Not Recognize Claims for Unjust Enrichment.**

California courts "consistently have held that unjust enrichment is not a proper cause of action under California law." *In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1194 (C.D. Cal. 2010). "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003). "Unjust enrichment is a 'general principle, underlying various legal doctrines and remedies,' rather than a remedy itself." *Id.* (quoting *Dinosaur Dev., Inc. v. White*, 216 Cal.App.3d 1310, 1315 (1989)). "It is synonymous with restitution." *Id.* Therefore, Plaintiffs' claim for unjust enrichment fails to state a claim for which relief may be granted and must also be dismissed.

In a similar case, the Court of Appeals for the Second Circuit affirmed the dismissal of claims that are nearly identical to the claims alleged here—indeed, the claims were arguably stronger. In *Tasini v. AOL*, unpaid bloggers who had submitted content to the Huffington Post filed a putative class action against the owner of the website alleging unjust enrichment and violation of a New York statute. *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739-741 (S.D.N.Y. 2012) *aff'd*, 505 Fed. Appx. 45 (2d. Cir. 2012). The *Tasini* plaintiffs were only promised the exposure their published content would provide. The District Court had little difficulty rejecting the bloggers' claims, finding that they failed to state a claim because they never expected compensation. In a section of the court's opinion that is particularly applicable here, the court reasoned that:

> No one forced the plaintiffs to give their work to the Huffington Post for publication and plaintiffs candidly admit that they did not expect compensation. The principles of equity and good conscience do not justify giving the plaintiffs a piece of the [pie] when they never expected to be paid, repeatedly agreed to the same bargain, and went into the arrangement with eyes wide open. . . . Quite simply, the plaintiffs offered a service and

-14-

the defendants offered exposure in return, and the transaction occurred exactly as advertised. The defendants followed through on their end of the agreed-upon bargain. That the defendants ultimately profited more than the plaintiffs might have expected does not give the plaintiffs a right to change retroactively their clear, up-front agreement. That is an effort to change the rules of the game after the game has been played, and equity and good conscience require no such result.

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d at 741. *Tasini's* reasoning applies with even greater force here because Plaintiffs admittedly used Yelp's free services to derive many benefits for themselves beyond the publication of their writing. The result here should be the same as it was in *Tasini*: dismissal.

## V.    RULE 12(f)

### A.    Legal Standard

Rule 12(f) allows the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-974 (9th Cir. 2010). Where the complaint demonstrates that a class action cannot be maintained on the allegations at the pleading stage, courts have relied on Rule 12(f) to strike class allegations at an early stage of a lawsuit. *See Lyons v. Bank of Am.*, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (*citing Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S 517. *See also Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *15-16 (N.D. Cal. Dec. 4, 2009); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (addressing the use of Rule 12(f) and noting that "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008).

### B.    There Are No Allegations Demonstrating a Common Plan Or Policy That Violated the Law

Under Section 216(b) of the FLSA, Plaintiffs were required to allege that they, and the collective they wish to represent, are "similarly situated." *White v. Osmose, Inc.*, 204 F.2d 1309, 1313 (M.D. Ala. 2000). Section 216(b) does not define the words "similarly situated," nor has the Ninth Circuit defined it; however, courts agree that a plaintiff must *at least* make "a modest

factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Misra v. Decision One Mortgage Co., LLC*, 673 F.Supp.3d 987, 992 (C.D. Cal. 2008).

Here, Plaintiffs allege that they were "employees of Defendant, and were not paid wages for their work published on Yelp's website; each performed duties relating to the creation and promotion of content on behalf of Defendant, including but not limited to writing, researching, editing, lodging reviews, upgrading prior reviews, and generally promoting the site," and that the collective consists of those who are similarly situated to them. Complaint ¶ 35. Plaintiffs' allegations are insufficient to objectively identify a "similarly situated" collective.

*First*, each Plaintiff's claim depends upon his or her individual circumstances and unique interactions with Yelp. Plaintiffs allege—without factual support—that they had "duties," (Complaint ¶ 35) but there is considerable variation among Plaintiffs themselves, and among Plaintiffs and other consumers of Yelp's websites regarding at least: each of their respective individualized communications or interactions with Yelp; each of their individualized content contributions posted to Yelp (for example whether, and how, Yelp imposed "duties" of content creation in relation to each particular contribution, and whether each particular contribution conformed to Yelp's Terms); and the respective state of mind of each of the individual users of Yelp's websites regarding their relationship with Yelp (for example, did a Yelp user somehow feel forced to perform "duties" of content contribution, or did the user simply like to use Yelp's free website).

*Second*, as described above, named Plaintiffs' claims to be "employees" are implausible legal conclusions. Identifying the proposed collective as "employees" necessitates the question of whether an employer/employee relationship exists under FLSA between Yelp and each of the tens of millions of rank and file users of Yelp's online services—relationships that Yelp denies exists and which the allegations of the Complaint do not support, even for the named Plaintiffs. It is impossible to ascertain which individuals could possibly be included in this putative "collective" of "employees" when there are no uniform facts demonstrating an employee/employer relationship for each user of Yelp's free websites. Indeed, there are no

1   plausible allegations demonstrating a "common policy" or "plan," except perhaps Yelp's TOS

2   and other policies, which apply to *all users*. In short, because Plaintiffs' legal theory of the case

3   is flawed and unsupportable, they cannot possibly make the requisite showing that they "were

4   victims of a common policy or plan that *violated the law*." *Misra*, 673 F.Supp.3d at 992

5   (emphasis added).

6        Consequently, Plaintiffs' purported collective and class action allegations should be

7   stricken. This Court should exercise its discretion to strike Plaintiffs' spurious allegations

8   relating to its proposed collective. *See Fantasy, Inc.*, 984 F.2d at 1527.

9   **VI.    CONCLUSION**

10       The defects in the Complaint are many and incurable.  Plaintiffs have been given ample

11  opportunity to allege sufficient facts to demonstrate valid claims—indeed it is telling that after

12  nearly two years and two lawsuits (including a previous dismissal without prejudice)—they are

13  unable to do so. Plaintiffs should not be permitted to subject Yelp to another round of expensive

14  motion practice on the theory, fine as far as it goes, that leave to amend should be freely

15  dispensed. For the reasons stated above, the Complaint should be dismissed with prejudice and

16  the class and collective allegations stricken.

17

18  DATED: June 4, 2015   LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

19

20              By:     /s/ Adrianos Facchetti
                        Attorneys for Defendant,
21                      YELP INC.

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on June 4, 2015, I electronically filed the foregoing with the Clerk

3

of the Court by using the CM/ECF system.

4

                                        By:   /s/Adrianos Facchetti
                                              ADRIANOS FACCHETTI
5
                                              Attorney for Defendant Yelp Inc.
                                              Law Offices of Adrianos Facchetti, P.C.
6
                                              301 E. Colorado Blvd., Suite 514
7                                             Pasadena, California 91101
                                              Tel: (626) 793-8607
8                                             Fax: (626) 793-7293

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YELP INC'S MOTION TO DISMISS