1  ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
   LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
2  301 E. Colorado Blvd, Suite 514
3  Pasadena, California 91101
   Telephone:    (626) 793-8607
4  Facsimile:    (626) 793-7293
   Email:    adrianos@facchettilaw.com
5
6  AARON SCHUR, ESQ. (S.B.N. 229566)
   YELP INC.
7  140 New Montgomery Street
   San Francisco, CA 94105
8  Telephone: (415) 908-3801
   Facsimile:  (415) 615-0809
9  Email:    aschur@yelp.com

10

11 Attorneys for Defendant
   YELP INC.

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILY JEUNG, AMY SAYERS, and DARREN WALCHESKY, on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>YELP INC.,<br><br>    Defendant. | CASE NO. 3:15-CV-02228-RS<br><br>YELP INC.'S REPLY IN SUPPORT OF ITS SPECIAL MOTION TO STRIKE SECOND AND THIRD CLAIMS OF PLAINTIFFS' COMPLAINT UNDER CCP § 425.16<br><br>Date: July 9, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 3, Floor 17<br>Judge: Hon. Richard Seeborg |

YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE SECOND AND THIRD
CLAIMS OF COMPLAINT

TABLE OF CONTENTS

I.   INTRODUCTION……………………………………………………………………… 1

II.  PLAINTIFFS' STATE CLAIMS EASILY FALL WITHIN THE ANTI-SLAPP STATUTE…………………………………………………………………………….. 1

III. PLAINTIFFS CANNOT SHOW A PROBABILITY OF PREVAILING……………… 3

    A.  Plaintiffs Submitted No Evidence to Support Their State Claims……………… 3

        1.  Quantum Meruit……………………………………………………… 3

        2.  Unjust Enrichment…………………………………………………… 4

    B.  Plaintiffs Repeatedly Agreed to Yelp's Terms………………………………….. 5

        1.  Mutual Assent………………………………………………………… 6

        2.  Unconscionability…………………………………………………….. 7

        3.  The TOS are not void…………………………………………………. 10

IV.  OBJECTIONS TO PURPORTED EVIDENCE IN PLAINTIFFS' OPPOSITION……. 10

V.   CONCLUSION……………………………………………………………………… 10

TABLE OF AUTHORITIES

**Cases**

*American Software, Inc.*, 46 Cal.App.4th 1386, 1391 (1996) .......................................................... 8

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000) ....................... 7,8

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ................................................................. 2,7

*Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4th 1224, 1245 (2007) ............................. 8

*Bischoff v. DirectTV, Inc.*, 180 F.Supp.2d 1097, 1105 (C.D. Cal. 2002) ....................................... 9

*Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1119 (1999) ...................... 1

*Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 575-576 (6th Cir. 1999). .................................. 7

*Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007) ...................................... 4

*Freeman v. Wal-Mart Stores, Inc.*, 111 Cal.App.4th 660, 670 (2003) ........................................... 8

*Fteja v. Facebook, Inc.,* 841 F.Supp.2d 829, 838–40 (S.D.N.Y. 2012) ...................................... 6,7

*Gallagher v. Connell*, 123 Cal.App.4th 1260, 1275 (2004) ........................................................... 1

*Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007) ........................................................................... 3

*Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2013) ......................................................... 3

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 421-422 (9th Cir. 2014) ......................................................................................................................... 1

*Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) ................................. 6

*Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1307 (2011) .......................................................... 5

*Hupp v. Freedom Communications, Inc.*, 221 Cal.App.4th 398, 405 (2013) ................................ 3

*In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1114 (C.D. Cal. 2012) ..................................... 5

*In re iPhone Application Litig.*, 11-MD-02250 LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 2011) ................................................................................................................................................ 8

*Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012). ........................................... 10

*Leiberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166 (2003) ....................................... 3

*Martinez v. Metabolife Internat., Inc.*, 113 Cal.App.4th 181, 188 (2003) ..................................... 3

*McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1480 (2006) ......................................... 5

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003) ............................... 4,5

*Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002).............................................................................. 2

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177, 1179 (2014) ............................................ 7

*Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1039, 1042 (2008) ................................... 1

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 699-700 (2007)............... 4

*Pokrass v. DirecTV Grp., Inc.*, No. Civ. 07-423, 2008 WL 2897084, at *4 (C.D. Cal. July 14,
   2008) ........................................................................................................................................ 8

*Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 704 (2013)........................ 9

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1017-1018 (N.D.
   Cal. 2007)............................................................................................................................... 2,4

*Specht v. Netscape Communications Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002) ........................... 6

*Summit Bank v. Rogers*, 206 Cal.App.4th 669, 694-695 (2012).................................................. 1,2

*Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 911-912 (N.D. Cal. 2011)..................... 6

*Tamkin v. CBS Broadcasting, Inc.*, 193 Cal.App.4th at 133, 143 (2011)....................................... 3

*Tasini v. AOL, Inc.*, 851 F.Supp.2d 734, 739-741 (S.D.N.Y. 2012) *aff'd*, 505 Fed. Appx. 45 (2d.
   Cir. 2012) ................................................................................................................................. 5

*Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 245 (2014) ..................................................... 8

*Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 299, 301 (1985)................................. 10

*United States v. Keplinger*, 776 F.2d 678, 694 (7th Cir. 1985) ..................................................... 7


**<u>Statutes</u>**

CCP § 425.16…………………………………………………………………………… *passim*

I.  INTRODUCTION

Plaintiffs' Opposition to Yelp's Special Motion to Strike highlights why this case is a classic example of a strategic lawsuit against public participation that is barred by Code of Civil Procedure Section 425.16. Having no credible response to the majority of Yelp's arguments, Plaintiffs either ignore them or cite cases that clearly have no application here. Worse, Plaintiffs did not produce *any* evidence to support the elements of their claims[1], even though it was their burden to do so. In fact, Plaintiffs did not attach a single declaration or document in support of any of their claims. Consequently, this Court should grant Yelp's motion and dismiss Plaintiffs' state claims for quantum meruit and unjust enrichment.

II.  **PLAINTIFFS' STATE CLAIMS EASILY FALL WITHIN THE ANTI-SLAPP STATUTE**

As explained in Yelp's moving papers, the California legislature and courts have made it clear that the anti-SLAPP statute must be construed "to encourage [the] exercise of freedom of speech, not . . . its curtailment." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1119 (1999); *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 421-422 (9th Cir. 2014) (noting "the California Supreme Court has interpreted the anti-SLAPP statute broadly"). Courts considering this issue should thus "err on the side of free speech." *See Gallagher v. Connell*, 123 Cal.App.4th 1260, 1275 (2004). While the term "public interest" is not defined, adhering to the statute's preamble, which states that its provisions "shall be construed broadly," courts have explained that an issue of public interest "is any issue in which the public is interested." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1039, 1042 (2008); *see Summit Bank v. Rogers*, 206 Cal.App.4th 669, 695 (2012) (noting the "exceedingly 'expansive interpretation of the phrase 'issue of public interest'"). Although the case law does not define the precise boundaries of "public issue," as mentioned in Yelp's moving papers, courts have consistently found that consumer information is a matter of public interest—cases

---

[1] Defendant initially filed its anti-SLAPP motion in the Central District in January, and then re-filed it after the case was transferred to this judicial district. Plaintiffs have had almost 5 months to prepare declarations and other evidence to support their claims. That they have failed to submit any evidence speaks volumes about their case.

1
YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE SECOND AND THIRD CLAIMS OF COMPLAINT

1  which Plaintiffs did not even attempt to distinguish.

2  In this case, Plaintiffs do not dispute that Yelp publishes consumer information, or that the reviews they submitted to Yelp's website (and Yelp's methods of publishing such reviews) were a matter of public interest. On the contrary, Plaintiffs readily admit that they " . . . provided reviews to attract an audience . . . " Opp. at 9:189-190; *Summit Bank*, 206 Cal.App.4th at 694 ("By disseminating this information to the general public, [Plaintiffs themselves] must believe the public is interested in [their] activities." *Id*.

3  Instead, Plaintiffs argue that the statute does not apply because it only covers "defamation" claims, which is simply wrong. Opp. at 1:34-38. As the California Supreme Court has held, "[n]othing in the [anti-SLAPP] statute . . . excludes any particular type of action from its operation." *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002). In fact, courts have repeatedly applied the statute to all sorts of claims, including contractual and quasi-contractual causes of action. *Id*. at 92 ("conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning activity"); *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1017 (N.D. Cal. 2007) (claim for unjust enrichment was subject to anti-SLAPP statute). Although Plaintiffs cite *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), that case is irrelevant because it does not involve the anti-SLAPP statute, but rather the Communications Decency Act, a federal statute which has not been raised here.

