ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
301 E. Colorado Blvd, Suite 514
Pasadena, California 91101
Telephone:     (626) 793-8607
Facsimile:     (626) 793-7293
Email:         adrianos@facchettilaw.com

AARON SCHUR, ESQ. (S.B.N. 229566)
YELP INC.
140 New Montgomery Street
San Francisco, CA 94105
Telephone: (415) 908-3801
Facsimile:   (415) 615-0809
Email:         aschur@yelp.com

Attorneys for Defendant
YELP INC.

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILY JEUNG, AMY SAYERS, and DARREN WALCHESKY, on behalf of themselves and all other similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>YELP INC.,<br><br>    Defendant. | CASE NO. 3:15-CV-02228-RS<br><br>YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE(b)(6) AND TO STRIKE CLASS AND COLLECTIVE ALLEGATIONS UNDER RULE 12(f)<br><br>Date: July 9, 2015<br>Time: 1:30 p.m.<br>Place: Courtroom 3, Floor 17<br>Judge: Hon. Richard Seeborg |

TABLE OF CONTENTS

I.   INTRODUCTION………………………………………….................................. 1

II.  THE COURT MAY CONSIDER YELP'S DOCUMENTS PURSUANT TO THE "INCORPORATION BY REFERENCE" DOCTRINE……………………………… 1

III. PLAINTIFFS CANNOT STATE A CLAIM UNDER THE FLSA………………….. 4

IV.  PLAINTIFFS' STATE CLAIMS ALSO FAIL…………………………………………. 7

V.   PLAINTIFFS' COLLECTIVE/CLASS ALLEGATIONS SHOULD BE STRICKEN……………………………………………………………………………… 7

VI.  OBJECTIONS TO PURPORTED EVIDENCE IN PLAINTIFFS' OPPOSITION ……………………………………………………………………………………...  9

VII. CONCLUSION……………………………………………………………………… 9

TABLE OF AUTHORITIES

**Cases**

*Abrego Abrego v. The Dow Chem. Co.*, 443. F.3d 676, 681-682 (9th Cir. 2006) .......................... 2

*Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981, 987 (2014)........................... 4,5

*Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) .............. 5

*Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ. 10320 (JGK), 1996 WL 437929, at *6 (S.D.N.Y. Aug. 2, 1996) ....................................................................................................................................... 4

*Curry v. Yelp Inc.*, Case No. 14-cv-03547-JST, 2015 U.S. Dist. LEXIS 53020, at *18 (N.D. Cal. Apr. 21, 2015) ............................................................................................................................. 7

*Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) ................................................................... 4

*Maloney v. Verizon Internet Services, Inc.*, No. ED CV 08-1885-SGK(AGRx), 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009) ..................................................................................... 4

*Misra v. Decision One Mortgage Co., LLC*, 673 F.Supp.3d 987, 992 (C.D. Cal. 2008)............. 8,9

*Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ................................................................ 2

*Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 299, 301 (1985).................................... 5

*Vaher v. Town of Orangetown,* 916 F.Supp.2d 404, 419 (S.D.N.Y. 2013) .................................... 3

*White v. Osmose, Inc.*, 204 F.2d 1309, 1313 (M.D. Ala. 2000)....................................................... 8

*Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996) ........................................................ 5,6

**Rules**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………….. 2,4

Fed. R. Civ. P. 23(a)(3)……………………………………………………………………… 9

I.      INTRODUCTION

Plaintiffs' Opposition fails to establish any support for their far-fetched theory that voluntarily using a website equates to an employment relationship with the provider of the website under the FLSA or equitable principles. Indeed, the Opposition ignores critical facts, relies on improper law, and makes no genuine attempt to establish the plausibility of their claims, least of all Plaintiffs' state claims, which they did not even attempt to defend.

The bottom line is that there are no factual allegations establishing that Yelp ever hired any of the Plaintiffs; no facts to suggest, let alone plausibly establish that Yelp terminated Plaintiffs, especially since Yelp's Terms of Service, including Yelp's Content Guidelines (collectively, the "TOS") and Yelp Elite Squad Terms of Membership ("Elite Terms") make clear that Plaintiffs are not employees and Plaintiffs identify no other agreements; there are no plausible allegations that Yelp controlled Plaintiffs' work schedules, working conditions, or equipment; there are no allegations that Yelp's free promotional items distributed to attendees at free events, or the product features that encourage consumers to use Yelp, were given in return for any specific work, or for any other reason than for Yelp to promote itself and its services to the public; and there are no factual allegations that Yelp maintains employment records on Plaintiffs' behalf.

