1   Daniel A. Bernath, California Bar 116636
2   ussyorktowncvs10@yahoo.com
3   Mailing: 1319 Kingswood Ct., Ft Myers FL 33919
4   503 367 4204

5

6   Attorney for Plaintiffs and those similarly situated

7

8

9               **UNITED STATES DISTRICT COURT**
10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| 13   **Lily Jeung, Amy Sayers, and Darren** | **No. 15-cv-02228-RS** |
| 14   **Walchesky, on behalf of themselves** ) | |
| 15   **and all others similarly situated** | **) Request Judicial Notice** |
| 16 | **) Glatt v. Fox Searchlight** |
| 17 | **) US Court of Appeals** |
| 18   **Plaintiffs,** | **) 2nd Circuit Opinion** |
| 19 | **) re College Interns as** |
| 20 | **) employees and** |
| 21   **vs.** | **) "non-exclusive factors to** |
| 22 | **) aid courts in determining** |
| 23   **Yelp, Inc.** | **) whether a worker is an** |
| 24 | **) employee for purposes of** |
| 25   **Defendant.** | **) FLSA" Opinion, P.2, para 5** |

26     The 2nd Circuit Court of Appeals has provided, on July 2, 2015;

27     *"non exclusive factors to aid courts in determining whether a*

28     *worker is an employee for purposes of FLSA."*

29     Opinion, P.6, Paragraph 5 and thereafter.

30

31

1    Significant to the instant analysis,

2    1. *"Any promise of compensation, express or implied, suggests that the intern is an*
3    *employee—and visa versa."*

4    Here, Yelp, Inc. lavished non wage "compensation" onto the Elite reporters and
5    photographers.

6    6. *"The extent to which the intern's work compliments, rather than displaces, the work*
7    *of paid employees* (while providing significant educational benefit to the intern.)"

8    Here, Yelp, Inc. pays Scouts, Community Managers, wage paid Yelp, Inc. employees,
9    Marketing Assistants and even the CEO to report on businesses around the United States.
10   The work of the plaintiff reporters and photographers is core of Yelp, Inc.'s success as
11   officers of Yelp, Inc. have repeatedly admitted that without the labors of the plaintiff
12   reporters and photographers "there would be no Yelp." Yelp, Inc. admits that they pay
13   wages to scouts and then terminate the wage paid scouts when plaintiff reporters and
14   photographers begin to supply journalism labor to Yelp, Inc.

15   Other factors listed by the Glatt opinion relate to the college intern for college credit
16   relationship and not to the reporters and photographers, such as in the Gawker case where
17   Gawker was sued by its writers and photographers and thereafter agreed to pay them $7.5
18   million. http://gawker.com/conde-nast-settles-with-7-500-underpaid-interns-for-5-
19   1658577490 .

20   Daniel A. Bernath, attorney for Plaintiffs
21   July 7, 2015

22

-2-

# GLATT v. FOX SEARCHLIGHT PICTURES, INC.

Nos. 13-4478-cv, 13-4481-cv.

**ERIC GLATT, ALEXANDER FOOTMAN, EDEN M. ANTALIK, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiffs-Appellees, v. FOX SEARCHLIGHT PICTURES, INC., FOX ENTERTAINMENT GROUP, INC., Defendants-Appellants.**

United States Court of Appeals, Second Circuit.

Decided: July 2, 2015.

NEAL KUMAR KATYAL, Hogan Lovells US LLP, Washington, DC, (Mary Helen Wimberly, Frederick Liu, Hogan Lovells US LLP, Washington, DC, and Elise M. Bloom, Mark D. Harris, Chantel L. Febus, Amy F. Melican, Joshua S. Fox, Proskauer Rose LLP, New York, NY, on the brief), for Defendants-Appellants.

RACHEL BIEN, Outten & Golden LLP, New York, NY, (Adam T. Klein, Juno Turner, Outten & Golden LLP, New York, NY, on the brief), for Plaintiffs-Appellees.

MARIA VAN-BUREN, U.S. Department of Labor, Washington, DC, (Jennifer S. Brand, Paul L. Frieden, on the brief), for M. Patricia Smith, Solicitor of Labor, U.S. Department of Labor, Washington, DC, as Amicus Curiae.

Before: WALKER, JACOBS, and WESLEY, Circuit Judges.