4  Next Plaintiffs argue that "failing to pay wages" is the real gravamen of their state claims and that it is not "conduct in furtherance of the exercise of the . . . constitutional right of free speech." Opp. at 2:50-52. However, the allegations of the Complaint do not support Plaintiffs' overly narrow interpretation of the gravamen of the action. In particular, Plaintiffs frequently allege that Yelp promulgates Terms and policies relating to posting online content on Yelp's website, and once content is posted to its website, that Yelp enforces those Terms and policies. *See* Dkt. No. 61-1, Exhibit A, ¶¶ 20, 48-49, 51. These allegations concerning Yelp's supposed control over Plaintiffs—through its management of its free public forum for consumers—is "conduct" which undeniably forms the basis for Plaintiffs' claim that they are entitled to compensation. Even Plaintiffs agree this is an important component of their state law claims, as

they continue to assert that they were required to "follow [Yelp's] many rules or suffer 'serious penalties.'" Opp. at 8; ("Defendants demanded that plaintiffs write for them," Opp. at 18:341); (that Yelp " . . . orders [Plaintiffs] to write more and more and in a specific fashion, location, and business types," Opp. 17:343-344). The above allegations clearly are not merely incidental to Plaintiffs' claims. *Martinez v. Metabolife Internat., Inc.*, 113 Cal.App.4th 181, 188 (2003) (incidental allegations do not subject a cause of action to the anti-SLAPP statute.)

Indeed, it is indisputable that Plaintiffs' allegations relating to Yelp's promulgation and enforcement of content guidelines and other policies arise from Yelp's publication of consumer information and the maintenance of its website. These allegations are acts in furtherance of the right to free speech under 425.16(e)(4) because they "assist" Yelp in realizing its primary goal: to present consumers with free, valuable information about businesses. *Hupp v. Freedom Communications, Inc.*, 221 Cal.App.4th 398, 405 (2013) ("[m]aintaining a forum for discussion of issues of public interest is a quintessential way to facilitate rights, and the [defendant] has no liability for doing so."); *Leiberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166 (2003) ("conduct" under the SLAPP statute "is not limited to the exercise of [the] right of free speech, but to all conduct in furtherance of the exercise of free speech in connection with a public issue"); *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal.App.4th 133, 143 (2011) ("An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right").

### III.  PLAINTIFFS CANNOT SHOW A PROBABILITY OF PREVAILING

#### A.  Plaintiffs Submitted No Evidence to Support Their State Claims.

##### 1.  Quantum Meruit

Plaintiffs were required to submit admissible evidence to support each element of their claim for quantum meruit. *Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007). But Plaintiffs submitted nothing.[2] Plaintiffs did not produce evidence showing that Yelp requested, in any

---

[2] Plaintiffs did not submit a single declaration or exhibit in support of their opposition to Yelp's anti-SLAPP motion. However, they did submit a number of declarations relating to their

form, that Plaintiffs perform "services" for the benefit of Yelp, that Plaintiffs performed the "services" as requested, or any other element of their claim. *See* CACI Jury Instruction No. 371. Instead, Plaintiffs appear to rely on the allegations of their Complaint in order to get passed the anti-SLAPP, arguing that they "have clearly pled the elements of quantum meruit." Opp. at 7:156. However, Plaintiffs cannot simply rely on the allegations in the Complaint, but must set forth evidence that would be admissible at trial. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 699-700 (2007). Because Plaintiffs failed to submit any evidence at all, the Court should strike their claim for quantum meruit.

### 2. Unjust Enrichment

Just as with their quantum meruit claim, Plaintiffs failed to submit any evidence, much less competent and admissible evidence, to establish each of the elements of their unjust enrichment cause of action. Therefore, this claim should also be dismissed for this reason alone.

But it also fails for an additional reason. As Yelp mentioned in its moving papers, California does not recognize an independent cause of action for unjust enrichment. *See Vogel v. Felice*, 127 Cal.App.4th 1006, 1008, 1019, fn.7 (2005) ("If the pleadings are not adequate to state a cause of action, the plaintiff has failed to carry his burden in resisting the motion."). In response, Plaintiffs argue that the Ninth Circuit has "repeatedly recognized a cause of action for unjust enrichment." Opp. at 6:118-119. But Plaintiffs' argument has no merit in light of the Ninth Circuit's decision in *Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2013), where the Court affirmed the dismissal of an unjust enrichment claim because California does not recognize such a claim.