In addition to failing to plausibly show that they were ever Yelp's employees, rather than simply consumers of Yelp's free online services, Plaintiffs fail to meet their burden to show that the supposed members of the putative collective group are sufficiently similarly situated: i.e., that they were subject to a single illegal policy, plan, or decision.

II.     THE COURT MAY CONSIDER YELP'S DOCUMENTS PURSUANT TO THE "INCORPORATION BY REFERENCE" DOCTRINE

Plaintiffs argue that the Court should disregard Yelp's documents embodying its policies governing use of its website, or convert the Motion to a summary judgment motion. Plaintiffs' arguments are unavailing. In ruling on a motion to dismiss, a court may consider documents on which the complaint necessarily relies in instances where plaintiffs do not explicitly allege the contents of the documents in the complaint, but the defendant attaches the documents to its

motion to dismiss, the plaintiff's claim depends on their contents, and the parties do not dispute their authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that a district court may "consider a document the authenticity of which is not contested, and upon which plaintiff's complaint necessarily relies"), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443. F.3d 676, 681-682 (9th Cir. 2006). The purpose of the "incorporation by reference" doctrine is to "[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706 (citation omitted).

In their Complaint, Plaintiffs refer to, and specifically rely on Terms and other disclosures displayed on Yelp's website to support their claim that Yelp had the power to exercise control over Plaintiffs. There is no doubt that Yelp's alleged "Right to Control" is central to Plaintiffs' claims. *See* Dkt. No. 1, p. 15. The Complaint *often* refers to Yelp's terms, conditions, contracts, and policies:

- "Defendant has the power to set wages and wage policies for its employees, which in conjunction with its detailed policies and procedures and terms and conditions, Defendant controls the behavior of its workers and the placement and content of the [*sic*] their work product." (*Id.* at ¶ 3);

- "By imposing strict guidelines and policies on its reviewers, and firing the non-wage paid workers, Defendant exercises full control over the quality, tone, content, quantity, placement . . ." (*Id.* at ¶ 64);

- "These Plaintiffs, and other similarly situated persons, did actually work under the close scrutiny and prodding of Defendant and had to closely adhere to Defendant's *contracts, content guidelines and other policy statements*." (*Id*. at ¶ 66) (Emphasis added); and

- "Defendant . . . "controls the writers with rules and standards . . ." (*Id*. at ¶ 68) and "chastises its non-wage paid workers for failing to follow Yelp rules and dispensing these so-called 'guidelines' . . ." (*Id*. at ¶ 68)

//

1  Given that Plaintiffs' allegations repeatedly refer to Yelp's terms, conditions, contracts,
2  and other policies, the Court may consider Yelp's TOS, Elite Terms, and other such policies in
3  support of Yelp's Motion to Dismiss.

4  Understandably, Plaintiffs seek to curb the Court's analysis of the TOS and other
5  disclosures displayed on Yelp's website, knowing that their entire case falls apart once Plaintiffs'
6  actual role as mere users of Yelp's free services, and Yelp's policies relating to such use of
7  Yelp's free services, are actually taken into account. Plaintiffs try to do this by claiming they
8  "dispute the relevancy" of Yelp's documents, yet Plaintiffs do not explain *why* they are
9  supposedly irrelevant. Instead, in summary fashion, Plaintiffs state: "Plaintiffs dispute the
10 relevancy the exhibits and a complaint regarding plaintiffs' rights to be paid for their labors
11 under quantum meruit, unjust enrichment (and the FLSA)." Opp. at 4-5.

12 Second, Plaintiffs' relevancy argument is difficult to square with the fact that an *entire*
13 section of the Complaint is labeled "'**Right to Control Test**," (Dkt. No. 1, p. 15, bold in
14 original), and that many of the allegations in that section specifically refer to Yelp's terms and
15 conditions, contracts, and other policy statements. Indeed, as Plaintiffs argue in their Opposition,
16 the "Right to Control Test" is the **"Primary Factor"** in the FLSA analysis. Opp. at 10 (bold in
17 original.)

18 Further, even the authorities Plaintiffs rely upon undercut their argument. For instance,
19 Plaintiffs quote *Vaher v. Town of Orangetown,* 916 F.Supp.2d 404, 419 (S.D.N.Y. 2013), for the
20 proposition that a court will consider a document incorporated by reference "provided there is no
21 dispute regarding its authenticity, accuracy or relevance." Opp. at 5. But this does not help
22 Plaintiffs because they do not question the authenticity or accuracy of any of Yelp's documents
23 relating to the policies they cite. They only dispute the "relevancy" of these documents, but for
24 reasons discussed above, this argument is unpersuasive. In any event, *Vaher* does not help
25 Plaintiffs because in that case the court did not consider the documents at issue due to factors
26 inapplicable here, including because the exhibits were unidentified and unauthenticated.