**JOHN M. WALKER JR.**, *Circuit Judge.*

Plaintiffs, who were hired as unpaid interns, claim compensation as employees under the Fair Labor Standards Act and New York Labor Law. Plaintiffs Eric Glatt and Alexander Footman moved for partial summary judgment on their employment status. Plaintiff Eden Antalik moved to certify a class of all New York interns working at certain of defendants' divisions between 2005 and 2010 and to conditionally certify a nationwide collective of all interns working at those same divisions between 2008 and 2010. The district court (William H. Pauley III, *J.*) granted Glatt and Footman's motion for partial summary judgment, certified Antalik's New York class, and conditionally certified Antalik's nationwide collective. On defendants' interlocutory appeal, we VACATE the district court's order granting partial summary judgment to Glatt and Footman, VACATE its order certifying Antalik's New York class, VACATE its order conditionally certifying Antalik's nationwide collective, and REMAND for further proceedings.

## BACKGROUND

Plaintiffs worked as unpaid interns either on the Fox Searchlight-distributed film *Black Swan* or at the Fox corporate offices in New York City. They contend that the defendants, Fox Searchlight and Fox Entertainment Group, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206-07, and New York Labor (NYLL), N.Y. Labor Law § 652, by failing to pay them as employees during their internships as required by the FLSA's and NYLL's minimum wage and overtime provisions. The following background facts are undisputed except where noted.

## Eric Glatt

Eric Glatt graduated with a degree in multimedia instructional design from New York University. Glatt was enrolled in a non-matriculated (non-degree) graduate program at NYU's School of Education when he started working on *Black Swan.* His graduate program did not offer him credit for his internship.

From December 2, 2009, through the end of February 2010, Glatt interned in *Black Swan's* accounting department under the supervision of Production Accountant Theodore Au. He worked from approximately 9:00 a.m. to 7:00 p.m. five days a week. As an accounting intern, Glatt's responsibilities included copying, scanning, and filing documents; tracking purchase orders; transporting paperwork and items to and from the *Black Swan* set; maintaining employee personnel files; and answering questions about the accounting department.

Glatt interned a second time in *Black Swan's* post-production department from March 2010 to August 2010, under the supervision of Post Production Supervisor Jeff Robinson. Glatt worked two days a week from approximately 11:00 a.m. until 6:00 or 7:00 p.m. His post-production responsibilities included drafting cover letters for mailings; organizing filing cabinets; filing paperwork; making photocopies; keeping the take-out menus up-to-date and organized; bringing documents to the payroll company; and running errands, one of which required him to purchase a non-allergenic pillow for Director Darren Aronofsky.

## Alexander Footman

Alexander Footman graduated from Wesleyan University with a degree in film studies. He was not enrolled in a degree program at the time of his *Black Swan* internship. From September 29, 2009, through late February or early March 2010, Footman interned in the production department under the supervision of Production Office Coordinator Lindsay Feldman and Assistant Production Office Coordinator Jodi Arneson. Footman worked approximately ten-hour days. At first, Footman worked five days a week, but, beginning in November 2009, he worked only three days a week. After this schedule change, *Black Swan* replaced Footman with another unpaid intern in the production department.

Footman's responsibilities included picking up and setting up office furniture; arranging lodging for cast and crew; taking out the trash; taking lunch orders; answering phone calls; watermarking scripts; drafting daily call sheets; photocopying; making coffee; making deliveries to and from the film production set, rental houses, and the payroll office; accepting deliveries; admitting guests to the office; compiling lists of local vendors; breaking down, removing, and selling office furniture and supplies at the end of production; internet research; sending invitations to the wrap

party; and other similar tasks and errands, including bringing tea to Aronofsky and dropping off a DVD of *Black Swan* footage at Aronofsky's apartment.

## Eden Antalik

Eden Antalik worked as an unpaid publicity intern in Fox Searchlight's corporate office in New York from the beginning of May 2009 until the second week of August 2009. During her internship, Antalik was enrolled in a degree program at Duquesne University that required her to have an internship in order to graduate. Antalik was supposed to receive credit for her internship at Fox Searchlight, but, for reasons that are unclear from the record, she never actually received the credit.

Antalik began work each morning around 8:00 a.m. by assembling a brief, referred to as "the breaks," summarizing mentions of various Fox Searchlight films in the media. She also made travel arrangements, organized catering, shipped documents, and set up rooms for press events.