While some federal courts have recognized a split in authority as to whether "unjust enrichment can be an independent claim or merely an equitable remedy," *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007), the vast majority of courts have decided it is *not* a cognizable claim. *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003); *Sonoma Foods*, 634 F.Supp.2d at 1018 (unjust enrichment is not an independent claim

---

collective certification motion (Dkt. No. 45, et seq.), but as discussed more fully in Yelp's opposition (Dkt. No. 75), those documents do not have any evidentiary value whatsoever.

under California law); *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1480 (2006) (same); *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1307 (2011) (same).

Even under the handful of cases that recognize unjust enrichment as a potentially viable cause of action, they follow *Melchior* and hold it is not an independent claim when another cause of action is available that permits restitution as a remedy. *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1114 (C.D. Cal. 2012). Here, the unjust enrichment claim is based on the same factual allegations as the FLSA and quantum meruit claims. These other claims therefore provide Plaintiffs with the potential for recovery of any restitution should the Court decide their claims are meritorious (although plainly, the Court should not). Thus, this Court should not accept Plaintiffs' unjust enrichment claim as a separate claim for relief.

Finally, Plaintiffs' attempt to distinguish *Tasini* is unsuccessful. They point out that it was not an FLSA case—that plaintiffs in *Tasini*, sensibly, did not invoke federal laws to seek wages (presumably because, as here, they did not meet any definition of employees), but instead sought a "piece of" AOL. But the cases are virtually identically since in *both* cases plaintiffs claim defendants were "unjustly enriched by generating profit from submissions of the plaintiffs" and "not paying the plaintiffs for those submissions." *Tasini v. AOL, Inc.*, 851 F.Supp.2d 734, 739-741 (S.D.N.Y. 2012) *aff'd*, 505 Fed. Appx. 45 (2d. Cir. 2012); *see* Complaint ¶¶ 11, 23, 48. And in both cases plaintiffs did not have an expectation, much less a reasonable expectation of receiving compensation for their voluntary submissions. Although Plaintiffs claim the result would have been different in *Tasini* had the plaintiff made a more "reasonable demand" and sought wages under the FLSA, this is not supported by the court's holding which focused not on the reasonableness of the alleged damages, but rather on plaintiffs' lack of expectation of compensation. *Tasini*, 851 F.Supp.2d at 741. Additionally, this motion is not geared towards Plaintiffs' FLSA claim so Plaintiffs' argument is misplaced and speculative.

### B. Plaintiffs Repeatedly Agreed to Yelp's Terms

Even though Judge Olguin ruled that "all three plaintiffs had adequate notice of and agreed to Yelp's Terms of Service . . ." Dkt. No. 48 at 4 (which is now law of the case), Plaintiffs dispute the enforceability of Yelp's Terms of Service ("TOS"), Elite Squad Terms of

5

Membership ("Elite Terms"), and other provisions which make clear they never had a reasonable expectation of compensation. Plaintiffs argue there is no evidence that Plaintiffs assented to the TOS, and they assert the TOS are unconscionable. Plaintiffs' arguments fail.

### 1.     Mutual assent

Plaintiffs did not dispute that Yelp's website *requires* all users to register an account and indicate acceptance of the TOS in order to post content to the website. Nor did they dispute that Plaintiffs registered accounts with Yelp and submitted content to the website. Thus, these Plaintiffs must have clicked the red button below the text that stated: "By clicking the button below, you agree to Yelp's Terms of service and Privacy Policy."

It is also undisputed that Sayers, Jeung, and Walchesky were Yelp Elite Squad members, and that in order to join the Yelp Elite Squad a user must respond to an email that states in relevant part: "If you meet the above criteria and you accept the Elite Squad Terms of Membership, click the button below to accept this invitation and join the [YEAR] Yelp Elite Squad!" MacBean Decl. ¶ 20:11-14. Therefore, each of the Plaintiffs necessarily clicked the "button below" and assented to the Elite Terms.