27 But even were the Court to determine that the documents are "unidentified" in the
28 Complaint, it is only because Plaintiffs have removed explicit references to the documents in this

3
YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

1 latest version of their lawsuit on these same claims against Yelp. For example, in their previous
2 lawsuit (*Panzer v. Yelp*), Plaintiffs specifically mentioned that Yelp controlled the behavior of its
3 supposed workers through its "detailed policies and procedures *and <u>terms and conditions</u>*"
4 (emphasis added). *See* Declaration of Adrianos Facchetti ("Facchetti Decl."), ¶ 3, Exhibit A, ¶
5 20.  However, in the current version of the lawsuit the words "terms and conditions" no longer
6 appear. Similarly, Plaintiffs scrubbed all explicit references to the Yelp Elite squad in the
7 Complaint, though the previous lawsuit repeatedly referred to it, and alleged that Sayers and
8 Jeung were "Elite" reviewers. Facchetti Decl., ¶ 3, Exhibit A, ¶¶ 16-17, 39-40, 51; *compare with*
9 Complaint, Dkt. No. 1, ¶¶ 20, 49, 55, 68. Indeed, in an apparent effort to avoid a motion to
10 dismiss, in lieu of using the term "Elite reviewer," they use the term "model reviewer"
11 repeatedly. *Id*. at ¶¶ 20, 49, 55, 68; *Chateau Hip, Inc. v. Gilhuly,* No. 95 Civ. 10320 (JGK), 1996
12 WL 437929, at *6 (S.D.N.Y. Aug. 2, 1996) ("―[T]hat more complete allegations have been
13 deliberately omitted from the Second Amended Complaint to avoid a motion to dismiss raises
14 serious questions as to the good faith basis for a claim….").

15 Plaintiffs also argue that the instant Motion should be converted to a summary judgment
16 motion. But the "Ninth Circuit and commentators alike endorse a court's consideration of
17 pertinent documents alleged, yet not included, in a complaint without converting the motion as
18 one for summary judgment." *Maloney v. Verizon Internet Services, Inc.*, No. ED CV 08-1885-
19 SGK(AGRx), 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009); *Knievel v. ESPN,* 393 F.3d
20 1068, 1076 (9th Cir. 2005) (holding that documents may be considered under the "incorporation
21 by reference" doctrine without turning Rule 12(b)(6) motion to dismiss into Rule 56 motion for
22 summary judgment). Because Yelp has established that the "incorporation by reference" doctrine
23 applies, the Court may consider Yelp's TOS and other documents without converting the Motion
24 into a summary judgment motion.

25 **III.     PLAINTIFFS CANNOT STATE A CLAIM UNDER THE FLSA**
26 In their Opposition, Plaintiffs rely exclusively on the Ninth's Circuit's decision in
27 *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (2014) to support their FLSA
28 claim. In *Alexander,* the class members "assert[ed] claims for employment expenses and unpaid

1 wages under the California Labor Code on the ground that FedEx had improperly classified the
2 drivers as independent contractors." *Alexander*, 765 F.3d at 987. In reaching its decision, the
3 *Alexander* court applied six factors identified by courts as useful in distinguishing an "employee"
4 from an "independent contractor."

5 But here Plaintiffs are neither. Yelp has never identified Plaintiffs as "independent
6 contractors," nor has this been plausibly alleged. Plaintiffs would fail this test anyway because
7 they are mere users of Yelp's free services, i.e., consumers. Their legal theory is more like
8 arguing that FedEx should compensate those who *use* FedEx to deliver packages (i.e., its
9 customers), because FedEx mandates that they use certain forms and provide certain information
10 to send or receive packages, and FedEx would not exist unless it had these customers ordering
11 packages. Additionally, *Alexander* does not apply because the plaintiffs asserted claims for
12 expenses and unpaid wage claims under the California Labor Code—not the FLSA. So the court
13 did not have occasion to consider the FLSA or apply the four-factor "economic reality" test,
14 which is the proper standard here. *Bonnette v. California Health & Welfare Agency*, 704 F.2d
15 1465, 1469 (9th Cir. 1983). But even under the "economic reality" test, there are no plausible
16 allegations of an employment relationship in this case.

17 *First,* there are no factual allegations establishing that Yelp ever hired any of the
18 Plaintiffs: no facts regarding a hiring process (application, interview, start date, employment
19 contract), or any other indication of an employment relationship. Yelp pointed out these factual
20 deficiencies in its opening brief, yet Plaintiffs' Opposition is *completely silent* as to when and
21 how Plaintiffs were supposedly hired.