## Prior Proceedings

On October 19, 2012, plaintiffs filed their first amended class complaint seeking unpaid minimum wages and overtime for themselves and all others similarly situated. Thereafter, Glatt and Footman abandoned their class claims and proceeded as individuals. After discovery, Glatt and Footman moved for partial summary judgment, contending that they were employees under the FLSA and NYLL. The defendants cross-moved for summary judgment claiming that Glatt and Footman were not employees under either statute. At about the same time, Antalik moved to certify a class of New York State interns working at certain Fox divisions and a nationwide FLSA collective of interns working at those same divisions.

On June 11, 2013, the district court concluded that Glatt and Footman had been improperly classified as unpaid interns rather than employees and granted their partial motion for summary judgment. The district court also granted Antalik's motions to certify the class of New York interns and to conditionally certify the nationwide FLSA collective.

On September 17, 2013, the district court, acting on defendants' motion, certified its order for immediate appeal under 28 U.S.C. § 1292(b). On November 26, 2013, we granted defendants' petition for leave to file an interlocutory appeal from the district court's orders. For the reasons that follow, we vacate the district court's orders and remand.

## DISCUSSION

At its core, this interlocutory appeal raises the broad question of under what circumstances an unpaid intern must be deemed an "employee" under the FLSA and therefore compensated for his work. That broad question underlies our answers to the three specific questions on appeal. First, did the district court apply the correct standard in evaluating whether Glatt and Footman were employees, and, if so, did it reach the correct result? Second, did the district court err by certifying Antalik's class of New York interns? Third, did the district court err by conditionally certifying Antalik's nationwide collective?

## I. Glatt's and Footman's Employment Status

We review the district court's order granting partial summary judgment to Glatt and Footman de novo. *See Velez v. Sanchez*, 693 F.3d 308, 313-14 (2d Cir. 2012). Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 314.

With certain exceptions not relevant here, the FLSA requires employers to pay all employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206-07. NYLL requires the same, except that it specifies a higher wage rate than the federal minimum. *See* N.Y. Labor Law § 652. An employee cannot waive his right to the minimum wage and overtime pay because waiver "would nullify the purposes of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks omitted); *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (exceptions to coverage under the FLSA affect more people than those workers directly at issue because exceptions are "likely to exert a general downward pressure on wages in competing businesses").

The strictures of both the FLSA and NYLL apply only to employees. The FLSA unhelpfully defines "employee" as an "individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is defined as "to suffer or permit to work." *Id.* § 203(g). New York likewise defines "employee" as "any individual employed, suffered or permitted to work by an employer." 12 N.Y.C.R.R. § 142-2.14(a). Because the statutes define "employee" in nearly identical terms, we construe the NYLL definition as the same in substance as the definition in the FLSA. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78 (2d Cir. 2003).

The Supreme Court has yet to address the difference between unpaid interns and paid employees under the FLSA. In 1947, however, the Court recognized that unpaid railroad brakemen trainees should not be treated as employees, and thus that they were beyond the reach of the FLSA's minimum wage provision. *See Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). The Court adduced several facts. First, the brakemen-trainees at issue did not displace any regular employees, and their work did not expedite the employer's business. *Id.* at 149-50. Second, the brakemen-trainees did not expect to receive any compensation and would not necessarily be hired upon successful completion of the course. *See id.* at 150. Third, the training course was similar to one offered by a vocational school. *Id.* at 152. Finally, the employer received no immediate advantage from the work done by the trainees. *Id.* at 153.

In 1967, the Department of Labor ("DOL") issued informal guidance on trainees as part of its Field Operations Handbook. The guidance enumerated six criteria and stated that the trainee is not an employee only if all of the criteria were met. *See* DOL, Wage & Hour Div., Field Operations Handbook, Ch. 10, ¶ 10b11 (Oct. 20, 1993), *available at* http://www.dol.gov/whd/FOH/FOH_Ch10.pdf. In 2010, the DOL published similar guidance for unpaid interns working in the for-profit private sector. This Intern Fact Sheet provides that an employment relationship does not exist if all of the following factors apply:

1. The internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment; 2. The internship experience is for the benefit of the intern; 3. The intern does not displace regular employees, but works under close supervision of existing staff; 4. The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded; 5. The intern is not necessarily entitled to a job at the conclusion of the internship; and 6. The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

DOL, Wage & Hour Div., Fact Sheet #71, Internship Programs Under The Fair Labor Standards Act (April 2010), *available at* http://www.dol.gov/whd/regs/compliance/whdfs71.pdf.