In an attempt to evade the TOS, Plaintiffs claim it is a browsewrap agreement. But the TOS and Elite Terms are more akin to clickwrap agreements, where an offeree has an opportunity to review terms and conditions (as Plaintiffs did) and must affirmatively indicate assent (as Plaintiffs did). *See Specht v. Netscape Communications Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002). Courts have consistently found that such online agreements are valid and enforceable. *Fteja v. Facebook, Inc.,* 841 F.Supp.2d 829, 838–40 (S.D.N.Y. 2012) (forum selection clause was enforceable where there was a notice below the "Sign Up" button that stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up"); *Guadagno v. E*Trade Bank*, 592 F.Supp.2d 1263, 1271 (C.D. Cal. 2008) (arbitration clause in terms of service was enforceable where it was accessible by a hyperlink next to a button on a registration page); *Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 911-912 (N.D. Cal. 2011) (enforcing arbitration provision where "Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I

1  accept' button"). Additionally, Plaintiffs did not contest that registered users had to agree to the
2  TOS each time they logged into Yelp's website, or that Yelp's records show that each of the
3  Plaintiffs repeatedly logged into Yelp's website.

4  Indeed, the Ninth Circuit has stated that courts are "more willing to find the requisite
5  notice for constructive assent" . . . "where the user is required to affirmatively acknowledge the
6  agreement [as here] before proceeding with use of the website." *Nguyen v. Barnes & Noble Inc.*,
7  763 F.3d 1171, 1177 (2014). To support this proposition, *Nguyen* cited *Fteja,* 841 F.Supp.2d
8  829, 838-40, "enforcing forum selection clause in website's terms of service where a notice
9  below the 'Sign Up' button that stated, 'By clicking Sign Up, you are indicating that you have
10 read and agree to the Terms of Service,' and user had clicked 'Sign Up.'"). *Nguyen*, 763 F.3d at
11 1177. Yelp's signup process is remarkably similar to Facebook's process in *Fteja*, except it is
12 arguably stronger because on registration the language is *above* the button, not below.

13 Additionally, Plaintiffs argue that Ian MacBean's declaration is inadmissible hearsay
14 because he is not the "custodian of records," and that he lacks personal knowledge about Yelp's
15 signup page as it existed in 2008. But Rule 803(6) does not require a "custodian of records," only
16 a "qualified witness" who "understands the system" or is "familiar with the record-keeping
17 procedures of the organization." *United States v. Keplinger*, 776 F.2d 678, 694 (7th Cir. 1985);
18 *Dyno Const. Co. v. McWane, Inc.*, 198 F.3d 567, 575-576 (6th Cir. 1999). Mr. MacBean easily
19 meets the "qualified witness" requirement because he is Yelp's Director of User Operations,
20 which, among other responsibilities, requires him to investigate "potential Terms of Service
21 violations," making him familiar with Yelp's records systems. MacBean Decl., ¶ 1. Further, his
22 declaration explains that Yelp's records confirm that Exhibit D depicts the signup page as it
23 appeared on September 15, 2008. *Id*., ¶ 8:13-14.

24 In short, because Plaintiffs were required to—and did—manifest assent to Yelp's terms
25 many times and in several different ways, they cannot credibly claim a lack of mutual assent.

26 **2.  Unconscionability**

27 Plaintiffs argue that Yelp's terms and other policies are unconscionable. Under California
28 law, "unconscionability has both a 'procedural' and a 'substantive' element." *Armendariz v.*

7

*Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000). Both elements must be established in order to invalidate a contract or one of its individual terms, balanced on a sliding scale, i.e., "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal.4th at 114. "The procedural element of unconscionability . . . focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 245 (2014) (citations omitted). Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they are so "overly harsh" "or one-sided" that they fall outside the reasonable expectations of the non-drafting party. *Armendariz*, 24 Cal.4th at 113. This is a demanding test, and requires that the substantively unconscionable term be so unreasonable and one-sided as to "*shock the conscience.*" *American Software, Inc.*, 46 Cal.App.4th 1386, 1391 (1996) (italics in original).