22 Similarly, there are no facts to suggest, let alone plausibly establish that Yelp terminated
23 Plaintiffs, especially since the TOS and Elite Terms make clear that Plaintiffs are not employees.
24 Plaintiffs try to evade the TOS and Elite Terms by claiming they are "void as against public
25 policy," citing *Tony & Susan Alamo Found v. Sec'y of Labor*, 471 U.S. 299, 301 (1985). But
26 *Tony* does not stand for the proposition that all such agreements are void against public policy,
27 only that FLSA rights cannot be waived. *Tony*, 471 U.S. at 301.
28 A more analogous case is *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996).

There, the plaintiff signed a statement, which provided: "I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center." *Williams*, 87 F.3d at 1067. While acknowledging "FLSA rights cannot be waived," the Ninth Circuit determined that plaintiff's statement "indicates that there was no express agreement for compensation," and held that Williams was not an employee. Here, as in *Williams*, the lack of any facts demonstrating that Plaintiffs were hired, together with the agreements, makes it clear that no plausible employment relationship exists.[1]

*Second*, there are no plausible allegations that Yelp ever exercised supervision or control over Plaintiffs—no allegations that Yelp controlled Plaintiffs' work schedules, working conditions, equipment, or any other component of an *actual* employment relationship. Plaintiffs' response is that Yelp "might not make specific assignments," but "it does require that writing be done a certain way and at a certain pace." Opp. at 10. But again, the fact that Yelp promulgates the TOS and policies relating to posting online content on Yelp's website, and once content is posted to its website, may enforce the TOS and policies to correct any violations, does not plausibly show the existence of an employment relationship. Dkt. No. 1, ¶¶ 62-64. Further, there is no allegation that Yelp scheduled the creation of Plaintiffs' alleged content or its posting on Yelp's website. Indeed, there is no allegation that Yelp required Plaintiffs to use its services *at all*, or had any power to do so.

Incredibly, however, Plaintiffs argue that they "must use tools that Defendant provides" in order to use Yelp, that is, "Yelp's computer program" and "computer server." Opp. at 15. But that is like arguing that Google controls users of its search engine, because they cannot mail in their queries, or that the Federal government "controls" *all* attorneys who use the CM/ECF Filer because they *must* use the ECF's platform and server to electronically file documents. If Plaintiffs' theory were credited, numerous popular websites would suddenly gain hundreds of millions of employees because they, too, provide users the means ("tools") to publish

---

[1] Plaintiffs also cite to the Consumer Legal Remedies Act and argue that it expressly "prohibits inserting an unconscionable provision in the contract." Opp. at 10. But Plaintiffs do not provide any argument in support of their conclusion.

6
YELP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

1    information on their platforms.

2    *Third*, the allegations that Yelp offered free promotional items are insufficient to
3    establish that it determined rates and methods of payment. There is no allegation that Yelp gave
4    these freebies in return for any specific work, or for any other reason than for Yelp to promote
5    itself and its services to the public. Plaintiffs do not dispute this. Instead, Plaintiffs admit they
6    "were not compensated by the job or task." Opp. at 15 (bold removed).

7    *Fourth*, there are no factual allegations that Yelp maintains employment records on
8    Plaintiffs' behalf, e.g., employment contracts, performance reviews, timecards, payroll
9    documents, W-2's 1099's, disciplinary records, etc.

10   Finally, and although not a relevant factor in confirming that Plaintiffs have never been
11   Yelp's employees, the Opposition repeatedly asserts that Yelp received advertising dollars in
12   part due to its alleged ability to monetize Plaintiffs' content. But these arguments—which do not
13   rest on any facts showing any actual monetization of Plaintiffs' content contributions—at most
14   reflects the common sense understanding that, like any website, Yelp needs online visitors like
15   the Plaintiffs in order to exist. *See Curry v. Yelp Inc.*, Case No. 14-cv-03547-JST, 2015 U.S.
16   Dist. LEXIS 53020, at *18 (N.D. Cal. Apr. 21, 2015) ("Yelp's business model is widely
17   understood to depend on user-generated business reviews."). That Yelp relies on consumers to
18   use its free services—just like Google, Facebook, Twitter, and countless other popular
19   websites—does not transmute these customers into employees.

20   In conclusion, Plaintiffs' failure to allege any plausible facts supports the economic
21   reality that Plaintiffs are *not* Yelp's employees under the FLSA.