The district court evaluated Glatt's and Footman's employment using a version of the DOL's six-factor test. However, the district court, unlike the DOL, did not explicitly require that all six factors be present to establish that the intern is not an employee and instead balanced the factors. The district court found that the first four factors weighed in favor of finding that Glatt and Footman were employees and the last two factors favored finding them to be trainees. As a result, the district court concluded that Glatt and Footman had been improperly classified as unpaid interns and granted their motion for partial summary judgment.

The specific issue we face—when is an unpaid intern entitled to compensation as an employee under the FLSA?—is a matter of first impression in this Circuit. When properly designed, unpaid internship programs can greatly benefit interns. For this reason, internships are widely supported by educators and by employers looking to hire well-trained recent graduates.[1] However, employers can also exploit unpaid interns by using their free labor without providing them with an appreciable benefit in education or experience. Recognizing this concern, all parties agree that there are circumstances in which someone who is labeled an unpaid intern is actually an employee entitled to compensation under the FLSA. All parties also agree that there are circumstances in which unpaid interns are not employees under the FLSA. They do not agree on what those circumstances are or what standard we should use to identify them.

The plaintiffs urge us to adopt a test whereby interns will be considered employees whenever the employer receives an immediate advantage from the interns' work. Plaintiffs argue that focusing on any immediate advantage that accrues to the employer is appropriate because, in their view, the Supreme Court in *Portland Terminal* rested its holding on the finding that the brakemen trainees provided no immediate advantage to the employer.

The defendants urge us to adopt a more nuanced primary beneficiary test. Under this standard, an employment relationship is created when the tangible and intangible benefits provided to the intern are greater than the intern's contribution to the employer's operation. They argue that the primary beneficiary test best reflects the economic realities of the relationship between intern and employer. They further contend that a primary beneficiary test that considers the totality of the circumstances is in accordance with how we decide whether individuals are employees in other circumstances.

DOL, appearing as amicus curiae in support of the plaintiffs, defends the six factors enumerated in its Intern Fact Sheet and its requirement that every factor be present before the employer can escape its obligation to pay the worker. DOL argues (1) that its views on employee status are entitled to deference because it is the agency charged with administering the FLSA and (2) that we should use the six factors because they come directly from *Portland Terminal.*

We decline DOL's invitation to defer to the test laid out in the Intern Fact Sheet. As DOL makes clear in its brief, its six-part test is essentially a distillation of the facts discussed in *Portland Terminal.* DOL Br. at 11-12, 21. Unlike an agency's interpretation of ambiguous statutory terms or its own regulations, "an agency has no special competence or role in interpreting a judicial decision." *State of N.Y. v. Shalala,* 119 F.3d 175, 180 (2d Cir. 1997). And as DOL concedes, DOL Br. at 21, this interpretation is entitled, at most, to *Skidmore* deference to the extent we find it persuasive. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944) (the weight given to the Administrator's judgment depends on "all those factors which give it power to persuade"). Because the DOL test attempts to fit *Portland Terminal's* particular facts to all workplaces, and because the test is too rigid for our precedent to withstand, *see, e.g., Velez,* 693 F.3d at 326, we do not find it persuasive, and we will not defer to it.

Instead, we agree with defendants that the proper question is whether the intern or the employer is the primary beneficiary of the relationship. The primary beneficiary test has two salient features. First, it focuses on what the intern receives in exchange for his work. *See Portland Terminal,* 330 U.S. at 152 (focusing on the trainee's interests). Second, it also accords courts the flexibility to examine the economic reality as it exists between the intern and the employer. *See Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 141-42 (2d Cir. 2008) (employment for FLSA purposes is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances").

Although the flexibility of the primary beneficiary test is primarily a virtue, this virtue is not unalloyed. The defendants' conception of the primary beneficiary test requires courts to weigh a diverse set of benefits to the intern against an equally diverse set of benefits received by the employer without specifying the relevance of particular facts. *Cf. Brown v. N.Y.C. Dep't of Educ.,* 755 F.3d 154, 163 (2d Cir. 2014) ("While our ultimate determination [of employment status] is based on the totality of circumstances, our discussion necessarily focuses on discrete facts relevant to particular statutory and regulatory criteria." (internal citation omitted)).

In somewhat analogous contexts, we have articulated a set of non-exhaustive factors to aid courts in determining whether a worker is an employee for purposes of the FLSA. *See, e.g., Velez,* 693 F.3d at 330 (domestic workers); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d Cir. 1988) (independent contractors). In the context of unpaid internships,[2] we think a non-exhaustive set of considerations should include:

1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa. 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions. 3. The extent to which the

internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit. 4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar. 5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning. 6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern. 7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Applying these considerations requires weighing and balancing all of the circumstances. No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage. In addition, the factors we specify are non-exhaustive—courts may consider relevant evidence beyond the specified factors in appropriate cases.