   Plaintiffs failed to show that Yelp's TOS or Elite Terms are procedurally or substantively unconscionable. Procedurally, "[t]he availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice." *Freeman v. Wal-Mart Stores, Inc.*, 111 Cal.App.4th 660, 670 (2003). "Moreover, when the challenged term is in a contract concerning a nonessential recreational activity, the consumer always has the option of simply foregoing the activity." *Belton v. Comcast Cable Holdings, LLC*, 151 Cal.App.4th 1224, 1245 (2007) ("Listening to music or FM radio is . . . a nonessential recreational activity that plaintiffs could simply have forgone if they disliked the requirement that they purchase the basic cable tier."); *Pokrass v. DirecTV Grp., Inc.,* No. Civ. 07-423, 2008 WL 2897084, at *4 (C.D. Cal. July 14, 2008) (cable television subscription nonessential because it was recreational and the same service could be obtained free online or declined altogether). Plaintiffs here have numerous alternatives to Yelp's free consumer review site. Further, posting reviews and photographs about businesses are nonessential recreational activities. *See, e.g., In re*

*iPhone Application Litig.*, 11-MD-02250 LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 2011) (finding Apple's App Store Terms of Service agreement were not unconscionable because plaintiffs had alternatives to iDevices and use of apps were nonessential recreational activities).

Nevertheless, Plaintiffs claim they are "unsophisticated" and are not "lawyers," yet they did not produce any evidence in support of these statements, or how such arguments support a finding of unconscionability. Likewise, Plaintiffs' argument that Yelp's TOS were "hidden" or illegible is unpersuasive because courts have repeatedly enforced Terms of Service that are accessible on another page of the same website via hyperlink (see Section III.B1. above), like Yelp's. Additionally, Plaintiffs cannot claim surprise because the terms were available on *every page* of the website in normal sized font, including immediately next to the registration button required to create an account, and the login button required to access an account. MacBean Decl., ¶¶ 3, 8, 9. Further, the terms were accessible when Plaintiffs became Elite members and each of dozens (if not hundreds) of times they logged into their Yelp accounts. Anyway, Plaintiffs did not produce one *iota* of evidence that Plaintiffs were unable to read or understand the TOS or the Elite Terms. Similarly, Plaintiffs' argument that they never "read" the TOS fails because "[c]ompetent adults are bound by . . . documents, read or unread." *Bischoff v. DirectTV, Inc.*, 180 F.Supp.2d 1097, 1105 (C.D. Cal. 2002) (citation omitted); *Nguyen*, 763 F.3d at 1179 (the "failure to read a contract before agreeing to its terms does not relieve a party of its obligation under the contract"). Further, Plaintiffs did not produce any evidence that they "never 'read'" the terms, which at any rate is at odds with their repeated references to the TOS and other terms in their pleadings and briefs in this case. Opp. at 15:295-299; Dkt. No. 45-5, ¶ 43.

Therefore, "[w]hen, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Serpa v. California Surety Investigations, Inc.*, 215 Cal.App.4th 695, 704 (2013). But here Plaintiffs presented no evidence or legal authority to demonstrate that any of Yelp's terms are substantively unconscionable. Because Plaintiffs have not demonstrated that the terms are procedurally unconscionable *to any degree*, the Court "need not address whether the terms . . . are

substantively unconscionable" at all. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 964 (9th Cir. 2012).

### 3. The TOS are not void

Plaintiffs make a final effort to evade the TOS and Elite Terms by claiming they are "void as against public policy," citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 299, 301 (1985). But *Tony* does not stand for the proposition that all such agreements are void as against public policy, only that FLSA rights cannot be waived. *Tony*, 471 U.S. at 301. Therefore, it has no bearing here, especially since Yelp's anti-SLAPP motion is directed to Plaintiffs' state law claims, not the federal FLSA cause of action that is subject to a separate motion to dismiss.

## IV. OBJECTIONS TO PURPORTED EVIDENCE IN PLAINTIFFS' OPPOSITION

Yelp objects to purported "evidence" contained in the opposition papers, which consists of statements about Yelp's employees or its business that are inaccurate and without foundation, have no relevance to the issues in this case, and are merely designed to cast Yelp in a negative light, (Opp. 9, fn. 1; 10:183-193; 10, fn. 2; 11:194; 15:269-288; 18:337-388, 34; 20:373-377; 26, fn. 3.).

## V. CONCLUSION

Based on the foregoing, Yelp respectfully requests that this court grant its Special Motion to Strike and dismiss the Second and Third claims of the Complaint. Yelp also requests that the court find that it is entitled to an award of attorneys' fees and costs pursuant to section 425.16, subdivision (c), in an amount to be established by subsequent motion.

DATED: June 25, 2015         LAW OFFICES OF ADRIANOS FACCHETTI, P.C.


By:    /s/ Adrianos Facchetti
       Attorneys for Defendant,
       YELP INC.

YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE SECOND AND THIRD CLAIMS OF COMPLAINT