22   **IV.    PLAINTIFFS' STATE CLAIMS ALSO FAIL**

23   In its moving papers, Yelp argued that Plaintiffs' state claims for quantum meruit and
24   unjust enrichment fail for a number of reasons. However, Plaintiffs did not respond to Yelp's
25   arguments, much less establish the plausibility of their state claims. The Court should dismiss
26   these claims as well.

27   **V.    PLAINTIFFS' COLLECTIVE/CLASS ALLEGATIONS SHOULD BE STRICKEN**

28   In order to sustain their collective allegations, Plaintiffs were required to make a showing

1  that they, and the collective they wish to represent, are "similarly situated." *White v. Osmose,*
2  *Inc.*, 204 F.2d 1309, 1313 (M.D. Ala. 2000). Section 216(b) does not define the words "similarly
3  situated," nor has the Ninth Circuit defined it; however, courts agree that a plaintiff must *at least*
4  make "a modest factual showing sufficient to demonstrate that [they] and potential plaintiffs
5  together were victims of a common policy or plan that violated the law." *Misra v. Decision One*
6  *Mortgage Co., LLC*, 673 F.Supp.3d 987, 992 (C.D. Cal. 2008).
7        Plaintiffs do not come close to meeting their burden. First, there are no plausible
8  allegations demonstrating a "common policy" or "plan," except perhaps Yelp's TOS and other
9  policies, which apply to *all users* of Yelp's services. But Plaintiffs now argue that Yelp's TOS
10  and other policies don't apply here, even though Judge Olguin already ruled that ". . . all three
11  plaintiffs had adequate notice of and agreed to Yelp's Terms of Service . . ." Dkt. No. 48 at 4.
12  Second, Plaintiffs have not alleged any facts that the "job duties" of the putative collective are
13  sufficiently similar to theirs, for example, whether (and how) Yelp imposed supposed "duties" of
14  content creation in relation to each particular contribution, and whether each particular
15  contribution conformed to Yelp's TOS. Indeed, there is considerable variation among Plaintiffs
16  themselves, and among Plaintiffs and other consumers of Yelp's websites regarding their
17  individualized communications or interactions with Yelp; each of their individualized content
18  contributions posted to Yelp; and the respective state of mind of each of the individual users of
19  Yelp's websites regarding their relationship with Yelp. Even though Yelp pointed out these
20  glaring factual deficiencies in its moving papers, Plaintiffs did not respond in any meaningful
21  way, and merely concluded without factual support that: "Looking to the standard for FLSA
22  actions for pay for work done, a reading of the complaint shows that the pleading standards have
23  been met." Opp. at 19. That is clearly insufficient.
24        Yet the Plaintiffs' collective and class allegations suffer from a more fundamental and
25  uncorrectable defect: Plaintiffs' claims to be "employees" are implausible legal conclusions,
26  which require the court to consider whether an employer/employee relationship exists in the first
27  place between Yelp and *each* of the *tens of millions of users* of Yelp's online services. In short,
28  because Plaintiffs' legal theory of the case is flawed and unsupportable, they cannot possibly

make the requisite showing that they "were victims of a common policy or plan that *violated the law*." *Misra,* 673 F.Supp.3d at 992 (emphasis added); *see also* Fed. Rule Civ. P. 23(a)(3) (requiring claims of putative class members to have commonality).

## VI. OBJECTIONS TO PURPORTED EVIDENCE IN PLAINTIFFS' OPPOSITION

Yelp objects to purported "evidence" contained in the opposition papers, which consists of: (1) links to irrelevant and hearsay internet articles about unrelated class/collective actions and alleged settlement amounts in those actions (Opp. at 3); (2) statements about Yelp's employees or its business that are inaccurate and without foundation, have no relevance to the issues in this case, and are merely designed to cast Yelp in a negative light, (Opp. at 13 & fn. 6; *id.*, 14, 15), e.g., the ridiculous assertion that Yelp is similar to "organized crime."

Yelp further objects to the document titled "Request for Judicial Notice." (6/17/15, Dkt. No. 69). The case Plaintiffs ask the Court to judicially notice is irrelevant because it deals with California law before the California Labor Commissioner, which is neither relevant nor binding. Further, the decision is about the distinction between employees and independent contractors, which is not relevant here (and the facts do not support plaintiffs anyway).

## VII. CONCLUSION

For the reasons stated above, the FLSA and state claims should be dismissed and the collective and class action allegations stricken. Because Plaintiffs' same claims were dismissed in a previous action against Yelp, and because further amendment would plainly be futile, the Court should dismiss Plaintiffs' claims with prejudice.

DATED: June 25, 2015         LAW OFFICES OF ADRIANOS FACCHETTI, P.C.


By:     /s/ Adrianos Facchetti
        Attorneys for Defendant,
        YELP INC.