This flexible approach is faithful to *Portland Terminal*. Nothing in the Supreme Court's decision suggests that any particular fact was essential to its conclusion or that the facts on which it relied would have the same relevance in every workplace. *See Portland Terminal,* 330 U.S. at 150-53; *see also Solis v. Laurelbrook Sanitarium & Sch., Inc.,* 642 F.3d 518, 526 n.2 (6th Cir. 2011) ("While the Court's recitation of the facts [in *Portland Terminal*] included those that resemble the Secretary's six factors, the Court gave no indication that such facts must be present in future cases to foreclose an employment relationship." (internal citation omitted)).

The approach we adopt also reflects a central feature of the modern internship—the relationship between the internship and the intern's formal education. The purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting,[3] and, unlike the brakemen at issue in *Portland Terminal,* all of the plaintiffs were enrolled in or had recently completed a formal course of post-secondary education. By focusing on the educational aspects of the internship, our approach better reflects the role of internships in today's economy than the DOL factors, which were derived from a 68-year old Supreme Court decision that dealt with a single training course offered to prospective railroad brakemen.

In sum, we agree with the defendants that the proper question is whether the intern or the employer is the primary beneficiary of the relationship, and we propose the above list of non-exhaustive factors to aid courts in answering that question. The district court limited its review to the six factors in DOL's Intern Fact Sheet. Therefore, we vacate the district court's order granting partial summary judgment to Glatt and Footman and remand for further proceedings. On remand, the district court may, in its discretion, permit the parties to submit additional evidence relevant to the plaintiffs' employment status, such as evidence on Glatt's and Footman's formal education. Of course, we express no opinion with respect to the outcome of any renewed motions for summary judgment the parties might make based on the primary beneficiary test we have set forth.

## II. Antalik's Motion to Certify the New York Class

We turn now to the defendants' appeal of the district court's order certifying Antalik's proposed class. We review the district court's class certification ruling for abuse of discretion and the conclusions of law that informed its decision to grant certification de novo. *See Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 18 (2d Cir. 2003).

Antalik moved to certify the following class:

All individuals who had unpaid internships between September 28, 2005 and September 1, 2010 with one or more of the following divisions of FEG [Fox Entertainment Group]: Fox Filmed Entertainment, Fox Group, Fox Networks Group, and Fox Interactive Media (renamed News Corp. Digital Media).

Pls.' Mot. For Class Cert. 19, Doc. No. 104.

Antalik bore the burden of showing that her proposed class satisfied Rule 23's requirements of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1-4). Because Antalik moved to certify the class pursuant to Rule 23(b)(3), she was also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed R. Civ. P. 23(b)(3). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

The district court found that common questions pertaining to liability could be answered by evidence tending to show that interns were recruited to help with busy periods, that they displaced paid employees, and that Fox employees overseeing internships did not believe they complied with the law. Because "common questions of liability predominate over individual calculations of damages," the district court concluded that Antalik had satisfied her burden to establish predominance. S.A. 33-34.

On appeal, the defendants argue the district court erred by concluding that Antalik demonstrated predominance because it misconstrued our standards for determining when common questions predominate over individual ones. We agree and therefore vacate the district court's order certifying Antalik's class.[4]

Antalik points to evidence, relied on by the district court, suggesting that the defendants sometimes used unpaid interns in place of paid employees. Such evidence is relevant but not sufficient to answer the question of whether each intern was an employee entitled to compensation under the FLSA. As our previous discussion of the proper test indicates, the question of an intern's employment status is a highly individualized inquiry. Antalik's common evidence will not help to answer whether a given internship was tied to an education program, whether and what type of training the intern received, whether the intern continued to work beyond the primary period of learning, or the many other questions that are relevant to each class

member's case. Moreover, defendants' undisputed evidence demonstrated that the various internship programs it offered differed substantially across the many departments and four Fox divisions included in the proposed class.

In sum, even if Antalik established that Fox had a policy of replacing paid employees with unpaid interns, it would not necessarily mean that every Fox intern was likely to prevail on her claim that she was an FLSA employee under the primary beneficiary test, the most important issue in each case. Thus, assuming some questions may be answered with generalized proof, they are not more substantial than the questions requiring individualized proof. *See, e.g., Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir. 2010) (district court did not abuse its discretion by denying certification of a class of store managers where determination of whether managers were exempt under the FLSA would be resolved only "by examining the employees' actual job characteristics and duties"); *In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953, 958-59 (9th Cir. 2009) (district court abused its discretion by certifying a class of mortgage consultants because employer's centralized policy of exempting consultants did not predominate over individual variation in job responsibilities).

Because the most important question in this litigation cannot be answered with generalized proof, we vacate the district court's order certifying Antalik's proposed class and remand for further proceedings consistent with this opinion.[5]

## III. Antalik's Motion to Conditionally Certify the Nationwide FLSA Collective

Finally, we turn to the defendants' appeal of the district court's order conditionally certifying Antalik's proposed nationwide FLSA collective. Like the district court's certification determination pursuant to Rule 23, we review its decision to conditionally certify an FLSA collective for abuse of discretion. *See Myers,* 624 F.3d at 554; *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008).

The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly situated employee. 29 U.S.C. § 216(b). The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it. *See Genesis Healthcare Corp. v. Symczyk,* 133 S.Ct. 1523, 1530 (2013). As a result, unlike a Rule 23 class, a conditionally certified FLSA collective does not acquire an independent legal status. *Id.*

In *Myers,* we endorsed a two-step process for certifying FLSA collective actions. At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. 624 F.2d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. *Id.*

Antalik moved, at step one, to conditionally certify the following nationwide collective:

All individuals who had unpaid internships between September 28, 2008 and September 1, 2010 with one or more of the following divisions of FEG: Fox Filmed Entertainment, Fox Group, Fox Networks Group, and Fox Interactive Media (renamed News Corp. Digital Media).

Pls.' Mot. For Class Cert. 28, Doc. No. 104.

After some discovery had been completed, the district court, relying primarily on its analysis of commonality with respect to Antalik's Rule 23 motion, authorized plaintiffs to send the opt-in notice because Antalik put forth generalized proof that interns were victims of a common policy to replace paid workers with unpaid interns. On defendants' motion for reconsideration, the district court narrowed the opt-in notice to include only those individuals who held unpaid internships between January 18, 2010, and September 1, 2010, because the statute of limitations precluded claims by earlier Fox interns.

We certified for immediate review the question of whether a higher standard, urged by defendants, applies to motions to conditionally certify an FLSA collective made after discovery. We do not need to decide that question, however, because the plaintiffs in Antalik's proposed collective are not similarly situated even under the minimal pre-discovery standard.[6] Under the primary beneficiary test we have set forth, courts must consider individual aspects of the intern's experience. None of the common proof identified by Antalik, and relied on by the district court, will address these questions, and all of the issues with respect to the proposed class's range of experience will also be issues for the proposed collective. If anything, Antalik's proposed collective presents an even wider range of experience than her proposed class because it is nationwide in scope, rather than limited to just New York interns.

Accordingly, for substantially the same reasons as with respect to Antalik's Rule 23 motion, we vacate the district court's order conditionally certifying Antalik's proposed nationwide collective action and remand for further proceedings.[7]

## CONCLUSION

For the foregoing reasons, the district court's orders are VACATED and the case REMANDED for further proceedings consistent with this opinion.

### FootNotes

* The clerk of the court is directed to amend the caption as set forth above.
1. *See, e.g.*, Nat'l Ass'n of Colleges & Emp'rs, Position Statement: U.S. Internships (July 2011), *available at* http://www.naceweb.org /advocacy/position-statements/united-states-internships.aspx ("NACE, Position Statement").
2. Like the parties and amici, we limit our discussion to internships at for-profit employers.
3. *See, e.g.*, NACE, Position Statement (defining the internship as "form of experiential learning that integrates knowledge and theory learned in the classroom with practical application and skills development in a professional setting").

4. In light of this disposition, we need not consider defendants' arguments related to commonality. *See Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir. 2010).
5. Nevertheless, although the district court's certification order was erroneous in light of the new legal standard we have announced today, we cannot foreclose the possibility that a renewed motion for class certification might succeed on remand under our revised standard.
6. "We are not necessarily limited to the certified issue, as we have the discretion to consider any aspect of the order from which the appeal is taken." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 115 (2d Cir. 2004); *accord Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996) (same applied to order conditionally certifying a collective).
7. Again, we do not foreclose the possibility that a renewed motion for conditional collective certification might succeed on remand under the revised standard. *See supra* n.5.